**MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

*FILED*
*ASHEVILLE, N.C.*
*OCT 26th 2006*
*U.S. DISTRICT COURT*
*W. DIST. OF N.C.*

| United States District Court | District Western Dist. of N.C. |
|---|---|
| Name (under which you were convicted): Peter Kay Stern | Docket or Case No.: 2:99cr 81 |
| Place of Confinement: FPC Edgefield, S.C. | Prisoner No.: 15633-058 |
| UNITED STATES OF AMERICA | Movant (include name under which convicted) |
| v. | Peter Kay Stern |

**MOTION**

1. (a) Name and location of court that entered the judgment of conviction you are challenging: _____
   United States District Court for the Western District of North Carolina, Asheville

   (b) Criminal docket or case number (if you know): CR-99-0081

2. (a) Date of the judgment of conviction (if you know): January 29, 2001

   (b) Date of sentencing: January 23, 2002

3. Length of sentence: 151 Months

4. Nature of crime (all counts): 18 USC§286-False Claims to the U.S., 26 USC §7212-Obstruction of the IRS, 18USC§1344-Bank Fraud, 18 USC§ 115-Threats against a Federal Judge, 18 USC§ 876-Mailing Threats

5. (a) What was your plea? (Check one)

   (1) Not guilty ☒     (2) Guilty ☐     (3) Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to? _____

6. If you went to trial, what kind of trial did you have? (Check one)     Jury ☒     Judge only ☐

7. Did you testify at a pretrial hearing, trial, post-trial hearing?     ☒     No ☐

8. Did you appeal from the judgment of conviction?    Yes ☒    No ☐

9. If you did appeal, answer the following:

(a) Name of court: United States Court of Appeals for the Fourth Circuit

(b) Docket or case number (if you know): 02-4091

(c) Result: Conviction and Sentence Affirmed

(d) Date of result (if you know): April 23, 2004

(e) Citation to the case (if you know): _____

(f) Grounds raised: Whether the evidence was sufficient to sustain a conviction on Count 2 and Count 3, Challenge to sentencing enhancements and calculations

_____

_____

_____

_____

(g) Did you file a petition for certiorari in the United States Supreme Court?    Yes ☒ No ☐

If "Yes," answer the following:

(1) Docket or case number (if you know): 04-75

(2) Result: Conviction affirmed, sentence reversed based upon Booker v. Washington

(3) Date of result (if you know): January 23, 2005

(4) Citation to the case (if you know): _____

(5) Grounds raised: Sixth Amendment violation of sentencing enhancements Conflict between the Circuits on USSG¶2A6.1(b)(1) on conduct evidencing the intent to carry out a threat. Whether or not a district judge abuses his discretion for not recusing himself when deft. is on trial for threatening to kidnap other judges seated on district court bench

_____

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

Yes ☐ No ☐

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ❑  No ❑

(7) Result: _____

(8) Date of result (if you know): _____

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ❑  No ❑

(7) Result: _____

(8) Date of result (if you know): _____

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition:        Yes ❑  No ❑

(2) Second petition:     Yes ❑  No ❑

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

_____

_____

_____

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.

**GROUND ONE:**  See attached Brief In Support made a part hereof by reference

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

(b) **Direct Appeal of Ground One:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑  No ❑

    (2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❑  No ❑

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:_____

    Name and location of the court where the motion or petition was filed:_____

_____

    Docket or case number (if you know):_____

    Date of the court's decision:_____

    Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ❑  No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❑ No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑ No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:_____

_____

Docket or case number (if you know):_____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this

issue: _____

_____

_____

_____

_____

_____


**GROUND TWO:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____

_____

_____

_____

_____

_____

_____

_____

_____

_____


(b) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

    Yes ❑ No ❑

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐ No ☐

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:_____

Name and location of the court where the motion or petition was filed:_____

_____

Docket or case number (if you know):_____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐ No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐ No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐ No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:_____

_____

Docket or case number (if you know):_____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this

issue: _____

_____

_____

_____

_____

**GROUND THREE:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): ___ __

_____

_____
_____
_____
_____
_____
_____
_____
_____
_____

(b) **Direct Appeal of Ground Three:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑  No ❑

    (2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❑  No ❑

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:_____

    Name and location of the court where the motion or petition was filed:_____

_____

    Docket or case number (if you know):_____

    Date of the court's decision:_____

    Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ❑  No ❑

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ❑  No ❑

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ❑  No ❑

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:_____

_____

    Docket or case number (if you know):_____

    Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____

_____

_____

_____

_____


**GROUND FOUR:** _____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____

_____

_____

_____

_____

_____

_____

_____

_____

_____


(b) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑ No ❑

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____


(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❑ No ❑

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:_____

Name and location of the court where the motion or petition was filed:_____

_____

Docket or case number (if you know):_____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ❑  No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❑  No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑  No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:_____

_____

Docket or case number (if you know):_____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this

issue: _____

_____

_____

_____

_____

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which

    ground or grounds have not been presented, and state your reasons for not presenting them: _____

_____

_____

_____

_____

_____

_____

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the

    judgment you are challenging? Yes ❑  No ❑

    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the

    issues raised. _____

_____

_____

_____

_____

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: _____

_____

(b) At arraignment and plea: _____

_____

(c) At trial: _____

_____

(d) At sentencing: _____

_____

(e) On appeal: _____

_____

(f) In any post-conviction proceeding: _____

_____

(g) On appeal from any ruling against you in a post-conviction proceeding: _____

_____

_____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time? Yes ❏ No ❏

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?            Yes ❏ No ❏

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: _____

_____

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?            Yes ❏ No ❏

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —

(1) the date on which the judgment of conviction became final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief: <u>Overturn and reverse the</u>
<u>conviction and sentence, in their entirety</u>

_____

or any other relief to which movant may be entitled.


_____

Signature of Attorney (if any)


I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this
Motion Under 28 U.S.C. § 2255 was placed in the prison mailing system on <u>OCTOBER 24,</u>
<u>2006</u> (month, date, year).


Executed (signed) on <u>OCTOBER 24, 2006</u> (date).


_____

Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this
motion. _____

_____

_____

\* \* \* \* \*

INDEX
PAGE 1

| GROUND # | DESCRIPTION | PAGES |
|---|---|---|
| 1 | Ineffective Assistance Of Counsel-Mr. Aurillo | 3-25 |
| 2 | Ineffective Assistance Of Counsel-Mr. Zwerling | 26-33 |
| 3 | Prosecutorial Misconduct | 34-76 |
| 4 | Denial Of Grand Jury Challenge | 77-80 |
| 5 | No Proof Of Essential Element Of The Offense Counts 6-7    18 USC§876 | 81-82 |
| 6 | No Proof Of Essential Element Of The Offense Counts 1-2   18 USC§286, 26 USC¶7212 | 83-84 |
| 7 | No Proof Of Essential Element Of The Offense Count 3   18 USC§1344 | 85-90 |
| 8 | Variance In Proof-Single vs. Multiple Conspiracy | 91-96 |
| 9 | No Criminal Law Applicable Count 3 | 97-106 |
| 10 | Variance In Count 2 and Proof At Trial | 107-109 |
| 11 | Legal Error On Electronic Surveillace Issues | 110-114 |
| 12 | No Implementing Regulations Argument | 115-123 |
| 13 | 26 USC§7212 Unconstitutionally Vague As Applied | 124-134 |
| 14 | Compulsory Process Clause Violation | 135-136 |
| 15 | Conflict Between Indictment And Jury Instructions | 137-139 |

| 16 | Mr. Stern Excluded From Jury Instructions Conference | 140 |
| 17 | Defense Jury Instructions Denied | 141-144 |
| 18 | Jury Instruction #43 Read Twice To Jury | 145 |
| 19 | Constitutional Error-Time Limits On Sentencing | 146-147 |
| 20 | Errors In Statement Of Reasons Challenged | 148-154 |
| 21 | Error On Multiple Sentences Counts 4-7 | 155-156 |
| 22 | Error-No Date On Verdict Sheet | 157 |
| 23 | Error-124 Month Sentence Unreasonable | 158 |
| 24 | Error-No Notice Of Upward Departure From Court | 159 |
| 25 | Error-12 Point Enhancement-USSG §2F1.1(b)(1)(M) | 160-162 |
| 26 | Error-Sentence On Count 2 Illegal | 163 |
| 27 | Error-Victim Related Enhancement Illegal | 164 |
| 28 | Error-Leader/Organizer Enhancement Illegal | 165-167 |
| 29 | Error-6 Point Enhancement-USSG §2A6.1(b)(1) Illegal | 168 |
| 30 | Error-Judge Mullen Signed Order In Case | 169 |
| 31 | Error-Surplussage In Count One | 170-171 |
| 32 | Error-IRS Inspector Houle In Courtroom | 172 |

33    Error-$1,000.00 Fine                                              173

34    Error-Incomplete Transcript                                        174-175

35    IRS Agents Houle And Jackson Committed Impermissible               176-178
      Acts and Defrauded The Court

36    Affidavit Of Probable Cause Not Illegal Act                        179-186

37    Error-Indictment Not Properly Returned                             187-190

38    First Amendment Protections Argument                               191-194

39    Error-Prohibited Factors Used At Sentencing                        195-196

40    Testimony Of Tina Neely Improper                                   197

41    Error-Improper Testimony And Comments Thereon                      198-199
      Of Michael Stern And Alonzo Fuller

42    Error-2 Point Enhancement- USSG $2F1.1(b)(4)(A) Illegal            200

43    Error-PSIR ¶¶ 93-97 Erroneous-Must Be Deleted                     201

44    Error-Sentence Under USSG $3D1.4 Illegal                           202-204

45    Mr. Stern Actually Innocent -Counts 4-7                            205-208

46    Error-Abuse of Judicial Discretion Claims                          209-231

47    Error-Double Jeopardy Clause violation                            232
      on resentencing

      Concluding Arguments                                               233-240

## JURISDICTION

This Court has jurisdiction to hear the claims set forth herein pursuant to 28 USC §2255.


## OPENING STATEMENT

This Motion, seeking relief from the judgment and attacking various portions of the sentencing is presented with good faith setting forth issues which could not have been brought on direct appeal due to the limitations placed on the defendant by the Federal Rules Of Appellate Procedure, Rule 32(a)(7) (A) and (B). That this limitation barred the defendant from asserting the claims on direct appeal, this is the first opportunity to contend the issues.

With the knowledge that the criminal defendant, as a matter of procedural limitations is allowed " only one bite at the apple" as a normal course, he must, by necessity, advance the claims asserted herein, in their entirety so as not to forego or waive a meritorious claim available to him under the AEDPA and 28 USC §2255 schemes.

Mr. Stern acknowledges that this Motion makes appear a large number of claims. However, he knows that the Court would not want him to lose any opportunity to seek appropriate remedy or relief within the scope of the doctrine of fundemental fairness and Due Process, and the Statutory remedies Congress has provided for his use.

1

The Petitioner in the instant case challenges his conviction in the instant case as set forth in these pleadings.

The matters made to appear herewith were not raised on direct appeal due to the page and word quantity bar erected by the Federal Rules Of Appellate Procedure, Rule 32(a)(7). This bar restricted the Petitioner to the few issues presented on direct appeal, even though, as the Petitioner contends, the issues raised hereby are meritorious and the Petitioner is actually prejudiced by these newly-asserted errors. See **U.S. v. Frady**, 456 U.S. 152, 168, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816(1982).

The Petitioner further contends that for the District Court to refuse to consider these issues on procedural grounds would lead to a fundemental miscarriage of justice. **Smith v. Murray**, 477 U.S.527, 537-38, 106 S.Ct. 2661, 2667-68, 91 L.Ed.2d 434 (1986).

Mr. Stern also challenges the sentence imposed on March 30, 2006 as allowed under §2255. **Darity v. U.S.**, 124 F.Supp 2d 355, 357 (W.D.N.C. 2000).

Each claim is set forth in a separate ground and argued independently for the sake of clarity, in the following segments of this document. Mr. Stern is entitled to a prompt hearing on his claims. **U.S. v. Witherspoon**, 231 F.3d 923, 925 (4th Circuit 2000).

2

## GROUND ONE

**MR. STERN WAS SUBJECTED TO INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHEN DEFENSE COUNSEL GERALD P. AURILLO'S PERFORMANCE FELL BELOW THE OBJECTIVE REASONABLENESS STANDARD EXPECTED OF A REASONABLY COMPETENT ATTORNEY, PREJUDICING MR. STERN AND CALL THE RELIABILITY OF THE OUTCOME OF THE PROCEEDINGS INTO QUESTION.**

Stern sets forth a claim of ineffective assistance of counsel against Geral Paul Arillo, Defense Counsel.

The record is replete with Aurillo's substandard conduct and misconduct and Mr. Stern contends his claim to be perfected under the standard set by **Strickland v. Washington**, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), as set forth below.

To meet the test and succeed on the claim of ineffective counsel, Stern must show: (1) that Aurillo's representation fell below an objective standard of reasonableness; and (2) due to Aurillo's unprofessional errors, had the errors not been present, the outcome of the proceedings would have been different.

The specific acts and or omissions are identified as;

Pre-trial Ineffectiveness. Aurillo failed to do the legal research necessary to mount an effective defense strategy. At no time did Aurillo explain to Stern the "nature" of the charges against him. By "nature" it is meant the elements of each charge and what the government had to prove in order to sustain a conviction. Though Stern repeatedly asked Aurillo for this, Aurillo simply repeated rote readings from the Indictment.

Further, a great majority of the legal research was done

3

by Stern, by necessity, as Aurillo was finding excuses for not working on the specific issues of Stern's case, such as telling Stern that the U.S. Attorney in New Orleans was attempting to get Aurillo arrested, that Aurillo had to go to Montana to defend his daughter on a drunk driving charge, and subsequently, after obtaining $25,000.00 from Stern, through Stern's mother, that more money was needed in order for Aurillo to "do a good job. A case like this one should get a $250,000.00 fee. I'll do what I can, but you understand, I have to make a living."

There was always excuses, rather than performance.

Aurillo failed, though several times prompted by Stern, to move for a Speedy Trial (18 U.S.C.§3161) dismissal on the expiration of the 70 day time period after the first Indictment, and the Superseding Indictment. **U.S. v. Mala**, 7 F.3d 1058 (1st Circuit 1993); **Nelson v. Hargett**, 989 F.2d 847 (5th Circuit 1993); **Holliness v. Estelle**, 569 F. Supp. 146 (W.D. Texas 1983), to file a timely motion for dismissal.

This omission was not based upon any defense strategy, and constituted Aurillo's deliberate waiver of a viable and statutorily available remedy which no reasonable attorney should overlook.

Aurillo did not take adequate time nor make a due diligence effort to thoroughly review the Government's Rule 16 discovery material, and prepare same for trial use.

Several very material and important exculpatory documents were overlooked, andseveral were extracted, but not utilized in trial, to wit: FBI 302 Forms of 3/21/96, 3/28/96, May 9

4

1997, IRS Agent Kelly Jackson's Report, April 14, 1999, IRS Form 8052 of December 2, 1996, and others. This material was both exculpatory and viable to impeach the testimony of Government witnesses Russell, Houle, Tingle, Ward, and Sizer. Mr. Stern discovered these documents in a box of materials given by Aurillo to Mr. Stern's wife post trial.

Further, Aurillo failed to obtain and utilize the video tapes of the meeting of Our One Supreme Court that were, at the Sentencing Hearing, finally brought to the court's attention. These tapes are exculpatory and show Dana Dudley, Russell Dean Landers, and John Anthony Norris, Jr. being the individuals involved with authoring and sending Government Exhibits 11-1, 11-2 and the purported threat to the U.S. Marshals in Charlotte. Aurillo was repeatedly told of the tapes, their existance, sho had them, what they contained, and how to acquire same, yet he did not do so.

There was an audio tape made of the December 1996 meeting between Tingle and Stern which as the subject of the Prosecution's case in Count Two of the indictment. This tape was in the hands of the IRS and Stern had his own copy. The tape is exculpatory as it shows no threats made by Stern against Tingle, yet Aurillo disregarded Stern's continual prodding to acquire same from Stern's wife, nor did Aurillo acquire same from the Government. This was clearly dereliction of duty on Aurillo's part, **Sparman v. Edwards**, 26 F. Supp.2d 450 (E.D.N.Y. 1997); **Sims v. Livesay**, 970 F.2d 1575 (6th Circuit 1992); **U.S. v. Myers**, 892 F.2d 642 (7th Circuit 1990), and fell far below the reasonable objective

5

standard. No attorney in his right mind would overlook these matters. Further case law in support of these premises is found at **Hadley v. Groose**, 97 F.3d 1131 (8th Circuit 1996); **Nixon v. Newsome**, 888 F.2d 112 (11th Circuit 1989); **Driscoll v. Delo**, 71 F.3d 701 (8th Circuit 1995); **Hyman v. Aiken**, ante.

Aurillo failed to prepare for trial and take adequate time to review the carefully prepared defense exhibits. Stern prepared over 100 exhibits, since Aurillo was not doing anything in that regard, placing each in it's own folder, with an accompanying written description of the exhibit, its application to the case at Bar and relevance to the defense strategy, and after having the exhibits confiscated by the staff at Buncombe County Jail, released them to his wife, Akara Stern, who held them in readiness for the proceedings.

Even though Aurillo was repeatedly told of them, he did not set aside time to review same, discuss same with Stern, and incorporate them into the defense strategy, or prepare them for proper submission at trial.

Instead Aurillo ignored the repeated attempts by Stern and his wife to do so, and did not attempt to deal with them until Stern's friends brought the exhibits to the Federal Courthouse in Asheville on the third day of the trial proceedings.

It was only at that time that Aurillo began to tabulate, number, and mark same. He never viewed them before that time.

Not only was this a woefully deficient performance, it engendered the anger of the Court, as the trial transcript plainly shows.

6

This conduct was clearly ineffective assistance of counsel and equally prejudicial to Stern's case. **Hyman v. Aiken**, 824 F.2d 1405 (4th Circuit 1987); **Pilchak v. Camper**, 741 F.Supp 497 (W.D. Mo. 1990); **Stiuffer v. Reynolds,** 168 F.3d 1155 (10th Circuit 1999).

Aurillo failed to review potential witnesses and timely prepare subpeonas to compel attendance of those who would cooberate Stern's testimony. **Capps v. Sullivan**, 921 F.2d 260 (10th Circuit 1990); **Coss v. Lackawanna Co. Dist. Atty.**, 204 F.3d 453 (3rd Circuit 2000); **Ramseyer v. Wood**, 64 F.3d 1432 (9th Circuit 1995); **Goodwin v. Balkom**, 684 F.2d 794 (11th Circuit 1982); **U.S. v. Fisher**, 477 F.2d 300 (4th Circuit 1973); **U.S. v. Gray**, 878 F.2d 702 (3rd Circuit 1985), and clearly constituted ineffective assistance of counsel.

Aurillo repeatedly failed to take calls from Stern, come to the Buncombe County Detention Center to consult with Stern with respect to defense strategy and legal matters, and to come to some understanding of the aspects of the case against Stern. **Jones v. Jones**, 988 F.Sipp. 1000 (E.D. La. 1997); **White v. Godinex**, 143 F.3d 1049 (7th Circuit 1998); **Noland v. Dixon**, 808 F.Supp. 485 (W.D.N.C. 1992); **Harris,** cited in **Ramseyer,** ante.

Aurillo failed to call exculpatory witnesses such as Joe Bannister, ex IRS C.I.D. agent, IRS Agent Michael Wright often claiming there was no time or money. **Berry. Gramely**, 74 F.Supp.2d 808 (N.D. Ill. 1999).

Aurillo failed to prepare to raise ENTRAPMENT defense Stern insisted on, and which is supported by Defense Exhibit #67.

7

**Capps v. Sullivan**, 921 F.2d 260 (10th Circuit 1990).

Aurillo failed to prepare and adequately investigate the SELF DEFENSE defense and GOOD FAITH defense strategies Stern requested. Stern attempted, in his testimony, to bring this defense out, but Aurillo was not prepared to follow through. **Weidner v. Wainwright,** 708 F.2d 614 (11th Circuit 1983); **Gaines v. Hopper**, 575 F.2d 1147 (5th Circuit 1978); **U.S. v. Span**, 75 F.3d 1383 (9th Circuit 1996).

Aurillo failed to adequately investigate and prpare for a POLICE FABRICATION defense, renderingthe trial unfair. **Tejeda v. Duboise**, 142 F.3d 18 (1st Circuit 1998).

Aurillo failed to properly preserve object.ion and errors at trial. **Kimmelman v. Morrison**, 477 U.S. 365, 91 L.Ed.2d 305, 106 S.Ct. 2574 (1986); **Hawkins v. Lynaugh**, 862 F.2d 482 (5th Circuit 1988); **Vela v. Estelle**, 708 F.2d 954 (5th Circuit 1983); **Lynons v. McCotter**, 770 F.2d 529 (5th Circuit 1985).

Aurillo failed to object to improper cross examination and comments by AUSA Brown. **Miller v. Wainwright**, 798 F.2d 426 (11th Circuit 1986); **U.S. v. Wolf**, 787 F.2d 1094 (7th Circuit 1986).

Due to his lack of preparation, Aurillo's cross examination of the government's witnesses was ludicrous and ineffective. **Pinnel v. Cauthorn**, 540 F.2d 938 (8th Circuit 1976); **Jemison v. Foltz**, 672 F.Supp. 1002 (E.D. Mich. 1987).

Aurillo failed to object to IRS Agent Frank Houle, a witness for the government, sitting at the Prosecution's table before and subsequent to Houle's testimony. This was very prejudicial

8

and should have been objected to. In fact, Stern repeatedly
attempted to get Aurillo to do so, but was told by Aurillo to
"be quiet". **Lufkins v. Solem,** 716 F.2d 532 (8th Circuit 1983);
**Spicer v. Warden of Roxbury Corr. Inst.** 31 F.Supp2d 509 (D.
Md. 1998); **Holliness v. Estelle,** 596 F. Supp 146 (W.D. Texas
1983).

Aurillo failed to object to improper jury instructions
and the exclusion of Stern's jury instructions. **Smith v. Wainwright**,
741 F.2d 1248 (11th Circuit 1984); **Kubat v. Thieret**, 867 F.2d
351 (7th Circuit 1989); **Gray v. Lynn**, 6 F.3d 265 (5th Circuit
1993); **Lombard v. Lynaugh**, 868 F.2d 1475 (5th Circuit 1989);**Lucas
v. O'Dea** 179 F.3d 412 (6th Circuit 1999); **Thomas v. Harrelson**,
942 F.2d 1530 (11th Circuit 1991).

As a matter of fact, Aurillo did not prepare any jury instrucitons
for the defense, despite Stern's continued communications and
demands that he do so. All the instructions presented to the
court were prepared by Stern. Aurillo was outrageously deficient
in this misconduct, and highly unprofessional. **Taylor v. Starnes**
650 F.2d 38 (4th Circuit 1981); **Lyons v. McCotter**, ante.; **Woodard
v. Sargent**, 806 F.2d 153 (8th Circuit 1986); **span,** ante.

Aurillo failed to move for a mistrial based upon Brown's
prosecutorial misconduct for presenting prejudicial remarks
and conduct (discussed elsewhere in this Petition), constituting
clear and undeniable ineffective assistance of counsel. **Nero
v. Blackburn**, 597 F.2d 991 (5th Circuit 1979); **Vela v. Estelle**,
ante.; **Clark v. Duckworth**, 906 F.2d 1174 (7th Circuit 1990)
**Seehan v. State of Iowa**, 37 F.3d 389 (8th Circuit 1994);

Case 2:06-cv-00028-MR   Document 1   Filed 10/26/06   Page 24 of 50

**Pocaro v. U.S.** 784 F.2d 38 (1st Circuit 1986); **U.S. v. Rusmisel**, 716 F.2d 301 (5th Circuit 1983); **Lyons v. McCotter**, ante; **Blackburn v. Foltz**, 828 F.2d 1177 (6th Circuit 1987)

Aurillo, at the close of the second trial, subsequent to the guilty verdict, upon meeting with Stern at the Buncombe County Detention Center, revealed to Stern that Aurillo had on the evening immediately before the start of the trial began taking the powerful psychotropic drug Zoloft. Aurillo began crying and told Stern that during the trial "I was 'fucked up' and couldn't think straight"

It can be argued that while his body was present, Aurillo was, in his mind, due to the absence of or the taking of the Zoloft, or at times because he was taking the drug, not there to provide meaningful consel. **Cronic**, 466 U.S. at 659, and n.25, 104 S.Ct. at 2046-2047, and n.25, and Stern was deprived of "the guiding hand of counsel." **Powell v. Alabama**, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932), cited in **Cronic**., at 660-61, 104 S.Ct. at 2047-2048. See also **U.S. v. Patterson**, 215 F.3d 776, 787-89 (4th Circuit 2000). Aurillo's conduct at the first trial proceedings clearly shows mental instability in a long term pattern, and his conduct throughout the proceedings sets this as a determinable matter.

Stern asserts the claim that had Stern known, before trial, that Aurillo was so impaired, Stern would have advised the court and objected to the trial proceeding based upon Stern's experience with Aurillo at the prior trial/mistrial, and knowing that Zoloft was of such a nature as to substantially impair Aurillo's ability

10

to function during trial at a level of effectiveness consistant with the objective reasonableness standard of knowledge and skill expected of a competent criminal defense attorney, or Aurillo was so non compos mentis as to need it. See Exhibit on Zoloft. **EXHIBIT 1 &2.**

That Aurillo failed to disclose this to Stern or the Court in a timely manner was unconscionable and unforgiveable misconduct.

At Trial, Aurillo failed to request sufficient time to review the Government's Affidavits on the Electronic Surveillance, and object to the proceedings continuing until sufficient analysis could be achieved.

At no time did Aurillo make any discovery material available to Mr. Stern to discuss or with with, dispite Mr. Stern's repeated requestand demands.

Aurillo was unprepared to voire dire the jury in either trial, and did a mere cursory performance at best on that issue.

Aurillo failed to prepare sufficiently as to be able to ask questions on direct and cross examination in proper form and with sufficient depth and clarity as to achieve the objectives of the defense.

Aurillo failed to subject the Prosecoution's case to a meaningful adversarial testing.

Aurillo mislead Stern as to Aurillo's credentials. He told Stern he as a trial attorny who had 30 years experience in Federal Criminal Defense when in fact his experience was mainly civil and Admiralty. Aurillo mislead Stern as to Aurillo's intentions as to defending Stern.

11

Aurillo misplaced and lost important defense exhibits and information sent him by Stern and Stern's wife.

Aurillo, through his incompetence, opened door for testimony by the defendant that would damage the defendant's case.

Aurillo displayed a lack of devotion to Stern's case, spending most of his time doing other things in pursuit of his personal vendetta with the IRS.

Aurillo allowed the Government's repeated ambush of Stern's defense to go insufficiently challenged or objected to.

Aurillo's lack of performance appears to be connected to Aurillo's continual demands for more money.

Aurillo failed to appeal the Court's denial of a Suppression hearing even after Stern repeatedly told him to and insisted that Aurillo do so. A urillo's excuse was "They will only deny the appeal and it is a waste of time."

Aurillo repeatedly failed to object to each and all of the hearsay evidence the government put forward, even though Stern attempted to get him to do so. Whenever Stern attempted to prompt Aurillo to do so, Aurillo told Stern to "Be quiet". The hearsay constituted a violation of the Confrontation Clause and was clear constructive denial of effective counsel. **Crawford v. Washington**, **Gochicoa v. Johnson**, 238 F.3d 278 (5th Circuit 2000). Aurillo's excuse was that if contined to object "Thornburg will sanction me a thousand dollars. I don't have that kind of money."

It is obvious that Aurillo was threatened and intimidated by Thornburg. This constitutes official interference with

12

the defense.  Aurillo should have taken steps to make this
a part of the record, yet did not act out of fear of retaliation
on the part of the court.

Stern argues that Aurillo's conduct falls squarely within
the definitions of deficient performance of the rankest sort.
Aurillo was incompetent at best, and totally derelict in his
duty at many critical stages of the proceedings.  **Gideon v.**
**Wainwright**, 372 U.S. 335, 83 S. Ct. 792, 9 L.Ed.2d 799 (1963),
implicating a deprivation of a Sixth Amendment right and creating
a fundamental constitutional error affecting Stern's "substantial
rights".  **Mempa v. Rhay**, 389 U. S. 128, 134, 88 S.Ct. 254,
257, 19 L.Ed.2d 336 (1967), to the point where Stern does not
have to show prejudice, though  the unescapable conclusion
is that Stern was definitely and repeatedly prejudiced.

Aurillo was clearly not "an attorney dedicated to the
protection of his client's rights under out adversarial system
of justice." **U.S. v. Swanson**, 943 F.2d 1070, 1075 (9th Circuit
1991).

Other ineffective assistance of counsel claims arise from
the fact that Aurillo did not impeach the testimony of Deputy
U.S. Marshal Forrest Howard using Howard's THREAT ANALYSIS
REPORT  of February 20, 1996.

The report was in the hands of Aurillo before trial.  Aurillo
never revealed this to Stern until after the trial was over.

Page 2 of the REPORT clearly shows the implication of
Dana Dudley and Russell`Landers in the mailing of the threatening
communication in Counts Six and Seven of the Indictment.  Further,
Aurillo did not do the necessary pre-trial investigation into

13

the facts. Had he done so, he would have discovered that, in fact, Dudley and Landers were the people wearing the CRTF "raid type' jackets in the Charlotte courtroom where Norris was tried, and had direct and personal connections to Norris, that they lived within a few miles of each other in Eastern North Carolina in the town of Erwin, and filed most of the paperwork into Norris' case in Charlotte. The envelopes Dudley and Landers mailed Norris' documents in, to the Charlotte Clerk of Court's Office surely bear the same postmark as the envelope used in this trial.

This matter is of great importance in the light of the corroborating video tapes placed into evidence at the Sentencing Hearing, showing Dudley and Landers being the people responsible for the documents, and not Mr. Stern.

Had Aurillo timely, competently and properly dealt with this issue, the only conclusion that the jury could have drawn was th Mr. Stern was innocent and that Dudley and Landers authored and mailed the document.

Aurillo had acquired several FBI Form 302's which contained material and substantial information that would be very beneficial to Stern and impeach testimony of FBI Agent Jim Russell and other government witnesses, yet he withheld from Stern the knowledge that they existed and did not employ them at the appropriate and effective points in the proceedings.

The same claim is raised with regards to several IRS Field Reports.

At trial IRS Agent Frank Houle sat in the witness box

14

with a large file folder in front of him containing many documents. Stern asked Aurillo if he had seen that file. Aurillo replied "I don't think so." Stern attempted to get Aurillo to make an issue of the file and have the contents revealed to the defense. Aurillo's response was "Be quite. Don't bother me."

## Defense counsel Aurillo rendered ineffective assistance of counsel when he failed to competently litigate a meritorious Fourth Amendment claim.

From the very beginnings of the instant case, AUSA Brown repeatedly utilized photographs, information, and testimony that were the fruits of an illegally, and unconstitutional search and seizure from Mr. Stern's residence, to sway the court and the jury against Mr. Stern.

The first instance occurred at the initial hearings held before Magistrate Judge Max O. Cogburn, Jr., with the testimony of FBI Agent Jim Russell. Subsequent instances came to appear in other hearings, at trial, and at the Sentencing Hearing.

In December of 1997, Macon County, North Carolina Sheriff Homer Holbrooks, in response to a Writ of Attachemnt issued in a Civil proceeding between Mr. Stern and BankAmerica Housing Services of Jacksonville, Florida, arrested Mr. Stern in the Sheriff's Offices in Macon County Courthouse in Franklin, North Carolina, without an Arrest Warrant, spirited Mr. Stern out of the Courthouse under armed guard, placed Mr. Stern in a Macon County Sheriff's Department Patrol Car, and took Mr. Stern to his residence on Allison Watts Road.

Upon arrival at Mr. Stern's property, it was observed that Mr. STern's home was surrounded by black garbed SWAT

15

Team members armed with assault machine guns and other weapons.

Mr. Stern was forced to open his front door to admit the armed officers. The treat was armed attack against his sleeping and unsuspecting wife who has heart problems.

Upon entry, the Sheriff's Deputy allowed Mr. Stern to awaken his wife and advise her to dress.

The Deputy then radio's the SWAT Team to approach the house. The Team entered the home in full battle regalia.

Mr. Stern and his wife were allowed about 30 minutes to pack personal belongings, catch and cage their two pet cats, and vacate the house. During that time the Sheriff's Department had the electric power supply to the house cut off and the telephones terminated.

Subsequently Sheriff's Deputies seached and ransacked Mr. Stern's dwelling and occupied same for four (4) days, taking photographs, videos, recording serial numbers of Mr. Stern's firearms and other personal possessions, cataloged various of Mr. Stern's private property, and removed from Mr. Stern's dwelling various pieces of Mr. Stern's personal possessions.

At no time did they have a Search Warrant nor an Arrest Warrant.

The Search and Seizure was clearly unconstituional on the specific grounds of want of proper Fourth Amendment Searhc Warrant supported by a swon Affidavit sufficient to establish probably cause. **Illinois v. Gates**, 462 U.S. 213, 246, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)

The arrest of Mr. Stern was clearly unconstitutional for want of an Arrest Warrant, as was the séarch of Mr. Stern's

16

briefcase conducted at the Sheriff's Office.

The use of the SWAT Team, the first time it was ever used in Macon County, to serve the Writ of Attachment and gain access to Mr. Stern's dwelling falls squarely afoul of the prohibition against the use of excessive force under the Fourth Amendment.

The subsequent occupation of Mr. Stern's dwelling, the four days, was unreasonable search and seizure.

If the object was to remove the Stern family and turn the dwelling over to BankAmerica Housing Services, that could have been accomplished by mere service of the Writ and BankAmerica Housing Services immediately taking control of the property.

It is patently obvious that the Sheriff used the Writ as an excuse, a bogus "fishing license", to gain access to and search Mr. Stern's dwelling, ablbeit the officers found nothing illegal therein.

> "The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." "This fundamental right is preserved by the requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer." **California v. Carney**, 471 U.S. 386, 390, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985)." in **U.S. v. Brookins**, 345 F.3d 231, 235 n. 4 (4th Circuit 2003).

The Sheriff had a right to serve the Writ and require the Stern family to leave the premises, but no more.

The Sheriff had no right, whatsoever, to cause Mr. Stern's arrest and search at his Offices in the Macon County Courthouse, force Mr. Stern to return, under armed police escort to his dwelling, use the SWAT Team to gain entrance when a mere request would have sufficed, to occupy for four days, search the house, the attached garage, the area under the house, and the metal building which sits 12 feet from the house, videotape and photograph

17

Mr. Stern's home and posssessions, catalog and record the serial numbers of Mr. Stern's possessions, and remove things from the home.

Mr. Stern has standing to bring this claim as he has a reasonable expectation of privacy in his home and papers. **Katz v. U.S.**, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); **Rakas v. Illinois**, 438 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); **U.S. v. Padilla** 508 U.S. _____, 123 L.Ed.2d 635, 640, 113 S.Ct. 1936, citing **Alderman v. U.S.**, 394 U.S. 165, 171-72, 22 L.Ed.2d 176, 89 S.Ct. 961 (1969).

Mr. Stern owns the home and propety on which it sits, in conjunction with his wife, as tennants in the Entirety.

Mr. Stern has repeatedly raised this matter whith Defense Counsel Aurillo from the first day of Aurillo's involvement in the instant case, insisting that Aurillo strongly advocate and litigate the Fourth Amendment issues contained therein, and seek suppression, under the Exclusionary Rule, of any and all items that are fruits of the illegality.

The items in question include and are not limited to:

1. The testimony of IRS Agent Alvis M. Tingle, **Trial Transcript Page 386, Line 4** through **Page 388, LIne 9.** Note: this testimony is also perjury, addressed in other portions of this Petition.

2. Government Exhibit No. 4-9. Note: This Exhibit is also a surprise Exhibit, addressed in other portions of this Petition.

3. The testimony of FBI Agent Jim Russell, **Trial Transcript**

18

**Page 476, Line 4** through **Page 477, Line 4.**

4.  Government Exhibits Nos. 14-1 and 14-2. Note: These are surprise Exhibits, addressed in other portions of this Petition.

5.  All testimony, photographs, videotape relating to the illegal search and seizure at Mr. Stern's home in December, 1997.

All of this material was highly prejudicial to Mr. Stern from the outset of the case. It was used as a basis for denial of release on bond, used to impugn the character of Mr. Stern at trial, and was again used against Mr. Stern, see **Stetencing Hearing Transcript, Page 34, Line 23** through **Page 36, Line 22,** and the 23 photographs.

## EXCLUSIONARY RULE APPLIES

It cannot be denied that the fruits of the December, 1997 search are the result of an unconstitutional search and seizure, in want of a warrant.

Equally, the photographs, Government Exhibits 14-1, 2, and 9 were obtained by a trespass on Mr. Stern's property by FBI Agent Russell in want of any warrant. Implicated in Russell's activities is the criminal violation of the North Carolina General Statutes against trespass, once, if not more times.

> "The exclusionary rule generally bars the admissibility at trial of tangible evidence, as well as verbal statements, acquired through unconstitutional means. See **Wong Sun v. U.S.,** 371 U.S. 471, 485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The rule excludes from admissibility "not only the primary evidence obtained as a direct result of an illegal search or seizure, **Weeks v. U.S.,** 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), but also evidence later discovered and found to be deritivite of an illegality or "fruit of the poisonous tree.'" **Segura v. U.S.** 468 U.S. 796, 804, 104 S.Ct 3380, 82 L.Ed.2d 599 (1984)

Case 2:06-cv-00028-MR   Document 1   Filed 10/26/06   Page 34 of 50

quoting **Nardone v. U.S.**, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed.2d 307 (1939).

Mr. Stern contends that the taint on these items is permanent and that all testimony resulting therefrom is "derivitive evidence", and must be labeled as such. See **Murray v. Carrier**, 487 U.S. 533, 536-37, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988).

"[T]he exclusionary rule also prohibits the introduction of derivitive evidence, both tangible and testimonial, that is the product ofthe primary evidence, or is otherwise acquired as an indirect result of the unlawful search***."

## SUPPRESSION WARRANTED

"The suppression or exclusionary rule is a judicially presecribed remedial measure and as 'with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." See **Segura,** 468 U.S. at 804. 104 S.Ct. 3380 (quoting **U.S. v. Calandra**, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1976).

In the instant case, the police conduct against Mr. Stern was clearly and undeniably unlawful, unreasonable, and unconstitutional searches and seizures, and outraged the Fourth Amendment, These actions cry out for redress and Mr. Stern, the party aggreived by this misconduct, aske the Court to so rule.

The application of the exclusionary rule is mandated for to not do so is to ratify and condone the unlawful police conduct laid out herein and give tacit permission for those involved to repeat their misbehavior, thereby maintaining the integrity of the judicial process.

## INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM ON MERITORIOUS FOURTH AMENDMENT CLAIM

Mr. Stern contends that he has above laid out a meritorious Fourth Amendment claim.

Mr. Stern "is not alleging a "mere failure" of his counsel

20

to raise a claim. Mr. Stern's ineffective assistance of counsel claim alleges that his counsel failed to adequately argue critical motions to suppress evidence that was obtained in violation of his Four  Amendment rights." **Martin v. Maxley**, 98 F.3d 844 (5th Circuit 1996).

Mr. Stern contends that under **Strickland v. Washington**, 466 U.S. 668, 104 S.Ct. 2052, 2064-74, 80 L.Ed.2d (1984), Aurillo has a duty to make reasonable investigations or to make reasonable decisions that makes particular investigations unnecessary. 466 U.S. at 691, 104 S.Ct. at 2066.

It is abundantly obvious that Aurillo did not do so, and failed to become familiar with Mr. Stern's case in this area on both a factual and legal basis. **Coles v. Peyton,** 389 F.3d 224, 225 (4th Circuit 1968); **Via v. Supt. Powhatan Corr. Ctr.**, 643 F.2d 167 (4th Circuit 1981).

While Aurillo vocalized an objection to some cases, he sat idly by and failed to follow through.

The claim in this area hinges on the fact that the Fourth Amendment claim that should have been properly brought before the trial court and litigated on its merits was incompetently handled by Aurillo.

Further, Mr. Stern had to intervene by filing a Fourth Amendment claim on Interlocutory Appeal at the 4th Circuit Court of Appeals, in a vain attempt to have the matter litigated.

Mr. Stern claims that Aurillo's performance on this matter was unprofessional and fell well below the objective reasonableness standard established in **Strickland**, at 688-89 and that Aurillo's performance was unreasonable under prevailing professional

21

norms and not sound strategy. **Kimmelman v. Morrison,** 477 U.S. 365, 381 and 84, 91 L.Ed.2d 323, 325, 106 S.Ct. 2574.

To this end, Mr. Stern shows the Court that as so ably stated in **Kimmelman,** at 383, 91 L.Ed.2d at 324, n.7 [15b]'

> It should be remembered that only incompetently litigated and defaulted Fourth Amendment claims that could lead to a reversal of the defendant's conviction on Sixth Amendment grounds are potentially outcome-determinative calims. **No reasonable lawyer** would forgo competent litigation of meritorious, possible decisive claims on the remote chance that his deliberate dereliction might ultimately result in federal habeas review." [emphasis added].

As a direct consequence of Aurillo's incompetancy and substandard performance, Mr. Stern was denied his opportunity to litigate his meritorious Fourth Amendment claim.

From that flows Mr. Stern's claim that

> "A defendant has a valid ineffective assistance claim whenever he has been denied that opportunity, regardless of the law on which counsel's error is based." **Kimmelman** at 393, 91 L.Ed.2d at 331.

Essentially, Aurillo's actions were clearly unreasonable and helped cement the prosecution's theory in the case. **Underwood v. Clark**, 939 F.2d 473 (4th Circuit 1991), and were serious errors in Aurillo's performance, unrelated to tactical choices or some plausible strategic aim, and of themselves constitute substandard performance. **Scarpa v. DuBois**, 38 F.3d 1, 11 (1st Circuit 1994).

Any first year law student would recognize the import of the matters involved and undertaken to competently litigate the issues. Aurillo did not.

To foreclose any possibility that the government will attempt to argue that the search and seizure was "voluntary",

Case 2:06-cv-00028-MR   Document 1   Filed 10/26/06   Page 37 of 50

Stern contends that it was the product of duress and coercion, done at the point of a gun (the Sheriff's Department SWAT Team armed with machine guns and other assault weapons) and subsequent to the illegal arrest of Stern in the office of Homer Holbrooks, Sheriff of Macon County, in the Macon County Courthouse, without an arrest warrant. **Schneckloth v. Bustamonte**, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047-48, 36 L.Ed.2d 854 (1973), cited in **U.S. v. McDonald**, 61 F.3d 248, 255 (4th Circuit 1995).

Taken at face value, the cumulative errors herein shown, and Stern states that this in not a full list of claims that could be made, there is no question that i nthe absence of the errors claimed, the outcome of the trial would have been materially different. **Crisp v. Duckworth** 743 F.2d 580 (7th Circuit 1984) **Dubria v. Smith** 197 F.3d 390 (9th Circuit 1999); **Stouffer v. Reynolds** 168 F.3d 1155 (10th Circuit 1999); **U.S. v. Tory** 52 F.3d 207 (9th Circuit 1995); **Thomas v. Calderon**, 120 F.ed 1045 (9th Circuit 1997); **Henry v. Scully** 78 F.3d 51 (2d Circuit 1996).

Based upon these grounds, Stern's conviction must be immediately overturned, in its entirety.

## AURILLO HAD A MATERIAL CONFLICT OF INTERESTS WHICH HE WITHHELD FROM MR. STERN AND THE COURT

In December of 1999, Mr. Aurillo arraived at the Buncombe County detention Center in a disheveled state of dress, unshaven, red-eyed, and evidencing an obvious agitated demeanor during a visit with Mr. Stern. **EXHIBIT 3** .

At that visit, Aurillo told Mr. Stern that he, Aurillo, was running from the U.S. Marshal's Service in New Orleans

Case 2:06-cv-00028-MR   Document 1   Filed 10/26/06   Page 38 of 50

to avoid being served with papers compelling him to testify to the grand jury in New Orleans. He told Mr. Stern that he, Aurillo, had retained counsel in the form of a retired federal judge with whom he was friendly, and that Aurillo's wife, Janice, was also taking steps to avoid contact with the Marshals.

He stated that he, Aurillo, was frightened that the U.S. Attorney in New Orleans was trying to indict Mr. Aurillo on IRS charges. Aurillo stated that he was going to "try to work something out  to keep from being indicted.", and that in the meantime, he was going to hide somewhere with friends.

During that period of time Aurillo's wife was ill from malignant cancer. A close friend of his wife, Gerri MacLain and Gerry's significant other, a paralegal named Ken, lived at the Aurillo home  so Gerri could nurse  Janice Aurillo and tend to her needs.

Subsequently, Aurillo told Mr. Stern that he "worked something out", but would not elaborate  on what transpired to negate the grand jury subpeona.

That Aurillo was under the governments guns at  the same time he was defending Mr. Stern raises an issue of a material conflict of interests. Further, it is entirely possible that some quid-pro-quo was worked out behind the scenes with the U.S. Attorney's office in New Orleans that might have a bearing on Mr. Stern's defense posture by Aurillo.

In contemplation of that possibility, Mr. Stern

24

had a friend contact Ms. MacLain who confirmed that the situation was as explained above. **EXHIBIT 4        .**

Mr. Stern contends that the circumstances described above give rise to a very real possibility that Aurillo struck some kind of deal with the U.S. Attorney in New Orleans which impacted Mr. Stern's defense through Aurillo agreeing with the U.S. Attorney to ease the government's burden in convicting Mr. Stern.

In any event, the conflict of interests taints the entire proceeding and should result in a new trial. **U.S. v. Brown**, 202 F.3d 691, 696-98(4th Circuit 2000). Mr. Stern was not informed of any 'deal' or conflict, hence he could not knowingly or intelligently waive his r ight to conflict-free representation. **Id.** The unsubstantiated information and speculation do not constitute enough firm information to make a voluntary waiver.

Mr. Stern, for the record, sets forth a claim and asserts and alleges that Mr. Aurillo did, in fact, strike a deal with the U.S. Attorney to "throw" Mr. Stern's case in return for the government dropping its investigation of Mr. Aurillo's tax matters and other potential charges.

Case 2:06-cv-00028-MR   Document 1   Filed 10/26/06   Page 40 of 50

## GROUND TWO

**MR. STERN WAS SUBJECTED TO INEFFECTIVE ASSISTANCE OF COUNSEL AT RESENTENCING WHEN DEFENSE COUNSEL JOHN ZWERLING'S PERFORMANCE FELL BELOW THE OBJECTIVE REASONABLENESS STANDARD EXPECTED OF A REASONABLY COMPETENT ATTORNEY, PREJUDICING MR. STERN AND CALLING THE RELIABILITY OF THE OUTCOME OF THE PROCEEDINGS INTO QUESTION.**

This claim rests on the legal standards set forth in the seminal case of **Strickland v. Washington**, 466 U.S. 668, 80 L.Ed. 2d 674, 104 S.Ct. 2052(1984).

To succeed on this claim, Mr. Stern must show: 1) that Defense Counsel John Zwerling's representation fell below an objective standard of reasonableness, and 2) that due to Mr. Zwerling's unprofessional errors, Mr. Stern was prejudiced.

From the outset of the relationship between Mr. Stern and John Zwerling (and his firm) certain specific issues remain constant.

The letters in **EXHIBIT 5**  , from Mr. Stern to his counsel, focus on (1) not waiving any viable issues and or defenses, (2) correcting the approximately 77 errors in the PSIR, (3) beginning early and doing a thorough job on preparing pleadings for the various proceedings, (4) maintaining a diligent line of communication and not waiting until the last minute to prepare so mistakes are not made.

Once the Supreme Court issued its remand, Mr. Stern

26

repeatedly urged Mr. Zwerling to heed and follow Mr. Stern's instructions with regards to these issues.

Mr. Stern also transmitted to Mr. Zwerling a series of documents and exhibits to be used at resentencing.

The primary documents are;

1. Renewed Motion For New Trial under Rule 33. **EXHIBIT 6** .

2. Defendant's Supplementary Objections To The Presentence Investigation Report and Motion for Evidentiary Hearing (with 22 Exhibits). **EXHIBIT 7** .

3. Position Statement Brief On REsentencing. **EXHIBIT 8** .

4. Sentencing Memorandum (With Exhibits). **EXHIBIT 9** .

5. Motion To Correct The Record. **EXHIBIT 10** .

6. Motion In Limine. **EXHIBIT 11** .

7. Motion For DNA Testing. **EXHIBIT 12** .

As it turned out, Mr. Zwerling for the most part disregarded Mr. Stern's repeated instructions and as a consequence Mr. Stern's case was seriously and negatively impacted.

To substantiate this claim Mr. Stern makes appear the fact that Mr. Zwerling well knew the the resentencing hearing was a foregone conclusion subsequent to the Supreme Court's ORDER in January of 2005, yet did nothing to prepare for that event until over a year later, after the Court issued its February 1, 2006 ORDER for Resentencing, **Docket # 181**, which as of the date of this Petition Mr. Stern has never received or seen, despite several requests

27

made to Mr. Zwerling for same.

Mr. Zwerling filed a deficient Motion for Revised Presentence Report, **Docket # 184**, on March 21, only 9 days before the scheduled hearing. The Court summarily denied that Motion, **Docket # 187**, on March 23, 2006, citing the deficiencies, the foremost being the total lack of any specific claims, stating "The "factors" that were allegedly ignored are not identified." This despite several years and many written insttuctions on the part of Mr. Stern that these issues be dealt with, and Mr. Zwerling's given word that he would do so.

Obviously Mr. Zwerling totally failed to do a professional job on this very important issue, costing Mr. Stern an opportunity to have the errors corrected, and constitutes, in and of itself ineffective assistance of counsel, **Osborn v. Shillinger**, 861 F.2d 612(10th Circuit 1988); **U.S. v. Gordon**, 172 F.3d 753(10th Circuit 1999); **U.S. v. Stevens**, 851 F.2d 140, 145 (6th Circuit 1988), and falls well outside the wide range of professional performance. **Smith v. U.S.**, 871 F.Supp. 251, 255 (E.D.Va. 1994); **U.S. v. Ford**, 918 F.2d 1343(8th Circuit 1990); **U.S. v. Headley**, 923 F.2d 1079(3rd Circuit 1991).

Mr. Zwerling then filed a  Motion For New Trial of his own devising, **Docket # 188**, on March 23, 2006, one week before the scheduled hearing. Mr. Zwerling's filing in no way resembled Mr. Stern's, **EXHIBIT 6    **, and left out

28

a number of on point and salient arguments an supporting case law.  As a result, the Court summarily denied that Motion, **Docket #193**, on March 29, 2006.

Mr. Stern points out that the denial was in error (discussed elsewhere in this Petition) but understandable in light of the deficient pleading that Mr. Zwerling filed.

On March 22, 2006, Mr. Zwerling filed the first Sentencing Memorandum. **Docket # 186**.

The following day, Mr. Zwerling's associate, Stuart Sears, arrived at the Caldwell County Detention Center in Lenoir, North Carolina. This visit was prompted by many frantic telephone calls by Mr. Stern attempting to find out what Mr. Zwerling was, or was not doing, calls by Mr. Stern's wife and brother, e-mails by Mr. Stern's wife and brother to Mr. Zwerling, and finally an ultimatum by Mr. Stern's brother to the effect that if Mr. Zwerling wanted to be paid, he would stop stonewalling Mr. Stern.

At that meeting, Mr. Sears showed Mr, Stern the first copy of the Sentencing Memorandum.

Mr. Stern was shocked and outraged to find that the document was obviously a quickly hashed together jumble of issues which did not reasonably begin to thoroughly address the matters of import. After several hours, Mr. Sears left with alist of corrections to be made, promising that the new material would be included in a second updated filing.

An amendment to the Sentencing Memorandum was filed by Mr. Zwerling on March 27, a mere three days before the hearing. **Docket# 190**.

Mr. Zwerling and Mr. Sears arrived at Caldwell County Detention Center on the morning of March 29, 2006. They brought with them a copy of the amended filing which in no way resembled the agreed upon changes.

Mr. Zwerling offered only excuses and would not tell Mr. Stern why the pleadings did not contain all the necessary elements agreed upon and insisted on by Mr. Stern. Mr. Zwerling told Mr. Stern that "we will just have to live with it. There is no time to change anything."

This is exactly the situation Mr. Stern attempted to prevent by insisting Mr. Zwerling not wait until the last minute to meet with Mr. Stern and formulate a strategy and prepare thorough documents.

Some shortcomings that are relevant are that Mr. Zwerling failed to thoroughly plead and present a diminished capacity argument under U.S.S.G.§5K.13, a strongly mitigating factor, which by itself constitutes ineffective assistance of counsel. **Ivy v. Casperi**, 173 F.3d 1136(8th Circuit 1999); **Correll v. Stewart**, 137 F.3d 1404(9th Circuit 1998); **Upshaw v. Singletary**, 54 F.3d 718(11th Circuit 1995); **Emerson v. Gramley**, 91 F.3d 898(7th Circuit 1996); **Loyd v. Smith**, 889 F.2d 1416(5th Circuit 1990); **Wood v. Zahradnick**,

30

611 F.2d 1383 (4th Circuit 1980).

The truncated and eviscerated pleadings left out volumes of important information which left gaping holes in the record. No reasonably professional criminal defense attorney would short change his client to the extent that Mr. Zwerling's errors and omissions did Mr. Stern. Further, the fact that Mr. Zwerling misled Mr. Stern as to Mr. Zwwerling's intent with regards to his conduct during the events leading up to the hearing is equally unprofessional.

It is patently obvious the Mr. Zwerling did not begin work on Mr. Stern's resentencing pleadings until the week before the hearing date.

In fact, during one telephone call to Mr. Zwerling's office, at the beginning of the week of the hearing, the young lady answering the phone told Mr. Stern "They are working like dogs to get the paperwork together."

This after weeks of "He's in Court", "He's out of town", and "He's busy with another client's case."

It is obvious that Mr. Zwerling simply did not plan and effectively carry out the necessary scheduling of time and workload so as to do an effective job for Mr. Stern.

The Supreme Court has spoken to this type of conduct of waiting until the week before the proceedings to begin working on a client's case, and failing to present mitigating evidence that was available as **per se** ineffective assistance

31

of counsel in **Williams v. Taylor**, 529 U.S. 362, 395, 146 L.Ed. 2d 389, 419, 120 S.Ct. 1495(2000), and this Court should find likewise, as the circumstances are not mere excusable neglect, and placed Mr. Stern in essentially the same position, along with his family, by the way, as Sharyn Seitzinger found herself in **Seitzinger v. Reading Hospital and Medical Center**, 165 F.3d 236, 241 (3rd Circuit 1999), and Kenneth Ray Martin in **U.S. v. Martin**, No. 2734 (8th Circuit May 27, 2005).

For the record, Mr. Stern incorporates herein, re-alleges, and re-asserts each and all of the claims in the 7 documents listed above, in their entirety.

Further credence is given to this argument by the fact that the record of this case reveals that at no time did Mr. Zwerling lodge an objection with this Court on the issue of the defense being limited to one hour on the first sentencing hearing and a mere 15 minutes at the March 30, 2006 hearing, thereby turning a blind eye to his client's right to a full and fair hearing.

Nothing prevented him from saying "Your Honor, we object to the limitation of time." Mr. Stern does so now.

Mr. Zwerling stood mute and never articulated a single objection to the sentence imposed on March 30, 2006 despite that sentence being over twice what was set out by the Supreme Court and the Fourth Circuit on remand and the fact that it was based on unconstitutional and unlawful criteria extrinsic to the case.

32

Mr. Stern posits that a claim for ineffective assistance of counsel based upon a length-of-sentence claim has been recognized by the Supreme Court in **Glover v. U.S.**, 531 U.S. 198, 148 L.Ed.2d 604, 121 S.Ct. 696(2001).

"[A]ny amount of actual jail time has Sixth Amendment significance." **Id,** 531 U.S. at 203, 148 L.Ed.2d at 611.

As **Glover** found that "the prejudice requirement [is] satisfied when the defendant was able to prove that his sentence had been increased by at least six months due to counsel's error at the sentencing hearing, so Mr. Stern asserts the claim and contends that the 124 months sentence, more than double the 57 months the Supreme Court and the Fourth Circuit established as the proper sentence, is more than sufficient to trigger the **Strickland** prejudice prong.

Had Mr. Zwerling not waited until the last minute, prepared thoroughly ahead of time, filed a full panopoly of fleshed out pleadings covering all, not some, of the many issues that were relevant, and entered timely and strong objections to any sentence above 57 months, there is every reason to believe the outcome of the proceedings would have been different. But for counsel's errors, Mr. Stern could have walked out of the courtroom on March 30th a free man.

Mr. Zwerling failed to appeal many issues set out in this Petition despite Mr. Stern's instructions to do so.

33

## GROUND THREE

### THE PROSECUTOR, A.U.S.A. DAVID A. BROWN ENGAGED IN IMPROPER AND IMPERMISSIBLE PROSECUTORIAL MISCONDUCT THROUGHOUT THE PROCEEDINGS, THEREBY "POISONING" THE JURY"S MINDS, AND STRIKING FOUL BLOWS AT EVERY TURN IN THE PROCEEDINGS.

"The United States Attorney is the representatiove not of an ordinary party to a controversy, but of a soverignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefor, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofolf aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor- indeed he should do so. But **while he may strike hard blows, he is not at liberty to strike foul ones.** It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." **Berger v.U.S.**, 295 U.S. 78,88, 79 L.Ed.1314, 55 S.Ct. 629, 633(1935), overruled on other grounds by **Stirone v. U.S.**, 361 U.S. 212, 4 L.Ed.2d 252, 80 S.Ct. 270(1960)." (cited in **U.S. v. Mitchell**, 1 F.3d 235, 236(4th Circuit 1993, wherein the court ruled "Because we conclude that, on these facts, the prosecutor's improper conduct amounts to plain error affecting substantial rights, we reverse the appellant's conviction and remand for a new trial.") (Emphasis added).

Mr. Stern contends that this is exactly the state of affairs that exists with regards to this case.

Mr. Stern requests the Court to take mandatory judicial notice, pursuant to **F.R.Evid. Rule 201**, of **EXHIBIT 13** , the Report on **Hearing before the Committee on the Judiciary, House of Representatives, One Hundred Fifth Congress, Second Session** on **The Consequences Of Perjury and Related Crimes**, and in particular, beginning at Page 84, the Statement of Professor Alan Dershowitz and the comments

34

on the New York City **Moellen Commission Report** coining
the word **"testilying"**, a concept that the Commission finds
is pervasive throughout the criminal justice system in
this nation.

Mr. Stern will make appear and show the Court that
the misconduct Professor Dershowitz complained of to the
effect "Clearly the most heinous brand of lying is the
giving of false testimony that results in the imprisonment
of somebody who is innocent." and goes on to state "All
reports on the pervasive problems of police perjury and
tolerance of lying prosecutors and judges point to a widespread
problem.", is present throught this case.

Mr. Stern contends that the prosecutor knowingly
procured false testimony and suborned perjury to obtain
the conviction against Mr. Stern **Napue v. Illinois**, 360
U.S. 264, 269, 79 S.Ct.1173, 3 L.Ed.2d 1217(1959), cited
in **Boyd v. French**, 147 F.3d 319, 329(4th Circuit 1998),warranting
reversal of the convictions.

Examples of the misconduct are  found as follows;

Testimony of Tina Neely-**TT, Page 263, Lines 19-21-**
Ms. Neely, in response to Brown's questions, states that
BankAmerica Housing Services is federally insured.

The Court is referred to **EXHIBIT 14**  , the response
to Mr.  Stern's F.O.I.A. request to the Federal Deposit
Insurance Corporation, September 17, 2002 (FDIC Log#02-0508)

35