which conclusively proves that BankAmerica Housing Services is not federally insured. This was perjury.

The next instance is found in the testimony of IRS Agent Tingle, **TT, Page 386, Line 2**

Agent Tingle states under oath: "I never went to his house. I did drive by the entranceway to his home." **TT, Page 386, Lines 2-3**.

At this point, Brown produces a surprise exhibit, Government Exhibit 4-9. **TT, Page 387, Lines 3-4**.

Brown asks Agent Tingle "Do you recognize Exhibit 4-9, Mr. Tingle?" **TT, Page 387, Line 20**.

Agent Tingle replies; "I do." **TT, Page 387, Line 21**. "This is the sign that was posted at the entranceway to his real estate in Macon County, North Carolina. **TT, Page 387, Lines 23-25**.

The Court is referred to **Exhibit 10** . The photographs and accompanying descriptions show that Agent Tingle's testimony is perjury, and AUSA Brown is suborning perjury.

There is no way Agent Tingle could see the sign recorded in Exhibit 4-9 from the roadway where he testified he drove "by the entranceway to [Mr. Stern's] home". It is simply physically impossible. The reasonable conclusion is that Agent Tingle and A.U.S.A. Brown met together pre-trial and colluded on an agreement to mis-state the facts. This constitutes a conspiracy to commit perjury and suborn perjury on this issue.

36

Mr. Stern contends that since Brown used the sign issue repeatedly throughout pre-trial, trial, and appeal proceedings, and the sign issue is used by the trial court and the Fourth Circuit in their decisions to justify upholding Mr. Stern's convictions and sentence, this matter is one of great import and needs to be corrected on the record.

Mr. Stern is prepared to put up several witnesses to corroborate what the photos reveal and totally discredit the Government on this patently untrue factual setting.

Another set of instances of perjury can be found in the testimony of Agent Tingle and Agent Ward, and Brown's many assertions that the IRS ceased collection activities once Mr. Stern submitted the first Affidavit of Probable Cause and Tingle and Ward read the newspaper and magazine articles that created concern.

The first Affidavit was January of 1997. The IRS continued to collect funds from Mr. Stern as follows;

| Date | Collected From | Amount |
|------|----------------|--------|
| ? | SDT-USA | ? |
| ? | Centura Bank | $1,519.92 |
| 2/13/1997 | Machine Diagnostics | 2,388.60 |
| 3/07/1997 | Machine Diagnostics | 552.98 |
| 4/04/1997 | Machine Diagnostics | 890.95 |
| 5/05/1997 | Machine Diagnostics | |
| 6/09/1997 | Machine Diagnostics | 1,442.37 |
| 7/10/1997 | Machine Diagnostics | 1,845.75 |

* See also **Exhibit** 15    with accompanying Table of 23 others

Mr. Stern claims that the discovery process that he contemplates in preparation for an evidentiary hearing

37

looking into these allegations will reveal even more supporting data and evidence of perjury and subornation of perjury.

This is a reasonable presumption resting on the fact that the U.S. Attorney is supposed to have in his possession all of the IRS records in Mr. Stern's case. Those records will be the same as much of what Mr. Stern already has from F.O.I.A./P.A. requests in the past which Brown scathingly demeans at trial. **TT, Page 705**.

Mr. Stern will now table a list of improper and purely inflammatory remarks by Brown.

| No. | TRIAL TRANSCRIPT PAGE & LINE(s) | | COMMENT |
|---|---|---|---|
| 1 | 15 | 4 | Illegal Tax Protestor |
| 2 | 15 | 13-14 | Tax Protestor |
| 3 | 16 | 15 | Non Filers |
| 4 | 17 | 4-5 | Tax Protest Propaganda |
| 5 | 17 | 11 | Antigovernment |
| 6 | 19 | 17 | Ernest Coble (no proof in evidence) |
| 7 | 19 | 24 | Shutting down the government (No proof in evidence) |
| 8 | 20 | 3 | Antigovernment |
| 9 | 35 | 9 | Antigovernment |
| 10 | 54 | 20-22 | See transcript text |
| 11 | 674 | 19 | Antigovernment |
| 12 | 674 | 24 | Antigovernment |
| 13 | 686 | 12 | (Sarcastic) Progovernment |
| 14 | 690 | 5 | (Sarcastic) Progovernment |
| 15 | 690 | 17 | Social Security Card issue (Irrelevant and immaterial) |
| 16 | 690 | 23 | N.C. Driver's License (Irrelevant and immaterial) |
| 17 | 691 | 17-18 | N.C.Driver's License (Irrelevant and immaterial) |
| 18 | 692 | 20 | (Sarcastic) Progovernment |
| 19 | 692 | 24-25 | In your face |

38

| 20 | 693 | 24-25 | (Sarcastic) In your face |
|----|-----|-------|---------------------------|
| 21 | 694 | 1 | (Sarcastic) In your face |
| 22 | 694 | 10-11 | (Sarcastic) In your face |
| 23 | 701 | 3-4 | (Sarcastic) Progovernment |
| 24 | 705 | | REF: Legitimate F.O.I.A./P.A. requests Mr. Stern made |
| 25 | 708 | 22 | (Sarcastic) You don't remember a lot, do you? |
| 26 | 792 | 24 | Illegal tax protestor (Characterizing Mr. Stern ) |
| 27 | 794 | 506 | Tax Protestor |
| 28 | 794 | 13-14 | Antigovernment, progovernment |
| 29 | 794 | 18 | (Sarcastic) Progovernment |
| 30 | 794 | 21 | (Sarcastic) Progovernment |
| 31 | 805 | 21 | Vocal Anti-tax protestor (Characterizing Mr. Stern) |
| 32 | 852 | 14-15 | Antigovernment, violent protesting groups |
| 33 | 680 | 24 | (Sarcastic) Progovernment |
| 34 | 681 | 3 | (Sarcastic) Progovernment |
| 35 | 706 | 6 | (Sarcastic) Progovernment |

Mr. Stern will now table improper remarks where Brown injected his personal opinions on Mr. Stern's guilt and or the credibility of government witnesses.

| 36 | 793 | 8 | I believe the evidence |
|----|-----|---|------------------------|
| 37 | 795 | 13 | I believe he will tell you |
| 38 | 795 | 15 | But I believe he will tell you |
| 39 | 798 | 5 | I'll tell you who the Defendant conspired with. He conspired with his brother to submit a false claim to the IRS. He conspired with Alonzoe Fuller. He conspired with Ernest Coble. He conspired with LeRoy Schweitzer, and he conspired with every one of the Freemen out there in Montana. |
| 40 | 800 | 17 | I don't think you will have any trouble finding |

39

| | | | |
|---|---|---|---|
| 41 | 801 | 2 | I believe the judge will instruct you |
| 42 | 809 | 19 | I think these last counts demonstrate what a dangerous man Mr. Stern is |
| 43 | 813 | 7 | like when Mr. Shockey told him |
| 44 | 849-50 | 25, 1 | The defendant tried to tell you--I think he lied to you |
| 45 | 853 | 8, 9 | He lied to you (Mr. Stern) And based on his perjurious testimony alone |
| 46 | 796 | 24 | Ernest Coble |
| 47 | 797 | 23 | Ernest Coble |
| 48 | 805 | 1-4 | What was the defendant's response to that?He filed a million dollar comptroller warrant with the Macon County Treasurer's Office. |
| 49 | 808-09 | 23-2 | This was one directed to federal law enforcement authorities and to IRS employees in particular. (The sign issue again) That was a warning to Mr. Tingle. You come on this property, you are likely to get shot.(Even though the sign in question says nothing of the sort.) |
| 50 | 810 | 105 | He is a court. He is a state. He is a human being. He is a person unto himself. He is not bound by the laws of the United States. He is not bound by the laws of North Carolina. |
| 51 | 812 | 2-5 | and that his particular understanding because there was no oMB number on the 1040 (not what Mr. Stern said) that he is not required to file a tax return.(Mr. Stern's argument is that the number is incorrect and due to the incorrect number, he is not required to file that specific form.) |
| 52 | 812 | 13-14 | Ditto |
| 53 | 849 | 5-6 | Mr. Coble (and again) Mr. Coble |

40

Mr. Stern argues that under the accepted standard of review as set forth in **U.S. v. Brockington**, 64 F.3d 907(4th Circuit 1995), "First, the prosecutor's comments must, in fact, have been improper. Second, the remarks must have so prejudiced the defndant's substantive rights that the defendant was denied a fair trial. **Id., at 875.**

Within that test, the second prong requires;

"(1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and prejudice the accused;

(2) whether the remarks were isolated or extensive;

(3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and

(4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters."

**U.S. v. Samad**, 754 F.2d 1091, 1100(4th Circuit 1984); **U.S. v. Morsley**, 64 F.3d 907(4th Circuit 1995)(citing **Brockington**); **U.S. v. Mitchell**, 1 F.3d 235, 241 (4th Circuit 1993)(quoting **U.S. v. Harrison**, 716 F.2d 1050, 1052(4th Circuit 1983), cert. denied, 466 U.S. 972, 104 S.Ct.2345, 80 L.Ed.2d 819(1984); **U.S. v. Loayza**, 107 F.3d at 262 (quoting **U.S. v. Francisco**, 35 F.3d 116, 120(4th Circuit 1994).

Mr. Stern alleges and asserts the claim that taken under the concept of the totality of the circumstances, the remarks were, in fact, extensive and perversive through-out the proceedings, pre-trial, at trial, and post trial.

No reasonable observer could believe they were accidental, therefor they must be deliberate.

41

Mr. Stern contends that absent the remarks, there was a want of competent evidence to convict him.

Even the most casual and unenlightened layman observer could not mistake the fact that the comments were deliberately sarcastic sophistry and carefully contrived chicanery designed to be placed before the jury to divert their attention to extraneous matters and inflame their passions against Mr. Stern.

To further bolster this argument, Mr. Stern points to Brown's repetitious focusing the jury on the word "constable" found in Government Exhibit 11-1. He repeatedly drew parallels between the word constable and the word marshal and worked to convince the jury they mean one and the same, even though he knew, or should have known they do not.

While the Exhibit used the word "constables", the Macon County had no such officer. A constable is a public official distinct and removed from the activities of the Macon County group. See **Harrison v. Willie**, 132 F.3d 697 (11th Circuit 1998), **Westlaw Keycite 21 "Sheriffs and Constables". EXHIBIT** 16 .

Brown knew this to be the case, yet despite the defense's objections, the Court allowed him to continue the specious argument merely to focus the jury away from the truth that the Macon County group was peaceful and harmless.

42

This effort by Brown was meant to agitate the emotions of the jury and paint Mr. Stern in a bad light.

The use of perjured testimony, as Brown knowingly did in order to ensure that he obtained a conviction at any cost, offends due process and voids the proceedings. **Mooney v. Holohan**, 294 U.S. 102, 112, 79 L.Ed.2d 791, 55 S.Ct.340(1935), and requires the conviction be reversed, in its entirety, **U.S. v. White**, 238 F.3d 537, 540(4th Circuit 2001).

Brown totally disregarded the Government's duty to deal fairly with Mr. Stern.

The broad ranging use of perjured testimony requires reversal. "This is true regardless of whether the Government solicited testimony it know or should have known to be false or simply allowed such testimony to pass uncorrected." **U.S. v. Agurs**, 427 U.S. 97, 103, 96 S.Ct.2392, 2397, 49 L.Ed.2d 342(1976); **Giglio v. U.S.**, 405 U.S. 150, 153, 92 S.Ct.763, 765-66, 31 L.Ed.2d 104(1972) (cited in **U.S. v. Kelly**, 35 F.3d 929, 933-35(4th Circuit 1994), and Mr. Stern asks that this Court so hold and rule.

Mr. Stern reminds this Court that under the standards applied by courts everywhere who have dealt with the matter of perjury by government witnesses, and subornation of perjury by prosecutors, "And of course perjury and the use of perjured testimony remain illegal."**U.S. v. Barnett**, 197 F.3d 138, 144(5th Circuit 1999)(cited in **U.S. v. Harris**, 210 F.3d 165, 167(3rd Circuit 2000).

43

Additional weight is given to these grounds by the decisions in **U.S. v. McKoy**, 771 F.2d 1207, 1210-11(9th Circuit 1985) and **U.S. v. Williams,** 989 F.2d 1061(9th Circuit 1993) to the extent that "a prosecutor may not express his opinion of the defendant's guilt or his belief in the credibility of a government witness." as Brown repeatedly did at trial.

Brown repeatedly argued evidence not presented at trial. "a prosecutor may not argue evidence not presented to the jury." **U.S. v. Mitchell,** supra; **U.S. v. Samad,** supra.

This set of claims is bolstered by the strength of **U.S. v. Collins**, 401 F.3d 212, 215(4th Circuit 2005) to the extent that ;

> "remarks of the prosecutor or conduct prejudicially
> affecting [Mr. Stern's] substantial rights so as to
> deprive him of a fair trial." citing **U.S. v. Scheetz**,
> 293 F.3d 175, 185(4th Circuit 2002);

as Brown made fall squarely within these prohibitions, and

> "it is impermissible for the prosecutor to indicate
> her personal belief in the credibility of Government
> witnesses or to elicit one witness's opinion that
> another witness has told the truth." **U.S. v. Hayes**,
> 322 F.3d 792, 8000(4th Circuit 2003), citing **U.S.**
> **v. Lewis**, 10 F.3d 1086, 1089(4th Circuit 1993),

as Brown did in these proceedings.

Another instance of perjury cropped up during the testimony of Deputy U.S. Marshal Forrest Howard when he testified that he cannot identify the other people on Government Exhibit 11-1, outside of Mr. Stern.

Marshal Howard authored a Threat Analysis Report dated

44

February 20, 1996, a copy of which Mr. Stern saw after
trial when it was found in material  defense counsel Aurillo
turned over to Mr. Stern's wife. On page 2 of that report,
he specifically identifies DANA DUDLEY and RUSSELL DEAN
LANDERS as two of the people on the document. **EXHIBIT** 17    .

What with DUDLEY'S and LANDERS' involvement with John
Anthony Norris's problems in Charlotte and the reports
generated by Court Security and the U.S. Marshals  Service
in that regard, and their subsequent notoriety from the
FBI seige in Montana, coupled  with what resides in the
files held  by the U.S. Attorney's offices, there was no
way the prosecutor could avoid knowing the testimony was
false. **Stockton v.  Commonwealth of Virginia**, 852 F.2d
740, 749(4th Circuit 1988), cited in **Hoke v. Netherland**,
92⁻ F.3d 1350, 1360(4th Circuit 1996).

Surely the above listed misconduct grounds for the
entire conviction to be overturned as constituting denial
of due process. **Donnelly v. DeChristoforo**, 416 U.S. 637,
643, 40 L.Ed.2d 431, 94 S.Ct.1868(1974); and **U.S. v. Kelly**,
35 F.3d  929, 933(4th Circuit 1994), "A conviction acquired
through knowing use of perjured testimony by the Government
violates due process."See  also **Rodgers v. Angelone**, 113
F.Supp.2d at 934[24-27](E.D.Va. 2000), citing **Stockton
v. Virginia**, 852 F.2d 740, 749(4th Circuit 1988), "a conviction
obtained by the knowing use of perjured testimony is fundementally
unfair and must be set aside if there is **any** reasonable

liklihood that the false testimony could have affected the judgment of the jury."(Citations omitted)(Emphasis added).

Given the scope and breadth of the perjury in this case, there is no way it could not have turned the jury's heads and materially swayed their decision against Mr. Stern.

Mr. Stern will now expand the record on this set of issues by pointing out further misconduct and violations of F.R.Evid. Rule 404(b).

| No. | TRIAL TRANSCRIPT Page & LINE(s) | | ITEM |
|-----|------|-------|------|
| 54 | 94 | 17-21 | Civil Rights TAsk Force |
| 55 | 138 | 9 | Western North Carolina Militia |
| 56 | 139 | 10 | Ditto |
| 57 | 223 | 3-6 | Ditto |
| 58 | 210 | 22 | Ernest Coble |
| 59 | 211 | 8 | Ditto |
| 60 | 674 | 1 | Issue of Mr. Stern's name |
| 61 | 675 | 4 | Ditto |
| 62 | 675 | 5 | Issue of Court's jurisdiction and American flag |
| 63 | 679 | 5-6 | Ditto |
| 64 | 684 | 8 | Mr. Stern's trips to Texas and Oklahoma |
| 65 | 690 | 16 | Mr. Stern's Social Security number |
| 66 | 690 | 23 | Mr. Stern's driver's license |
| 67 | 694 | 22 | Ditto |
| 68 | 699 703 | 17 through 20 | Georgia traffic stops, Civil Rights Task Force, legally owned and licensed to carry pistol |

46

| 69 | 703 | 21 through | |
|----|-----|------------|---|
| | 705 | 1 | Mr. Stern's alleged association with unidentified groups |

These are multiple instances of Brown inserting irrelevant, immaterial, and inadmissible evidence which Rule 404(b) strictly prohibits on the basis that "Evidence of other crimes, wrongs, or acts not admissible to prove the character of a person in order to show action in conformity therewith."
**U.S. v. Morsley**, 64 F.3d 907(4th Circuit 1995), at 911 II. [1,2], citations omitted.

Brown deliberately and repeatedly mischaracterized evidence during trial and more importantly in his closing arguments, the last thing the jury hears. As a result, his misconduct wielded further force on the jury's decision to convict Mr. Stern.

| | | | BROWN'S ASSERTION |
|----|-----|------------|---|
| 70 | 796 | 22-23 | "he gave one to Ernest Coble" (there is no evidence on record to support this mis-statement) |
| 71 | 801 | 14 through | |
| | 802 | 17 | This entire statement twists and mischaracterizes Mr. Stern' testimony. |
| 72 | 805 | 1-4 | "What was the defendant's response to that? He filed a million dollar comptroller warrant the next month with the Macon County Treasurer's office.' (There is not evidence on the record to support that position) |
| 73 | 805 | 4-6 | "He would not--he told folks they were bogus because he is trying to find that key to the chastity belt, get that free money." (There is no evidence on record to the effect that Mr. Stern ever said that the warrants were bogus.) |

47

| 74 | 805 806 | 23 through 5 | An attempt to get the jury to buy off on the fact that FOIA/PA requests are in some way criminal acts |
| 75 | 808 | 8-14 | Relates to purported cessation of collection efforts by the IRS, which didn't happen. (Discussed elsewhere in these pleadings) |
| 76 | 808 809 | 20 through 2 | Referring to the 'No Trespass' sign- "This was one directed to federal law enforcement authorities and to IRS employees in particular."(This statement is a lie) followed by "That was a warning to Mr. Tingle. You come on this property, you are likely to get shot."(Absolute balderdash. Pure fabrication. Nowhere can any evidence of such a sign be found)See **EXHIBIT 10** . |

These items are outrageous prosecutorial misconduct that falls squarely under the prohibitions set out in **Gall v. Parker**, 231 F.3d 312, 315 (6th Circuit 2000), and is compelling as requiring reversal of theconvictions in this case.

We will now go forward an discuss the fact that Brown utilized tampered evidence in his effort to get Mr. Stern convicted. Using fabricated evidence is illegal.

The testimony of Jonathan Hyde, accepted by the Court as an expert witness, testified that the Government's Exhibits #D-4, 5, and 6, were materially altered through the use of a scanning computer and 'dithering' techniques. **TT, at Page 488**. This is further grounds for reversal. **U.S. v. McDonald**, 61 F.3d 248, 254 (4th Circuit 1995).

A.U.S.A. Brown went further in disobeying the Rules and springing surprise evidence on the defense during trial. Government Exhibits 14-1, 14-2, and 14-9 were not made available to the defense pre-trial, clear violations

F.R.Cr.P. Rule 16, the strictures of **Brady v. Maryland**, and the duty of a prosecutor to treat the defendant fairly. **TT, Page 476, Lines 9-25**, **Page 477, Line 1-11**, **Page 387**.

"The American Bar Association Standards mandate the prosecutor to make the required disclosure even though not required to do so by the defendant." **1974 Amendment to Rule 16, F.R.Cr.P.** and **A.B.A., Standards Relating to Discovery and Procedure Before Trial §1.2**, and "by minimizing the undesireable effect of surprise at trial." **Id.**, and disclosure was made mandatory under §(a)(1)(A).

As a consequence of the surprise exhibits, the defense was foreclosed from making pre-trail objections and having a suppression hearing on exhibits that are fruits of an unconstitutional search and seizure and an illegal and criminal trespass on the part of FBI Agent Russell.

The exhibits are clearly without probative value, were used by Brown to further inflame their passions and distract them from the fact that there was insufficient evidence to convict Mr. Stern, and to merely confuse the jury and prejudice the trial.

Of further concern is that the jury was not given the exhibits, but merely the testimony of witnesses who perjured themselves with regards to what the photographs actually portrayed, thereby misleading the jury as to the reality of what the photographs contained.

49

These photographs should have been suppressed as they were unlawfully obtained, **U.S. v. Seidman**, 156 F.3d 542, 547 (4th Circuit 1998) (discussed elsewhere in this Petition), but Mr. Stern was deprived of the opportunity to avail himself of that remedy through surprise.

This ploy on the part of Brown is another illustration of the underhanded tactics employed by the prosecution.

Mr. Stern raises a claim of **SELECTIVE PROSECUTION**.

The Government's Exhibits 11-1 and 11-2 have on them over 28 signatures and names signing the document in addition to Mr. Stern. **U.S. v. Olvis,** 97 F.3d 739, 743-44(4th Circuit 1996).

All signatures (names) were on the same page, and for all intents and purposes carry the same weight.

Mr. Stern was obviously singled out from the other similarily situated individuals and targeted for prosecution based upon some type of animus based upon his political, religious, or social status and ideologies.

Mr. Stern contends that he was exercising his Rights in free speech and Rights to petition the Government for redress of grievances during the events leading up to the prosecution. This prosecution, based as it was on those motives, is constitutionally impermissible since the other similarly situated individuals were not prosecuted. **U.S. v. Tibbetts**, 646 F.2d 193, 195 (5th Circuit 1981), cited in **U.S. v. Jennings**, 724 F.2d 436 (5th Circuit 1984).

50

Mr. Stern asserts the claim and contends that he has adequately presented facts "sufficient to create reasonable doubt about the constitutionality of [his] prosecution." **U.S. v. Hayes**, 589 F.2d 811, 819(5th Circuit); **U.S. v. Ream**, 491 F.2d 1243, 1246 (5th Circuit 1974); **Jennings, Id.**; **U.S. v. Wilson**, 262 F.3d 305. 314(4th Circuit 2001).

The **SELECTIVE PROSECUTION** claim raised by Mr. Stern comes under the proposition set out in **Oyler v. Boles**, 368 U.S. 448, 456, 7 L.ed.2d 446, 82 S.Ct. 501 (1962), as an "other arbitrary classification" applying an "administration of a criminal law", **U.S. v. Armstrong**, 517 U.S. 456, 465, 134 L.Ed.2d 687, 698, 116 S.Ct. 1480(1996), "directed so exclusively against a particular class of persons...with a mind so unequal and oppressive" that the system of prosecution amounts to " a practical denial " of equal protections of the law. **Yick Wo v. Hopkins**, 118 U.S. 356, 373, 30 L.Ed. 220, 6 S.Ct. 1064(1886); **Rowsey v. Lee**, 327 F.3d 335, 343(4th Circuit 2003), at [10].

Mr. stern was selected out of the balance of the group and subjected to prosecution thereby denied equal protection.

The Government well knew the identities of many of those signing the document, and cannot plead ignorance of their location. See IRS Form 8052 of 6/26/1997 authored by Inspector Frank Houle. See **EXHIBIT 25** .

This is further grounds for reversal of the convictions.

51

The next sub-catagory of prosecutorial misconduct raised in this section is a claim of **PROSECUTORIAL VIN-DICTIVENESS**.

The record of this case essentially begins with the Grand Jury and subsequent September 28, 1999 arrest of Mr. Stern.

From the outset, Mr. Stern made what he asserts are a series of  good faith attempts to diligently assert his available statutory and Constitutional defenses.

A portion of that effort revolved around two letters sent to A.U.S.A. Brown requesting (1) Mr. Stern's access to the government's discovery material, and (2) requested to open a dialogue on a possible plea agreement.

Both were summarily denied.

While Mr. Stern recognizes that for the most part the U.S. Attorney's options in responding to these requests is discretionary, it maintains Mr. Stern's position that he was endeavoring to gain access to discovery materials relevant to his defense and that counsel was  not knowledgeable in the details of the relevance.

Subsequent to these requests and Mr. Stern's filings, Brown went before another Grand Jury and brought about a Superseding Indictment adding four (4) additional counts to the original three (3).

Mr. Stern alleges the solid presumption of **Prosecutorial Vindictiveness** is called for in this matter.  **North Carolina**

52

**v. Pearce**, 395 U.S. 711, 23 L.Ed.2d 656, 89 S.Ct. 2072;

**Blackledge v. Perry**, 417 U.S. 21, 40 L.Ed.2d 628, 94 S.Ct.

2098, Cf. **Bordenkircher v. Hayes**, 434 U.S. 357, 54 L.Ed

2d 604, 98 S.Ct.633, cited in **U.S. v. Goodwin**, 457 U.S.

368, 73 L.Ed.2d 74, 77, 102 S.Ct. 2485 (1982).

This part is grounded in both pre-trial and post trial

settings.

While as a usual point of reference, claims of Prosecutorial

Vincictiveness arise out of post-conviction settings, **Pearce**,

395 U.S. at 726, 89 S.Ct. 2072, and "Courts have been extremely

cautious in applying the presumption of prosecutorial vindictiveness

in the pretrial context." **U.S. v. Perry**, 335 F.3d 316,

324 (4th Circuit 2003), Mr. Stern is not foreclosed from

asserting such a claim, especially when Mr. Stern can demonstrate

a pattern, custom, and practice of such conduct on the

part of the prosecutor.

"A defendant's right to due process "requires that

there be **no** vindictiveness against [him] for having chosen

to exercise [his] constitutional rights." **U.S. v. Whaley**,

830 F.2d 1469, 1477 (7th Circuit 1987) (citing **North Carolina**

**v. Pearce)** (citations omitted), (cited in **Perry, at 323**).

(Emphasis added).

The operative word being " no " sets the stage for this

Court to feel compelled to find in Mr. Stern's favor.

Brown's vindictive and retaliatory behavior is demonstrated

by the following train of events;

53

1. The timing of the Superseding Indictment subsequent to two (2) unsuccessful attempts by Brown to have Mr. Stern arraigned, **Dkt. #11.5, 10/5/99 and #16.5, 10/12/99**, and Mr. Stern's various motions in his defense.

2. Brown's virtually instant denials of Mr. Stern's two requests, one for access to discovery, the other to open negotiations on a plea arrangement.

3. The stacking of charges set out in Counts Four through Seven of the Superseding Indictment.(Ct. 2, ¶4)

It is salient to point out that the vindictiveness of this prosecution is materially proven by this set of circumstances.

At this point it is readily apparent that Brown delayed the Superseding Indictment simply to gain an unfair advantage over Mr. Stern by being able to look over the various dilatory pleadings Mr. Stern filed and get an idea of how Mr. Stern was planning his defensive posture, and to further intimidate, harrass, hinder, and obstruct Mr. Stern's defense by forcing him to re-create and re-visit procedural matters already underway, load up the defense with more work, and to punish Mr. Stern for the filings he made prior to December 7th.

The proof of this allegation is made clear in that Paragraph 4 of Count Two of the first Indictment articulates precisely the same transaction and set of circumstances Brown took before the second grand jury to obtain a

54

Superseding Indictment on Counts Four through Seven. This also constitutes a waste of the court's time and resources, and is an abuse of the grand jury process, and certainly a mis-use of government funds to obtain the Superseding Indictment.

4. Brown's improper conduct at trial constitution almost 100 separate instances of prosecutorial misconduct discussed elsewhere in these pleadings.

5. The Presentence Investigation Report's 77 material errors (discussed elsewhere in these pleadings) which Mr. Stern claims was for the most part authored by Brown, or, at the very least, substantially authored by Brown, and the many obvious distortions of fact, fabrications, and material untruths contained in the Report.

6. Browns' outrageous conduct at post-trial proceedings, continuing to assert claims about the now infamous sign (clearly untrue) at sentencing and before the Fourth Circuit Court of Appeals), his use of wholly immaterial, irrelevant, and inflammatory statements and items extraneous to the proceedings to influence the court and/or justify an unjus-tifiable prosecution.

This case is readily distinguished as being more egregious than others cited herein as the conduct complained of is more extensive and permeated the entire course of the proceedings, was glaringly overt and readily identifiable, with regards to the Superseding Indictment, Brown did not uncover the

55

"information that suggests a basis for further prosecution..." subsequent to the first Indictment. See **Goodwin**, 457 U.S. 368, 385, 73 L.Ed.2d at 92 (**Blackmun, J.** concurring). It was known to Brown years before he brought the first Indictment, and brought it forward in Count Two, ¶4 of the first Indictment. The Superseding Indictment served no purpose other than to vindictively strike out at Mr. Stern.

Taken under the doctrine of the totality of the circumstances, the series of acts and or omissions set forth herein easily lead to the unescapable conclusion that Mr. Stern's assertion of **PROSECUTORIAL VINDICTIVENESS** is real, tangible, identifiable, and from both an objective as well as a subjective standpoint, "the facts of this case easily support the inference of "a realistic liklihood of vindictiveness." **Goodwin**, at 368, 73 L.Ed.2d at 92.

The Court is asked to remember that the operative word is "no". A single act violates this mandate. The enormous number of acts set forth herein preclude any defense against this claim and the prejudice that arose from the misconduct.

The courts of the Fourth Circuit have continued to accept as a **modus operandi** the reversal of cases on these grounds. **Spicer v. Roxbury Corr. Inst.,** 194 F.3d 547, 555(4th Circuit 1999); **U.S. v. Rolle**, 204 F.3d 133, 138 (4th Circuit 2000);**U.S. v. Godwin**, 272 F.3d 659, 673(4th Circuit 2001); **Harvey v. Horan**, 285 F.3d 298(4th Circuit 2002); **Bates v. Lee**, 308 F.3d 411, 422 (4th Circuit

56

2002); **Monroe v. Angelone**, 323 F.3d 286, 316(4th Circuit 2003); **U.S. v. Wilson**, 262 F.3d 305, 314(4th Circuit 2001).

Other courts agree.

In **Wynn v. U.S.**, 386 A.2d 695(D.C. 1978), the Court stated;

> "Because such tactics suggest an improper motive, we think the added charge of which he was convicted.. should be vacated..The setting lent itself to be viewed as a manifestation of vindictiveness. An actual retaliatory motive need not exist. It is sufficient if the state of the record is such that it might create an apprehension on the part of defendants that if they assert their right to a speedy trial there may be retaliation if the occasion presents itself."

This precisely describes what the record in this case demonstrates happened to Mr. Stern.

Mr. Stern asserted rights, and was subjected to additional charges brought about by overzealous prosecutorial misconduct and overreaching. **U.S. v. Schiller**, 242 A.2d 51, 56-57(D.C. 1980); **U.S. v. Myer**, 258 U.S.App. D.C. at 266-69, 810 F.2d at 1245-48.

The only reasonable and obvious conclusion that can be reached from this point of view is that Brown's tactics were deliberately designed to "up the ante" against Mr. Stern because Mr. Stern exercisee his "rights to defend in the case." **U.S. v. DeMarco**, 401 F.Supp.505, 508-09 (C.D. Calif. 1975)(citing **Blackledge v. Perry**, 417 U.S. at 28, 94 S.Ct. 2098); **U.S. v. Johnson**, 537 F.2d 1170(4th Circuit 1970), and "posed a realistic likelihood of vindictiveness."

In that the trial Court did not correct that constitutional infirmity, the presumption arises to the extent that

57

the possibility exists that Mr. Stern was also subject to retaliation by the Court. **Blackledge**, 417 U.S. 21, 40 L.Ed. 2d 628, 634, 94 S.Ct. 2098(1974) citing **North Carolina v. Pearce**, 395 U.S. at 725, 23 L.Ed.2d 656 (1969).

Mr. Stern contends that this more than adequately demonstrates this case be overturned.

Further, in accordance with court rules requiring pleadings set forth claims with specificity, Mr. Stern will now elaborate on his contention of intrinsic fraud, an allegation which is made to set the stage for further proceedings in an evidentiary hearing.

The fraud permeated the grand jury proceedings, pre-trial proceedings, both trials, and post-trial matters.

There is no way that Brown and those in his offices could avoid knowing the information listed above was false. **Stockton v. Commonwealth of Virginia**, 852 F.2d 740, 749(4th Circuit 1988)(cited in **Hoke v. Netherland**, 92 F.3d 1350, 1360(4th Circuit 1996).

Mr. Stern alleges and contends

1. Brown made representations and or induced government witnesses to make false representations.

2. They well knew of the falsity of the representations before they made them.

3. The false information was material to the case.

4. They intended that the false information be acted upon by the court, the  jurys, the Probation Office, the defense, and others involved.

5. They knew of the hearer's ignorance of the falsity.

58

6. It is abundantly clear that the hearers acted upon the information after relying on same.

7. Due to the government's representations, the hearers had a right to rely on those false representations.

From the record at this point it cannot be controverted that obvious badges of fraud are evident, perpetrated by Brown, an officer of this court, and others in collusion, confederation, and conspiracy with him to do so.

> "As we have noted above, fraud perpetrated by an officer of the court, including an attorney, constitutes fraud upon the court under well-settled federal law. See 12 Moore, et.al., **supra**, ¶60.21[4][b]." **In Re Genesys Data Technologies**, 204 F.3d 124, 131 (4th Circuit 2000).

Indeed Brown is a lawyer for one of the parties, the Government/Plaintiff.

> "Indeed, The Supreme Court in the leading fraud upon the court case emphasized that the fraud issue there was "not simply" perjury of a witness, but rather the participation of a lawyer for one of the parties. **See Hazel Atlas**, 322 U.S. at 245-46, 64 S.Ct. 997."**Id.**

> "Prejudice is not an element of fraud upon the court." **Hazel-Atlas**, 322 U.S. at 238; **Pumphrey v. K.W. Thompson Tool Co**, 62 F.3d 1128, 1132-33 (9th Circuit 1995)., and

> "Fraud on the court occurs when the misconduct harms the integrity of the judicial process, regardless of whether the opposing party is prejudiced. **Alexander v. Robertson**, 882 F.2d 421, 424(9th Circuit 1989). Furthermore, the perpetrator of the fraud should not be allowed to dispute the effectiveness of the fraud after the fact. **Hazel-Atlas**, 322 U.S. at 247; **Pumphrey**, 62 F.3d at 1133." **Dixon v. C.I.R.**, No. 00-70858 (9th Circuit, January 17, 2003) at 851.

What has been made to appear heretofor in this document is a long series of fraudulent acts that all come together to frame the unalterable conclusion and uncontrovertable

59

evidence of a clear case of fraud upon the court perpetrated by Brown acting in concert with others.

> "[O]nce fraud enters the case in any manner, the judgment
> must be vitiated without further investigation as
> to the materiality or the effect of the fraud on the
> judgment, citing **Hazel-Atlas Glass Co. v. Hartford**
> **Empire Co.**, 322 U.S.238, 64 S.Ct. 997, 88 L.Ed. 1250(1944)."
> **Great Coastal Exp. v. International Broth., Etc**, 675
> F.2d 1349, 1353-54 (4th Circuit 1982).

This Court has the inherent power, authority, and duty to overturn the judgment against Mr. Stern and should do so immediately. **U.S. v. Shaffer**, 11 F.3d 450, 462, and n.6 (4th Circuit 1993).

Only by setting aside the judgment could the manifest prejudice be cured. **Arnold v. Eastern Air Lines**, 681 F.2d 186, 194(4th Circuit 1982).

Mr. Stern will close this portion of the Petition by alleging that Brown entered into a"**conspiracy** with government witnesses to present false testimony and withhold exculpatory evidence in the course of criminal proceedings. **San Filippo v. U.S. Trust Co.**, 737 F.2d 246, 254 (2nd Circuit 1984)"(cited in **Dory v. Ryan**, 999 F.2d 679, 683(2nd Circuit 1993).

Under these circumstances, the entire train of events in this case is suspect and tainted by the stain of the conspiracy.

The Court should take note under F.R.Evid. Rule 201 of the fact that immunity does not extend to cover such extra-judicial conspiracies between witnesses and the prosecutor with regards to false testimony. **Briscoe v. LaHue**, 460 U.S. 325, 75 L.Ed.2d 96, 103 S.Ct. 1108(1983).

60

**A.U.S.A. DAVID A. BROWN IS NOT A MEMBER OF THE NORTH CAROLINA STATE BAR NOR ADMITTED TO PRACTICE BEFORE THE U.S. DISTRICT COURTS IN THE WESTERN DISTRICT OF NORTH CAROLINA RAISING A CLAIM OF FRAUD UPON THE COURT AND A FUNDAMENTAL DEFECT IN THE PROCEEDINGS CREATING STRUCTURAL ERROR.**

It is long established precedent and law in this country that the proper mode of action to try the right of a public official to hold office is by a Petition for a Writ of Quo Warranto, i.e. "By What Right?", and determines whether or not the office should be forfeit or lost. **Newman v. U.S. of America ex. rel. Frizzel**, 238 U.S. 537, 35 S.Ct. 881, 59 L.Ed. 1446 (19915); **Ames v. State of Kansas**, 111 U.S. 449, 4 S.Ct. 437, 28 L.Ed. 482 (1884).

Brown holds himself out to be occupying a public office, and the allegations raised in this ground are sufficient premises for an action of "QUO WARRANTO" to lie against his occupying said office.

Brown's involvement in the instant case goes back to at least August of 1999, if not earlier.

From that time forward, Brown has been practicing law in courts in North Carolina, and representign various agencies and principles in those courts in actions that are both civil and criminal in nature.

During that time Brown has made public statements holding himself out to be a practicing attorney in North Carolina.

61

On March 4th, 1998, Congressman Joseph McDade addressed the House of Representatives with prefatory remarks regarding his proposed legislation to strike at prosecutorial misconduct on the part of federal attorneys.

On March 5th, 1998, Congressman McDade, along with his co-sponsor, Congressman John P. Murtha, introduced H.R. 3396, titled "To establish standards of conduct for Department of Justice employees, and to establish a review board to monitor conpliance with such standards.", before the 2nd Session of the 105th Congress.  See Exhibit, and portions of Exhibit

The bill subsequently passed, and became law as a part of Pub.L. 105-277, Div.A, §101(b)[Title VIII, §801(c), October 21, 1998, 112 Stat. 2681-119.

A part of that enactment required the full force and effect of the law to "take effect 180 days after the date of enactment of this Act and shall apply during that portion of fiscal year 1999 that follows that taking effect, and in each succeeding fiscal year."  Conswquently, the Act was in full force and effect on April 20, 1999, and was codified as Title 28 U.S.C.§530B, Ethical standards for attorneys for the government."

The Attorney General then promulgated implementing regulations at Title 28 CFR Par 77, §§77.1 through 77.5.  "Source: Order No. 2216-99, 64 FR 19275, April 20, 1999".

The regulations were amended as of July 1, 2002, and brought current to March 12, 2003, 68 FR 11750.

At all times relevant, Brown is a resident of North Carolina and practices law in North Carolina courts.  See **28 CFR §77.2**

<u>**Definitions, (a), (b), (c), (d), (e).**</u>

At all times relevant Brown's daily duties are "substantial and continuous" conduct. **<u>28 CFR §77.2 (j)(2).</u>**

§530B (a) clearly states that "An attorney for the government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State."

> The Supreme Court has repeatedly held that "[s]ince the foundign of the Republic, the licensing and regulation of lawyers has been left exclusively to the States and the District of Columbia within their respective jurisdictions. **The States prescribe** the qualifications for admission to practice and **the standards of professional conduct. They are also responsible for the discipline of lawyers.**" **<u>Leis v. Flynt</u>**, 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979), (emphasis in cite), cited in **<u>New York State Bar Ass'n v. F.T.C.</u>**, 276 F.Supp.2d 110 (D.D.C. 2003)

This opinion was bolstered in **<u>Norfolk and Western Ry. Co. v. Beatty</u>**, 400 F. supp. 234 (S.D. Ill.). aff'd., 423 U.S. 1009, 96 S.Ct. 439, 46 L.Ed.2d 381 (1975), **<u>Leis</u>**, 439 U.S. at 443.

At all times relevant, Brown continues to practice law in courts delving into both State of North Carolina law and Federal law, deals with people, officers and officials, and employees of the State of North Carolina, in the due course of trade and dealings of his daily duties, and therefor his conduct fully satisfies the requirements for application of the doctrine of "minimum contact" as described in **<u>Du-Al Corp. v. Rudolph Beaver, Inc.</u>**, (1976, CA 4 MD) 540 F.2d 1230; **<u>International Shoe Co. v. Washington</u>**, 326 U.S. 310, 90 L.Ed. 95, 66 S.Ct.

63

154, 161 A.L.R. 1057, reported in **Rush v. Savchuk**, 444 U.S. 320, 62 L.Ed.2d 516, 100 S.Ct. 571 (1980), and falls into the conduct circumscribed by §530B, 28 CFR §77, and applicable North Carolina General Statutes.

The State of North Carolina legislature enacted certain statutes regarding the practice of law in North Carolina.

Specifically applicable to the instant matter are the following N.C.G.S. sections:

A. Chapter 84, §2.1, the definitions of "practice of law".

B. Chapter 84, §4, "Persons other than members of the State Bar prohibited from practicing law."

C. Chapter 84, §8, "Any person other than members of State Bar prohibited from practicing law. (§4), are subject to penalties laid out as "Any person, corporation, or association violating the provisions of G.S. 84-4 to 84-8 shall be guilty of a Class 1 misdemeanor.".

Obviously not only is Brown engaged in repetitive and long term fraud upon the courts and the people of North Carolina, it is patently obvious that he is guilty of a multitude of counts of violations of the criminal statutes of the State of North Carolina (and Federal law, which will be discussed later).

Each day that Brown has practiced law in North Carolina since April 20, 1999 established a separate count against him.

At this point it is relevant to point out, for the record, that Brown is not a member of the North Carolina State Bar, and he is in violation of the Local Rules of the Federal District

64

Copurts (Rule 83.1) as he is not properly admitted to practice before those courts, and finds himself in the same morass of illegality as was Mr. David M. Bagdade in **In Re Bagdade**, 334 F.3d 568 (7th Circuit 2003). See **Exhibit** 18.

It is necessary to make appear that Brown is also in violation of:

1. State Bar Rule 5.5 - Unauthorized Practice of Law

2. State Bar Rule 4.1 - Truthfulness in statements to others

3. State Bar Rule 3.8 - Special Responsibilities of a prosecutor

4. State Bar Rule 3.3 - Candor toward the tribunal (fraud upon the court)

5. State Bar Rule 8.4 - Misconduct by engaging in dishonesty, fraud, deceit, or misrepresentation

6. Title 18 U.S.C. §1001

7. Title 18 U.S.C. §1623

8. Title 18 U.S.C. §912

9. Title 18 U.S.C. §913

These allegations are based upon the fact that Brown was not properly a member of the State Bar nor properly admitted to practice before the District Courts, yet he held himself out to be so, and each government attorney must, each year, send a sworn statement to the Department of Justice stating that he is a member in good standing of the Bar in the State where he practices (North Carolina), which he could not do, and he held himself out before the two grand jurys and two petit jurys in Stern's case as being a bona fide fulled credentialed lawyer.

65

His misconduct was, in deed, a fraud upon the court and those viewing its proceedings, misrepresentation for his office, i.e. false personation, and using the stature of his office to throw the weight of the government behind his statements and portrayals to the court and various jurys in his posturing to get Stern indicted and convicted, while throughout the proceedings he himself was engaged in criminal conduct.

Next we must consider the fact that Brown's ongoing misconduct has other ramifications.

That Brown was misrepresenting himself to the courts implicates violations of Title 18 U.S.C. §401.

That Brown utilized the U.S. Mail/U.S. Postal Service to mail process, notices, correspondence, government documents and a myrid of other items i nthe U.S. mails and across state lines implicates violations of Title 39 U.S.C. §§3002 and 3003, and Title 18 U.S.C. §§1341 and 1342.

Brown's various activities fell well within the area of his ministerial duties prescribed and proscribed, as the case may be for each act or omission complained of and as related to the requirements that he carefully adhere to the requirements of State and Federal law, rules, regulations, and policies governing the proper conduct of his office.

On these grounds it is proper to bring forward and make appear that pursuant to the time honored doctrine established by **Ex Parte Young**, 209 U.S. 123, 52 L.Ed 714, 28 S.Ct. 441 (1908), carrying forward the findings in **Poindexter v. Greenhow**, 114 U.S. 270, 288, 29 L.Ed. 185, 5 S.Ct. 903 (1884) cited

66

in **Idaho v. Coeur D'Alene Tribe of Idaho**, 521 U.S. 261, 138 L.Ed.2d 438, 450, 117 S.Ct. 2028 (1997), to the effect that Brown is "said to have been stripped" of his representative or official character by operation of law.

"A ministerial officer is liable for an injury done, where his acts are clearly against the law." **Tracy v. Swartwout**, 10 Pet. 80, 9 L.Ed. 354, "*** or where he acts willfully, maliciously, and unjustly, in a case within his jurisdiction." **Kendall v. Stokes**, 3 How. 789, 11 L.Ed. 833. "When the law requires a ministerial act to be done by a public officer, and he neglects or refuses to do such an act, he is liable to the party injured. Mistake or honest intentions will not excuse him." **South v. Maryland**, 18 How. 396, 15 L.Ed. 433, **Amy v. Barkholder**, 11 Wall. 136, 20 L.Ed. 101. "for breach of public duty of an officer [as Brown is] is punishable by indictment. **South**, ante. "The judicially fashioned doctrine of official immunity of judicial, legislative, or executive [Brown] officers does not reach so far as to immunize criminal conduct proscribed by an Act of Congress [the McDade Act - §530B, and the criminal statutes above listed]. **O'Shea v. Littleton**, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed. 674; **Rouselle v. Perez**, 293 F. Supp. 298 (1968).

Prior to the enactment of §530B courts repeatedly said there was no preemption of State ethics laws relating to the regulation of licenses and discipline of Federal prosecutors. **U.S. v. Ferrara**, 847 F.Supp. 964, 968-70 (D.D.C. 1993) aff'd 54 F.3d 825 (D.C. Circuit 1995)(D.C. federal prosecutor licensed in New Mexico; State regulation of federal prosecutors was

67

expressly authorized by Congress since 1980, starting in appropriations

act (Pub. L. 96-132, 93 Stat. 1040, 1044 (1979); **Matter of**

**Doe**, 801 F. Supp. 478, 485-88 (D.N.M. 1992); **U.S. v. Gonzalez**,

933 F.2d. 417, 433 (7th Circuit 1991) ("Prosecutors must remember

to live up to the code of professional ethics and fair play

at all times or the American system of justice cannot endure,

and ultimately our nation will lose confidence in its rendering

of justice....").

After the enactment of §530B, the courts still support

State regulation. **Stern v. U.S.D.C. for Dist. of Mass.**, 214

F.3d. 4 (1st Circuit 2000); **Mendoza v. Gil**, 110 F.Supp.2d 28

(D.P.R. 2000).

This concept does not violate the separation of powers,

due to prosecutors powers of semi-judicial functions. **Price**

**v. State Bar of Calif.**, 30 Cal.3d 537, 179 Cal. Rptr. 914,

638  P.2d 1311 (1982); **Massameno v. Sattewide Grievance Comm.**,

234 Conn. 539, 555-56, 663 A.2d 317, 327 (1995); **State v. Moynahan**,

164 Conn. 560, 325 A.2d 199, cert. denied, 414 U.S. 976 (1973);

**In Re Friedman**, 79 Ill.2d 392, 30 Ill. Dec. 288, 392 N.E.2d.

1333 (1979);  **In Re Weishoff**, 75 N.J. 326, 382 A.2d 632 (1978);

**In Re Burrows**, 291 Or. 135, 629 P.2d 820 (1981).

In the even that Brown attempts to take refuge from his

evident misconduct and criminal acts by hiding behind the veil

of 28 CFR §77.5, we must first explore the clear, distinctly

stated, and unavoidable Congressional intent expressed in the

legislative history of §530B. **Alden v. Maine**, 144 L.Ed.2d

68

636, 527 U.S. 706, 119 S.Ct. 2240; **Almandez-Torres v. U.S.,**
118 S.Ct. 1219, 523 U.S. 224, 140 L.Ed.2d 350; **Lweis v. U.S.,**
140 L.Ed.2d 271, 118 S.Ct. 1135; **Lindh v. Murphy,** 138 L.Ed.2d
481, 117 S.Ct. 2059; **Hubbard v. U.S.,** 115 S.Ct. 1754.

Congress was crystal clear in their intent. The bill's
sponsor, Congressman McDade, on Thursday, March 5, 1998 said

"*** will safeguard the citizens of this nation from unfair,
abusive and unethical conduct by employees of the Department
of Justice. [Brown]. The bill, which we have name the **Citizens
Protection Act,** will also insure that the Department is not
able to exempt its own attorneys from the State laws and rules
of ethics as all other attorneys in this country."

"The rights and freedoms of our citizens will come under
increasing danger if we continue to allow the Justice Department
to police itself in secret and exempt itself from regular rules
of attorney conduct. We must strengthen oversight of the Department
and shine a bright light on prosecutorial misconduct."

"The bill establishes clear standards of conduct for Department
of Justice employees and makes them accountable for any misconduct."

"It also defines such actions as intentionally misleading
a court as to the guilt of any person and knowingly misstating
or altering evidence (as Brown did in Stern's case) as punishable
offenses."

This means that the employee MUST be held accountable
for intentional misconduct.

Can there be any question, based upon the scope of demonstrably
bad conduct by Brown, that this is intentionally perpetrated

69

misconduct?  It obviously can't be anything but intentionally planned and implemented.

The courts have also supported this point of view in saying, with regards to regulations that run contrary to Congressionally stated intent:

"The head of each department ofthe federal government may prescribe regulations <u>not inconsistent</u> with the law for the government of his department.  (emphasis added)  **Hesse v. Resor**, D.C. Mo. 1966, 266 F.Supp. 31, quoted in 5 U.S.C.A. §301.

"Rulings promulgated by Commissioner are nullity to extent thatthey conflict with this title."  **U.S. v. Martin**, C.A. Minn. 1964, 337 F.2d 171.

"Regulation *** was valid only if correct interpretation."  **Eastman Kodak v. U.S.**, 1943, 48 F.Supp. 357, 99 S.Ct. 569.

"Commissioner's regulations could not change law."  **U.S. v. Massey Motors**, C,A. Fl. 1959, 264 F.2d 552, aff'd. 80 S.Ct. 1411, 364 U.S. 92, 4 L.Ed.2d 1592

"*** regulations must be sustained unless unreasonable and plainly inconsistent with *** statutes ***."  **Thor Power Tool Co. v. C.I.R.**, 1979, 99 S.Ct. 773, 439 U.S. 522.

"An administrative regulation which does not carry into effect will of Congress as expressed by statute but operates to create a rule out of harmony with statute is a mere nullity."  **Dixon v. U.S.** 1965, 85 S.Ct. 1301, 381 U.S. 68, 14 L.Ed.2d 223.

In considering this position it is relevant to set forth the duty of the Attorney General to zealously defend the

70

constitutionality and applicability of §530B pursuant to 5
**Op. Off. Legal Counsel DOJ 25 (1981)**, title <u>The Attorney General's
Duty to Defend the Connstitutionality of Statutes</u>, and not
assist Brown to avoid his liability and culpability for misconduct.

The same argument holds true should Brown attempt to invoke
28 U.S.C. §517 as a shield. §517 was passed September 6, 1996,
well before §530B. Congress is taken to know what laws it
has passed and their import. Clearly Congress intends that
§530B stand in full force and effect <u>along with</u> §517.

It is equally and essentially correct to infer that §530B
and its effect supersede and have more wieght than §517 by
virtue of Congress's statement that government attorneys by
governed by State law.

It might also be correctly stated that the Supremacy Clause
and Federal law mandates Brown be ameniable to and abide by
Stte of North Carolina law, and be held accountable for violations
of same, with equal weight as violations of Federal law.

Even so, Brown has most demonstrably scoffed at the requirements
since April 20, 1999, and being supposedly well learned and
trained in the law, knew or should have known of the requiements,
yet ignored same.

Mr. Stern contends and asserts the claim that the proceedings
were and are fatally flawed from the outset.

The grand jury(s) proceedings are unavoidable tainted
by Brown's misconduct before them, and subsequent proceedings
without foundation. The court was without jurisdiction for
lack of Due Process, want of a legal indictment, and the case

71

and conviction is a nullity, ab initio.

Given the obvious and enormous magnitude of the dishonor, disgrace, and shame that Brown's misconduct heaps upon the Bar, the Federal justice and judicial system, the Courts, and the attendant ridicule in the public eye, dismissal of the case, with prejudice is the only option.

"Courts possess the inherent power to vacate or amend a judgment obtained by fraud upon the court." **Toscano v. C.I.R.**, 441 F.2d 930, 933 (9th Circuit 1971).

When that fraud rises to the level of "an unconscionable plan or scheme which is designed to improperly influence the court in its decisions" the courts not only can act, they should act. **England**, 281 F.2d at 309; **Levander v. Prober**, 180 F.3d 1114, 1119 (9th Circuit 1999); **Intermagetics Am. Inc. v. China Int'l Trust and Inv. Corp.**, 926 F.2d 912, 916-17 (9th Circuit 1991). See **12 Moore et.al ¶60.21[4][b].**

Fraud upon the court occurs when the misconduct harms the integrity of the judicial process regardless of whether the opposing party is prejudiced. **Alexander v. Robertson**, 882 F.2d 421, 424 (9th Circuit 1989).

Furthermore, the perpetrator of the fraud should not be allowed to argue or dispute the effectiveness ofthe fraud after the fact. **Hazel Atlas Glass**, 322 U.S. at 247; **Pumphrey**, 62 F.3d at 1133.

"As the Supreme Court observed more than fifty years ago, "[t]ruth needs no disguise."" quoted from **Dixon v. C.I.R.** No. 00-70858, (9th Circuit January 17, 2003).

72

There can be no question of the fact that Brown and his superiors who knew, or should have known of Brown's fraud and contrivance, worked a fraud on the courts and the public in de porting himself as he did. **In Re Genesys Data Tech, Inc**, 204 F.3d 124, 131 (4th Circuit 2000)

The misconduct was clearly designed and carried out in such a way as to defile the very underpinnings of the court and the judicial system and such was carried out while Brown presented and represented himself as an officer of the court. **Toscano**, 441 F.2d at 933.

"Such fraud corrupts the adversarial nature of the proceedings and the integrity of the witnesses and the ability of the trial court to judge impartiality." See **England**, 281 F.2d 304 quoted in **Dixon**, ante.

The misconduct complained of herein was and is pervasive and ongoing and is noteworthy not only because it defiled the sanctity of the court and the confidence of all future litigants, but also because it violated the constitutionally protected and guaranteed rights of Mr. Stern and all those tried under Brown's actions before and since. **Dixon**, supra at 852, See **Lavander**, 180 F.3d at 1118. "[T]ampering with the administration of justice in this manner involves more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public."

If Brown's misconduct is left unpunished, the court, the BAR, and all who exercise oversight over the offices and professional performance of Assistant U.S. Attorneys are sending a clear

73

message for the public to see that there is a double standard applied, and that the U.S. Attorneys and their assistants are free to be scofflaws...a "special class" above the law, while the common man is not.

Brown totally ignored his mandate to vindicate the right of the people to give those accuseda fair trial. **Donnelly v. DeChristofona**, 416 U.S. 637, 94 S.Ct. 1868 (1974).

The "prosecutor does not represent an entity whose interests include winning at all costs; the prosecuotr's client is society, which seeks justice, not victory." **U.S. v. Doe**, 860 F.2d 488 (1st Circuit 1988), also **Jenkins v. U.S.**, 353 U.S. 657, 77 S.Ct. 1007 (1957).

The unescapable conclusion is that due to Brown's misconduct, and the level of seriousness entailed, the entire proceedings in Case Number 2:99 CR 0081, against Mr. Stern, must be ORDERED, ADJUDGED, and DECREED REVERSED, the conviction thrown out and the sentence dismissed, in its entirety, with prejudice, and the record against Mr. Stern expunged where ever found, and Mr. Stern's rights be fully restored and he be made whole, nunc pro tunc.

If for no other reason, Mr. Stern claims a Fifth Amdnedment Due Process right to be prosecuted by a person who is conducting himself according to the law, and not by a scofflaw who is committing criminal offenses, perpetrating blatant fraud upon the court and the public, and holding himself above the law. See **Rochin v. California**, 342 U.S. 165, 168 (1952):

> "Regard for the requirements of the Due Process Clause
> "inescapably imposes upon this court an exercise of

74

judgment upon the whole course of the proceedings (resulting in a conviction) in order to ascertain whether they offend those cannons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses." **Malinski v. People of State of N.Y.**, supra, 324 U.S. at pages 417-417. Thes standards of justice are not authoritatively formulated anywhere as though they were specifics.  Due Process of law is a summarized constitutional guarantee of respect for those personal immunities which, as Mr. Justice Cardozo twice wrote for the Court, are so rooted in the traditions and conscience of our people as to be ranked  as fundamental", **Snyder v. Commonwealth of Mass.**, 291 U.S. 97, 105, or are "imlicit in the concept of ordered liberty". **Palko v. State of Connecticut**, 302 U.S. 319, 325."

This offense against the Bill of Rights must be cured by the

reversal and dismissal above sought.  "Decency, security, and

liberty alike demand****". Justice Brandeis in **Olmstead v.**

**U.S.**, 277 U.S. 438, 468 (1928).  The government cannot be allowed

to be a lawbreaker or have contempt for the law.  **Olmstead,**

**ante.**

Before closing this particular argument, it is appropriate

that Mr. Stern calls  to the court's attention the eloquent

and on point statements of Chief Judge Burciaga, in his MEMORANDUM

OPINION AND ORDER in **Matter of Doe**, 801 F. Supp. 478 (D.N.M.

1992), excerpted as follows:

"[T]he profession of the law, in its nature and noblest and most beneficial to mankind, is in its abuse and abasement the most sordid and pernicious.  **People ex rel. Bulkley v. Saloman**, 184 Ill. 490, 501, 56 N.E. 815, 818-819 (1900) quoting Lord Bolingbroke." **Id. at 479**

"Today, it is beyond argument that one of the lawyer's most noble responsibilities is to protect the individual against Government excesses." **Id.**

This Brown failed miserably to do, while dealing in exactly

the abuse and abasement above described.

"When a Governemnt lawyer, with enormous resources at his or her disposal, abuses this power and ignores ethical

standards, he or she not only undermines the public trust, but inflicts damage beyond calculation to our system of justice. This alone compels the responsible and ethical exercise of this power." **Id. at 480.**

This court has only to look at the record called to appear elsewhere in this Petiton to see that Brown engaged in the most egregious ongoing misconduct imaginable.

The action "QUO WARRANTO" lies aginst Brown's office, and this court has a material duty to come to grips with, and "rather seek to determine the fitness of an officer of the court to continue in that capacity and to protect the courts and the public from the official minintration of persons (Brown) unfit to practice." **Inre Echeles**, 430 F.2d 347, 349 (7th Circuit 1970), citing **Ex Parte Wall**, 107 U.S. 265, 2 S.Ct. 569, 27 L.Ed. 552 (1883)." **Id at 483.**.

Wherefor, the unalternable conclusion is that Brown's office must be forfeit, as well as Mr. Stern's conviction being overturned.

Mr. Stern respectfully reminds the Court of the statement of Senior United States Judge Graham Mullen, given at the 2002 Boone, North Carolina U.S. Attorney's Retreat, memorialized in the Charlotte Observer by Reporter Gary L. Wright; "A lying law enforcement officer is as much a slime dweller as any criminal defendant." "The message I was trying to get across was 'beware of Lord Acton's axiom that power tends to corrupt. And absolute power tends to corrupt absolutely."

This characterization fits the conduct of Brown in this case like a second skin.

76

# GROUND FOUR

## THE COURT ERRED IN DENYING STERN'S GRAND JURY CHALLENGES AND SUMMARILY DISMISSING SAME.

The Court materially and repeatedly erred in denying Stern's Grand Jury challenges.

Stern timely filed challenges to the Grand Jury. These documents, properly supported by Affidavits, are dated October 12, 1999, filed October 12, 1999, See **Docket Entry 22**, and March 15, 2000, and March 16, 2003, See **Docket Entry 83,** , were timely in nature, and complied with **F.R.Cr.P. Rule 6(b)(1)**

The Court summarily dismissed the challenges without a hearing.

The defects alleged in the challenges rise to a level of Constitutional proportions and when proven, will invalidate the Grand Jury and subsequent Indictments.

The Court's denial and dismissal constitutes a denial of Due Process Clause of the Fifth Amendment, the Grand Jury Clasue of the Fifth Amendment, the Nature and Cause Clasue of the Sixth Amendment, the Probably Cause Clause of the Fourth Amendment, and renders the proceedings fundamentally unfair.

These grounds are further proof of abuse of discretion on the part of the trial court.

When properly presented to the Court, as the challenges were, the Court had a duty to have a hearing on these matters, and Mr. Stern has an equal right to have these matters properly and fully heard.

Within these grounds Stern incorporates a **MOTION FOR PRODUCTION**

77

OF THE GRAND JURY TRANSCRIPTS AND MINUTES, as if fully reproduced herein by reference.

The MOTION seeks release, production and supplying to Mr. Stern of documents properly sought in conjunction to the challenges, and now more vitally necessary in order that Stern be able to particularize and call the Court's attention to specific incidents that support and prove Stern's claims herein.

Mr. Stern seeks the transcripts and minutes of both the Grand Jury proceedings, initial and superseding Indictment, as well as all those documents listed in Mr. Stern's challenges.

Further, Mr. Stern asserts the claim and contends that there is no longer any need for secrecy, and that Mr. Stern's need outweighsany other arguments.

Mr. Stern is entitled to the documents requested as the constitutional infirmities alleged are overwhelming, and Mr. Stern will prevail upon his claims.

Mr. Stern claims that good and sufficient grounds for this MOTION arise upon the stated facts of his Affidavits which remain undisputed or challenged by the Government. That the Affidavits are uncontradicted and particularize the claims asserted meets the test for this Court compelling this Court to Order the Government to supply same to Mr. Stern, without further proceedings needed.

Given the multitude of outrageous misconduct issues made to appear against Brown in other portions of this Petition, a strong inference can be made that Mr. Stern's challenges to the Grand Jury are on firm grounds and must be dealth with accordingly.

Case 2:06-cv-00028-MR   Document 1-1   Filed 10/26/06   Page 43 of 50

This court should stand firm in its administration of and dispensation of justice.

That "[T]he grand jury is a constitutional fixture in its own right, belonging to neither the executive nor the judicial brance." **U.S. v. Udziela**, 671 F.2d 995, 999 (7th Circuit 1982) means that Stern is at least equally entitled to the benefits thereof, benefits which have been heretofor not in evidence. "The constitutional provision is, as has been said, for the benefit of the accused." **U.S. v. Cox**, 342 F.2d 167, 170 (5th Circuit 1965)(footnote omitted).

> "Today the grand jury's independence in the criminal justice system has declined with the increasing complexity of the crime and the growth of the role of prosecutors, professional police and investigative forces....It is now the United States Attorney who gathers the evidence for later presentation to the grand jury. He calls and examines witnesses, presents documents, explains the law, sums up the evidence, and requests an indictment." **U.S. v. Kleen Laundry & Cleaners, Inc.**, 381 F.Supp. 519, 521 (E.D. N.Y. 1974), see also **U.S. v. Hogan**, 712 f.2d 757, 759 (2nd Circuit 1983)("prosecutors, by virtue of their position, have gained such influence over grand juries that these bodies' historic indepenence has been eroded.)(citations omitted).

It is the duty of this court to use its authority to which Brown compromised the independence of the grand jury, and created and orchestrated the miscarriage of justice which has been wreaked on Mr. Stern. **Hogan** at 759-61; **U.S. v. Ciambrone**, 601 F.2d 616, 623 (2nd Circuit 1979); **ABA Standards for Criminal Justice**, 3-3.5 (2nd Editions 1980)(reviewing strictures placed on prosecutors in grand jury.

The misconduct that will become evident by its appearance on the record of the transcripts of the two grand jury proceedings will clearly dictate dismissal of the indictments, reversal of the conviction, and overturning the sentence. **U.S. v. Estepa**,

471 F.2d 1132, 1136 (2nd Circuit 1972)(Friendly, C.J.); **Bank of Nova Scotia v. U.S.**, 487 U.S. 250 (1988); **U.S. v. Williams**, 504 U.S. 36, 46 (1992) (quoting **U.S. v. Mechanik**, 475 U.S. 66, 74 (1986)(O'Connor, J., concurring).

To overlook this would be stating that this court summarily abrogates the constitutional protections of the grand jury process, in their entirety, something that Mr. Stern has a good faith belief this court would not do.

80

## THE GOVERNMENT FAILED TO PROVE AN ESSENTIAL ELEMENT OF THE OFFENSE OF TITLE 18 USCS §876, IN COUNTS SIX AND SEVEN.

An essential element of the offense against Title 18 USCS §876 is set out in **U.S. v. Worrell**, 313 F.3d 867, 874(4th Circuit 2002) as;

> "[t] only proof of specific intent to threaten required to support a conviction under ...§876 it that the defendant **know ingly deposits** a threatening letter in the mails, not that he intended or was able to carry out the threat. **U.S. v. Chatman**, 584 F.2d 1358, 1361 (4th Circuit 1978).")Emphasis in original).

The holding by the Appellate Court requires proof that Mr. Stern "knowingly deposits" the document in the mail as distinguished from merely writing, drafting, or signing the document. The required act is the depositing in the mail. Without proof of that act, an essential element of the offense is not proven.

The government's only witness at trial to speak to that element was Deputy U.S. Marshal Forrest Howard.

In response to questions with regards to that act, Deputy Howard, on the stand and under oath, states "No, sir. I do not know who dropped them in the mailbox." **TT, Page 455, Line 16 through Page 456, Line 4.**

The government failed to prove the required element and mere speculation cannot be used to convict Mr. Stern.

Count Two, ¶4, and Counts Four through Seven must be ruled reversed on these grounds.

Lest the government attempts to argue against this, Mr. Stern points out that mere circumstantial evidence

81

evidence is insufficient to convict.

Also before the Court is Russell Dean Landers' Affidavit , the fact that the envelope was mailed from Erwin, North Carolina, a few miles from LAnders' and Dudley's home at the time in Four Oaks, North Carolina, all 7 hours away from Mr. Stern's home in Macon County, the video tapes showing Landers, Dudley, and John Anthony Norris, Jr. activities with regards to the document in question, similar documents sent to other government agencies by Landers and Dudley involving their activities in New York and Montana, the records and archives of Court Security and the U.S. Marshals Service with regards to their activities surrounding John Anthony Norris' cases in Charlotte, Case # 95-5117, CR-93-30, and 5:92-cr-40-2-V, and their filings into those cases, their names on the documents, and the fact that the government has their computers, CD ROM archives from the hard drives, and evidence logs showing those documents resident on their computers all seized in 1996 in Brussett, Montana by the FBI.

The overwhelming circumstantial evidence points directly at Landers and Dudley, and exonerates Mr. Stern, the Affidavits nothwithstanding.

82

# GROUND SIX

## COUNTS ONE AND TWO MUST BE REVERSED ON THE GROUNDS THAT THE GOVERNMENT DID NOT PROVE AN ESSENTIAL ELEMENT OF THE OFFENSE.

Nowhere in the record can be found any proof that the IRS is an agency of the United States.

The gravamen of Count One is a conspiracy to defraud the United States, and Count Two to obstruct the IRS.

Underlying both is the presumption that the IRS is part of the government of the United States.

The thrust of this argument is that nowhere in Title 5 of the U.S.C. nor in Title 31 can be found any listing of the IRS as an agency of the United States.

More importantly, Mr. Stern makes appear that in the proceedings of **Diversified Metal Products, Inc. v. T-Bow Company Trust, Internal revenue Service, and Steve Morgan**, Case No. 93-405-E-EJL, certified by the Clerk of Court, United States District Court for the District of Idaho, the government, by and through United States Attorney Betty H. Richardson and Richard R. Ward, trial Attorney, Tax Division for the U.S. Department of Justice, catagorically states "Denies that the Internal Revenue Service is an agency of the United States Government but admits that the United States of America would be a proper party to this action." **EXHIBIT 19** .

This is repeated in the United States Attorney's SECOND DEFENSE to the extent that "The Internal Revenue Service

83

is not a proper defendant and the United States should be submitted in its place."

Clearly, while the United States Attorney might have slipped and let a secret out in to the public domain, nonetheless, the claim is clarion clear. Whatever the relationship of the IRS is to the government, it falls short of the nexus required to effect the instant prosecution absent any proof on the record.

Nowhere in the text of Counts One or Two can be found any reference to the United States. Consequently the Indictment and proof at trial falls far short of that necessary to meet the test for that essential element of the offense.

The logical next step is the, as a matter of fact, IRS Agents Tingle, Ward, and Sizer are not actually employed by the United States, and the charge against Mr. Stern fatally flawed to that extent. Counts One and Two must be reversed on this set of facts.

84

## GROUND SEVEN

## THE GOVERNMENT FAILED TO PROVE AN ESSENTIAL ELEMENT OF THE OFFENSE IN COUNT THREE WARRANTING A REVERSAL OF THE CONVICTION ON THAT COUNT.

The Fourth Circuit has established a concrete position with regards to the requirement that the Government must prove a risk of financial loss.

That requirement is set out in **Elliott v. U.S.**, 332 F.3d 753, 764(4th Circuit 2003) which stands for the proposition that "we have held that risk of financial loss must be proven under §1344, ***".

The Probation Officer states in his PSIR that there was no loss.

The testimony of Mr. Kerr, the Government's expert witness from the Comptroller of the Currency testified that they had sent out Notices warning banks of the Comptroller Warrants. The branch manager for First Union Bank in Franklin, North Carolina testified that he did not deposit the Comptroller Warrant Mr. Stern gave him, but sent it on to their Charlotte legal office. It was never deposited. Essentially the testimony was that there was no risk of loss due to the alerts and procedures in place to prevent any risk of such a loss, clearly establishing that this essential element was not present at trial.

On this basis, the conviction on Count Three must be reversed. Of further note is ;