"" the risk created enters into the determination of the offense level only insofar as it is incorporated into the base offense level. Unless clearly indicated by the guidelines, harm that is merely risked is **not** to be treated as the equivalent of harm that occurred." U.S.S.G. §1B1.3, comment.(n.5)." (Emphasis added) **U.S. v. Renick**, 273 F.3d 1009, 1027 (11th Circuit 2001).

Consequently, there can be no enhancements over the base offense level on the grounds that there was no risk, and, as a matter of law, the Jury Verdict Sheet reveals that the jury only found as in the indictment on Count Three, precluding importation of other instruments' face value from other Counts since they were not found by the jury nor admitted by Mr. Stern in a plea agreement, **Blakely v. Washington**, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403(2004), and **Apprendi v. New Jersey**, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435(2000), under the beyond a reasonable doubt standard. **U.S. v. Booker**, 543 U.S. 220, 125 S.Ct.738. 160 L.Ed.2d 621(2005). Absent an explicit finding by the jury, Mr. stern has no exposure for any enhancement over what is reflected in Count Three of the Indictment, and the current 124 month sentence is therefor unreasonable, and offends the Sixth Amendment.

See **EXHIBIT** 20-21

The second point of contention on this issue is that Mr. Stern asserts the claim that the holding of the Fourth Circuit in relation to Mr. Stern's claim that the government did not prove that First Union National Bank was FDIC insured at the time of the offense, and that "Stern's

86

challenge is without merit." **Case No. 02-4091** (4th Circuit April 23, 2004), at III. is in error.

This is especially important in light of the 4th Circuit's equivocation to the extent that

> "We, ourselves, are puzzled as to why the government did not take a more straightforward approach in proving the federally insured status of First Union as of December 1995. For example, the government could have submitted an FDIC certificate for First Union contemperaneous with that time."

This is a jurisdictional question which can be brought at any time in the proceedings. **McGrath v. Krislensen**, 340 U.S. 162, 95 L.Ed. 173, 71 S.Ct. 224(1950); **California v. LaRue**, 409 U.S. 109, 112, 93 S.Ct. 390, 34 L.Ed.2d 342(1972).

The prosecution must show beyond a reasonable doubt that First Union was, at the time of the offense, a federally insured institution. **U.S. v. Goldblatt**, 813 F.2d 619, 623-24 (3rg Circuit 1987); **U.S. v. Cloud**, 872 F.2d 846, 850 (9th Circuit), cert. denied, 493 U.S. 1002, 110 S.Ct. 561, 107 L.Ed.2d 556(1989), in **U.S. v. Brandon**, 17 F.3d 409, 424 (9th Circuit 1994). **Stern**, Id., citing **18 USCS §20**, and **1344**.

Mr. Stern disputes the conclusion of the 4th Circuit on the grounds that unlike the court in **Safely**, the case on which the 4th Circuit relies in **Stern, Id.**, the 4th Circuit "are puzzled" i.e. unsure, of how the evidence ostensibly proved this critical fact, and have to go to lengths to make a convoluted argument to attempt to justify that conclusion.

Case 2:06-cv-00028-MR   Document 1-2   Filed 10/26/06   Page 2 of 44

No such insecurity was expressed in **Safley**, distinguishing the two cases from each other.

Mr. Stern argues that Cordone used the word "are" as specifically relates to the time at trial, July of 2000, versus "was" or "were" relating back to the time of the offense.

Looking to the Webster's Third International Dictionary Unabridged Edition, 1993, Page 115;

"Are-present tense 2d singular,are, **erum** (we are.
versus

"was- 1st and 3rd singular past indicator :Something
that was past. **Id., Page 2578**.
versus

"were-2nd singular  past indc and 1st  & 3rd past
subj. **Id., Page 2597**

There is no way to misconstrue the thrust of Mr. Cordone's testimony. First Union might well have been insured by the FDIC in 2000, but Mr. Cordone had a choice as to stating whether or not it "was" or "were" insured in 1995, something he did not do.

The Court issued no instructions to the jury with regards to this specific and narrow matter, leaving the jury floating in a vacuum as to the exactitude and necessity of a precise finding with regards to this essential element of the offense.

Further, Mr. Stern makes appear that the 4th Circuit's reliance on **Safley** is diluted and in conflict with decisions of other Circuits such as found in **U.S. v. Allen**, 88 F.3d

765, 768-79 (th Circuit 1996) where that court found directly opposite results, saying;

> "Boyd's present tense answers simply do not support the inference that Southern Credit Union was federally insured at the time of the offenses, some four and a half years later."

Within that concept, Mr. Stern must prevail on his claim since 5 years elapsed from the time of the offense and the testimony, and 3 years elapsed from the date of the Certificate and the testimony.

Mr. Stern argues that the conviction cannot be allowed to remain in the face of the uncontrovertible ambiguity expressed by the 4th Circuit nor the testimony of Mr. Cordone falling well short of the mark in terms of the exact time frame of the offense, and, Mr. Stern contends, is insufficient to sustain the conviction which deprives Mr. Stern of his property rights in liberty.

Due process requires that the fact be proven beyond a reasonable doubt. That did not occur in this specific case.

The conviction on Count Three must be reversed.

Mr. Stern also contends that the 4th Circuit's reliance on the standard "in the light most favorable to the government" is misplaced. **Stern, at III.**

The Fifth Amendment requires proof beyond a reasonable doubt. **In Re Winship**, 397 U.S. 358, 364(1970). Since the government did not, in fact, carry its burden over that high bar, the conviction is required to be reversed.

89

The government's burden cannot be eased by the 4th Circuit's decision in **Stern**. See **Apprendi v. New Jersey**, 530 U.S. 466, 488-492(2000); **Patterson v. New York**, 432 U.S. 197, 206, 214-15(1977). The use of presumption by the 4th Circuit falls far short of the required weight of the burden on the government,**Mullaney v. Wilbur**, 421 U.S. 684, 702-03, n.31(1975), and is prohibited. The 4th Circuit cannot supplant the jury's duty to make a specific finding, nor relieve the government of it duty to present proof beyong a reasonable doubt as to First Union's status in 1995.

Mr. Stern reasserts his claim that Count Three must be reversed.

It is important to point out that if the learned panel of the Fourth Circuit expressed doubt with regards to this issue, the implication and reasonable conclusion is that the jury was without knowledge as well. In fact, the jury was not asked this question, and therefor couldn't make a fact finding on this essential element of the offense, making this claim a "dead bang" winner for Mr. Stern.

Case 2:06-cv-00028-MR   Document 1-2   Filed 10/26/06   Page 5 of 44

# GROUND EIGHT

## THERE WAS A MATERIAL VARIENCE BETWEEN THE CHARGE OF A SINGLE CONSPIRACY IN COUNTS ONE AND TWO AND PROOF AT TRIAL WHICH CONSTRUCTIVELY AMENDED THE INDICTMENT BY PROVING MULTIPLE CONSPIRACIES AND CONSTITUTED FATAL ERROR.

The Superseding Indictment alleged a conspiracy,albeit a vague and ill defined conspiracy, that was singular in nature.

Throughout the trial, the Government tried, but was unsuccessful in attempting to establish a relationship between Mr. Stern and LeRoy Schweitzer and the other people named in the indictment.

At best there was proof of a connection between Mr. Stern and Al Fuller, and between Mr. Stern and his brother, Michael Stern. The Government failed completely in proving contact bewteen Michael Stern and Al Fuller, or LeRoy Schweitzer,or Coble, or Norris,or Gunwall,or Ayers, or Charron, between Al Fuller and any of the above, or between Mr. Stern and Coble, or Charron, or Norris, or Ayers, or Gunwall.

What the Government failed to prove is a single conspiracy. See **Conspiracy, Westlaw Keycite 24(2)**.

The Government made appear three relationships. Consequently, the jury was presented with a scenario of three different sets of transactions. **U.S. v. Ronald Glinton, McFadden,** et.al., Case #93-4350 (11th Circuit

91

September 14, 1998).

The variance and subsequent prejudice between the charge of a single conspiracy and proof of multiple conspiracies carries with it the necessity to consider whether Mr. Stern was deprived of fair notice of other crimes prosecuted and whether the spill-over proof of the other transactions prejudiced Mr. Stern unfairly. **Westlaw Keycites 43(12)**.

Mr. Stern contends that the Government in their Case-In_Chief, entangled the evidence and testimony in an attempt to link not only the charges in the indictment, but the other matters not charged, the "tax case", **TT, Page 793, Line 6 forward**, creating a material varience. **Kotteakos v. U.S.**, 328 U.S. 750, 90 L.Ed. 1557, 66 S.Ct.1239(1946), creating a plain error which prejudiced the case against Mr. Stern. **U.S. v. Melvin A. Ford**, Case #92-5767(4th Circuit 1996).

One has simply to follow the guideposts of a connecting so-called "wheel" conspiracy to determine that in the case the government proved multiple conspiracies, and not a single conspiracy. **Levine**, 546 F.2d 663.

The Court did not provide jury instructions to cure this infirmity. **U.S. v. Vantrice**, Case # 99-6182CR-Ferguson, J.

Additionally the verdict is contrary to the proof the Government presented. All that the Government presented was a shadow case establishing mere tangential involvement

Case 2:06-cv-00028-MR   Document 1-2   Filed 10/26/06   Page 7 of 44

of people in in Counts One, Two, without showing a knowing participation in a known illegal conspiracy. **U.S. v. Cihak**, 137 F.3d 252(5th Circuit 1998); **U.S. v. Badwound**, 203 F.3d 1072(8th Circuit 2000).

The Court should review on a basis of a **de novo** sufficiency of the evidence challenge.**U.S. v. Delgado**, 56 F.3d 1357, 1363 (11th Circuit 1995), as to whether any reasonable jury could have actually found the defendant guilty of a single conspiracy versus a multiple set of conspiracies beyond a reasonable doubt. **U.S. v. Newton**, 44 F.3d 913, 921(11th Circuit 1995).

Mr. Stern contends that the burden on the Government cannot be sustained on the trial facts, especially if one was to take the time to root out and discard all the 'red herrings' the government tossed into the proceedings. **U.S. v. Ramsdale**, 61 F.3d 825, 828(11th Circuit 1995); **U.S. v. Jones**, 913 F.2d 1552, 1557(11th Circuit 1990), where the Government's case is based on mere circumstantial evidence. Mr. Stern contends that there must be reasonable inferences, and not mere speculation as was the case in these proceedings, to support the jury's verdict. **U.S. v. Mejia**, 97 F.3d 1391, 1392(11th Circuit 1996)(quoting **U.S. v. Lopez**, 68 F.3d 438, 440(11th Circuit 1995).

The wildly conflicting presentments and unsupported imaginings do not satisfy the proof requirements, and stretched credibility beyond the realm of belief of a reasonable and prudent man.

93

The Cout is free, if it chooses, to apply the standard set out in **Glasser v. U.S.**, 315 U.S. 60, 62 S.Ct.457(1942), whereby the Government must present **sufficient** proof, and not speculation on circumstances or innuendos, to sustain the conviction. **U.S. v. Fernandez**, 797 F.2d 943 (11th Circuit 1986). The Government failed in its attempt to do so.

Even though the Government attempted to convince the jury of a common modus opperandi, that alone did not make the purported crime (a single conspiracy) come to pass of a common scheme. **U.S. v. Cowart**, 90 F.3d 154(6th Circuit 1996); **U.S. v. Kraig**, 99 F.3d 1361(6th Circuit 1996).

Further, it is abundantly clear that the Government, through its convoluted reasoning, twisted presentment, mixing of law and charges, and 'stacking' charges, prosecuted Mr. Stern for both an alleged conspiracy and charges arising out of the same conduct. This is not allowed. **Rutledge v. U.S.**, 517 U.S. 292(1992); **U.S. v. Byrd**, 131 F.3d 951(11th Circuit 1997).

In the total absence of any proof of the multi-lateral communication necessary to prove a single conspiracy, the only logical conclusion is that Counts One and Two must be reversed.

The basis for this conclusion is that the Government obviously and constructively amended the Indictment by

Case 2:06-cv-00028-MR   Document 1-2   Filed 10/26/06   Page 9 of 44

going beyon the parameters of the offenses laid out in the Indictment during their presentments to the jury. **U.S. v. Jefferson**, 334 F.3d 670, 673(7th Circuit 2003).

Mr. Stern contends that the obvious fact that the "spillover effect" of the government's overreaching presentation, and the fact that the evidence was materially different than what was alleged in the Indictment, **U.S. v. Kennedy**, 32 F.3d 876, 883(4th Circuit 1994), cert.denied sub nom. **Ingram v. U.S.**, 115 S.Ct.939(1995); **U.S. v. Tarantino**, 846 F.2d 1384, 1391(D.C. Circuit), cert.denied, 488 U.S. 840 & 867(1998), infringed on Mr. Stern's actual Rights to be tried only on the charges set out in the Indictment. This implicates violations of the Grand jury and Due Process Clauses of the Fifth Amendment and the Jury and Notice Clauses of the Sixth amendment, resulting in actual prejudice. **Kennedy**, 32 F.3d at 863.

" *** the proliferation of seperate conspiracies in the case could not be seen in any way other than to affect the jury's ability to segregate ***." **U.S. v. Edwards**, 69 F.3d 419, 433(10th Circuit 1995), and prejudice Mr. Stern's Rights.

The fact that the Court did not present the jury with any instructions whereby they were tasked with determining the existance of a single versus a multiple conspiracy scheme, even though it was the jury's province to do so, only exacerbated the constitutional violations. **U.S. v. Roberts**, 262 F.3d 286, 294(4th Circuit 2001), cert. denied,

Case 2:06-cv-00028-MR   Document 1-2   Filed 10/26/06   Page 10 of 44

122 S.Ct. 1548(2002); **U.S. v. Harris**, 39 F.3d 1262, 1267(4th Circuit 1994); **U.S. v. Leavis**, 853 F.2d 215, 218(4th Circuit 1988).

The jury was denied their duty to make a decision and differentiation on those facts and as a consequence, Mr. Stern's defense was unduly prejudiced to a great degree.

It bears repeating that the convictions on Counts One and Two must be reversed. See also **Kotteakos v. U.S.**, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557(1946) cited in **U.S. v. Sutherland**, 656 F.2d 1181, 1189 (5th Circuit 1981).

Case 2:06-cv-00028-MR   Document 1-2   Filed 10/26/06   Page 11 of 44

**THERE WAS NO CRIMINAL STATUTE APPLICABLE TO THE COMPTROLLER WARRANTS BASED UPON THE CLEAR LANGUAGE SET OUT IN THE INDICTMENTS IN THIS CASE AND THE CONVICTIONS ON COUNTS ONE AND THREE MUST BE OVERTURNED ON THIS GROUND.**

Nowhere in the two Indictments in this case can be found language alleging the comptroller warrants were ever involved in the mail, interstate wires, or directly deposited into any bank.

The criminal statute contemplating the type of instruments characterized as comptroller warrants came into full force and effect on September 30, 1996 as Title 18 USCS§514 as section 101(f)[Title VI, §648(c) of Public Law 104-208, "set out as a note under section 474 of this title."

Before September 30, 1996, there was no criminal statute that could contemplate an instrument such as thecomptroller warrant unless it was mailed, wired, or directly deposited into a bank that is FDIC insured.

The genesis of this argument can be found in the Congressional Record-Senate, Volume 141, Washington, Friday, June 30, 1995, No. 109, Proceedings and Debates of the 104th Congress, First Session, at page S9516, right-hand column. The record sets out the notation that Senator Alphonse D'Amato introduced a bill entitled S.1009."A bill to prohibit the fraudulent production, sale, transportation, or possession of fictitious items purporting to be valid financial instruments of the United States, foreign governments, States, political

97

subdivisions, or private organizations, to increase the penalties for counterfeiting violations, and for other purposes; to the Committee on Banking, Housing, and Urban Affairs."

On page S9533, Senator D'Amato set the stage by stating the intent of S.1009, saying, in part, "Because these fictitious instruments are not counterfeits of any existing negotiable instruments, Federal prosecutors have determined that the manufacture, possession, or utterance of these instruments does not violate counterfeit or bank fraud provisions contained in Chapetrs 25 and 65 of Title 18 of the United States Code. The perpetrators of these frauds can be prosecuted under existing Federal law only if they use the mails or wires, or violated the bank fraud statute."

Subsequently, on July 17, 1996, The Committee on Banking, Housing, and Urban Affairs held hearings on S.1009. The record of those hearings was memorialized by the Government Printing Office as S. Hrg. 104-680, ISBN 0-16-053847-5 as a report on the hearings, encompassing over 100 pages of text and exhibits. **EXHIBIT** 22 ___.(In pertinent part).

The salient extracts of that Report are as follows;

1. Page 1-Opening Statement of Senator Alfonse D'Amato-"These laws do not specifically criminalize the production or passing of a phony check, bond, or security if the check, bond, or security is not a copy of an actual financial

instrument."

2. Page 2-"They are technically not counterfeits because they are not copies of actual instruments."

3. Page 2- "Prior to their 81 day seige, The Montana Freemen [LeRoy Schweitzer] passed fictitious instruments called "Comptroller Warrants.""

4. Page 2-LeRoy Schweitzer, one of the founders of the Montana Freemen successfully passed more than $85 million in phony notes and netted a profit of $670,000."

5. Page 2- " ***groups such as the Montana Freemen use fictitious instruments ***."

6. Page 3--Senator Bond-"Mr. Chairman, S.1009 closes a loophole that permits the sale and manufacturing of fraudulent financial instruments ***."

7. Page 13-Charles L. Owens, FBI-CID- "*** Including Comptroller Warrants schemes ***."

8. Page 8- "*** regarding bogus Comptroller Warrants have practically ceased since the FBI's arrest of Freemen leader LeRoy Schweitzer ***."

9. Page 19-Senator Carol Moseley-Braun-" *** one of these warrants ***."

10. Page 22-Senator John F. Kerry- "The fact that these instruments don't fit under current definitions unless there's a wire transfer or mail fraud or something has obviously got to be remedied."

11. Page 22-"But as I understand it, the more difficult problem exists under the other laws as to whether they may not meet the definition of counterfeit or bogus

99

instruments that can be reached directly."

12. Page 23-Mr. Owens- "As I indicated in my statement, the Comptroller Warrant, once it is discovered ***."

13. Page 24-Senator Richard C.Shelby- "*** to push legislation that will close the loophole, the loophole where the law, as I understand it, does not cover certain acts,I would say fraudulent acts of people out there."

14. Page 29-Exhibit-Comptroller Warrant No. 2128 in the amount of $374,000.00, signed by LeRoy M. Schweitzer.

15. Page 30-Exhibit-Comptroller Warrant No. 2123 in the amount of $254,000.00, signed by LeRoy M. Schweitzer.

At this point it is abundantly clear that;

(A) As of July 17, 1996, there were no criminal laws that applied to the "production or passing" of a Comptroller Warrant unless it involved mailing or wires, or was directly deposited into an FDIC insured financial institution, and

(B) The impending legislation was strongly focused on Comptroller Warrants as specifically issued by LeRoy M. Schweitzer.

It is also material and relevant to point out that if there were laws in effect to address the Comptroller Warrants, Congress would not have began the labor intensive, time-consuming, and costly process of passing Title 18 USCS§514 into law.

The obvious conclusion that should be drawn from this is that there was no applicable criminal statute that could be applied to the transactions involving Comptroller Warrants in Mr. Stern's case, and logic dictates that the court had no jurisdiction over the acts alleged in Counts One and Three pertaining to the Comptroller Warrants.

This Court is bound by the Fourth Circuit precedent decisions such as **U.S. v. Hamerick**, 43 F.3d 877, 893 (4th Circuit 1995) to the extent that "The role of the courts in cases of statutory construction is to give effect to Congressional intent, **Negonsott v. Samuels**, 507 U.S. 99, 122 L.Ed.2d 457, 113 S.Ct. 1119(1993); to do more is to transgress the boundaries of the Articles of the Constitution and to engage ourselves as legislators rather than jurists, to allow ourselves to say what we think the law is, or ought to be, rather than what Congress has told us it is."

Congess has clearly told this Court that until September 30, 1996, unless the activities surrounding LeRoy Schweitzer's Comptroller Warrants involved the mails or wire transfers, the courts simply had no jurisdiction because there was a "loophole" that Congress passed 18 USCS §514 to close.

**Samuels**, at 465A[1c,3] reinforces this argument with the Supreme Court holding "Our task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily

Case 2:06-cv-00028-MR   Document 1-2   Filed 10/26/06   Page 16 of 44

be regarded as conclusive." **Griffin v. Oceanic Contractors, Inc.**, 458 U.S. 564, 570, 73 L.Ed.2d 973, 102 S.Ct. 3245(1982)."

This Court, in applying the **Chevron** test, must first examine "whether Congress has directly spoken to the precise question at issue.¶ 467 U.S. at 842-43, 104 S.Ct. 2778. There can be no doubt from the minutes of the Hearing on S.1009, that Congress has "directly spoken to the precise question at issue.", and said that before September 30, 1996 there was no applicable criminal statute that covered the particular activities in Mr. Stern's case. Therefor, Counts One and Three must be reversed on constitutional grounds.

A further argument in favor of reversal can be made on the grounds of lack of notice and the fact that the prosecution imposes a punishment for conduct that was not illegal at the time. This clearly meets the test of "lack of fair notice and government restraint ***."**Weaver v. Graham**, 450 U.S. 24, 67 L.Ed.2d 17, 101 S.Ct. 960(1981) (cited in **U.S. v. Davenport**, No. 05-4304 4th Circuit April 21, 2006).

There was no notice until September 30, 1996. The prosecution in this case clearly offends the Due Process Clause of the Fifth Amendment, as well as the Ex Post Facto Clause, and must be reversed.

Following this train of thought and logic, Mr. Stern asserts a claim of a material violation of the Due Process Clause of the Fifth Amendment and the seminal case of

102

**Brady v. Maryland**, 373 U.S.83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215(1963) with respect to the Court's denial of the defense's efforts to bring S.1009 before the jury and the prosecutor's objections to such attempts.

The Court and A.U.S.A. Brown well knew of this document, its materiality and relevance to the case, its purely exculpatory nature, yet did everything in their power to exclude its introduction.

Had this been brought before the jury, no rational trier of fact would have convicted Mr. Stern under Counts One and Three, nor would the testimony of thegovernment's witnesses with regards to the Comptroller Warrants be credible.

"Suppression of exculpatory evidence by the Government that is material to the outcome of the trial violates due process, irrespective of the motivation of the prosecutor." **U.S. v. Kelly**, 35 F.3d 929, 936(4th Circuit 1994) (citing **Brady**).

In addition to disclosure of exculpatory evidence, due process requires the Government to disclose material evidence affecting the credibility of Government witnesses. **Giglio v. U.S.**, 405 U.S. 150, 154, 92 S.Ct.763, 766, 31 L.Ed.2d 104(1972).

There can be no question in the mind of any rational trier of fact or observer that S.1009 would profoundly impact the perspective of the jury with regards to the matters at hand, had it been given to them.

103

The court, in **Kelly**, went on to say "Evidence is material when "its suppression undermines confidence in the outcome of the trial"- that is when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." **Id.** and **U.S. v. Bagley**, 473 U.S. 667, 668 & 682, 105 S.Ct. 3375, 3381, 3383-84, 87 L.Ed.2d 481(1985).

Mr. Stern contends that it is even of greater importance that the trial judge allows the jury to see the evidence and hear testimony relating to the document, yet he did not do so. It was abuse of judicial discretion to deny the defense the opportunity to present such powerful exculpatory evidence.

That Mr. Stern discovered the document and brought it forward does not release the Government nor the Court from their responsibilities in this matter.

The fact that A.U.S.A. Brown objected to S.1009 being put before the jury falls squarely into the morass of **Kelly**'s prohibitions.See also **U.S. v. Newsome**, 322 F.3d 328, 335(4th 2003).

There can be no doubt "the inescapable conclusion that a reasonable probability exists that the result of the trial would have been different had the Government disclosed the [Report]." **Kelly, at 937[7],** and the trial judge allowed the jury full access to it and supporting testimony.

104

Many other courts have decried such a situation. **Kyles v. Whitley**, 514 U.S. 419, 431, 115 S.Ct. 1555, 1565, 131 L.Ed.2d 490(1995); **Hoke v. Netherland**, 92 F.3d 1350, 1366(4th Circuit0, cert. denied, _____U.S.___, 117 S.Ct. 630, 136 L.Ed.2d 548(1996), (cited in **U.S. v. Ellis**, 121 F.3d 908, 914 (4th Circuit 1997), "*** failure to disclose "evidence favorable to an accused *** violates due process***."

Mr. Stern reasserts the claim that S.1009 conclusively proved Mr. Stern innocent of Counts One and Three and impeached the testimony of the Government's witnesses. **Strickler**, 527 U.S. at 281-82, 119 S.Ct. 1936; **Coppa**, 267 F.3d at 139(2nd Circuit 2001).

The material in S.1009 is clearly admissible and on point. Even if it had not, unto itself, been admissible in advance of the trial, it most certainly was once the prosecution opened the door to that subject matter. **U.S. v. Gleason**, 265 F.Supp. 880, 886(S.D.N.Y. 1967); **Spence v. Johnson**, 80 F.3d 989, 1005, n.14(5th Circuit 1996); **Coleman v. Calderon**, 150 F.3d 1105, 1116-17(9th Circuit 1998); **Wright v. Hopper**, 169 F.3d 695, 703(11th Corcuit 1999).

It is unarguable that the government had this material in hand well before trial. This is evidenced by the fact that many of those who participated in the hearings which resulted in the report were members of the Department of Justice coupled with the fact that **Title 18 USCS §514** was

Case 2:06-cv-00028-MR   Document 1-2   Filed 10/26/06   Page 20 of 44

published in the various U.S. Code publications and the Report, published by the Government Printing Office, was copies to the Department of Justice library.

The suppression of the Report by the Court is particularly egregious abuse of judicial discretion in the face of the fact that "[1,2] It is firmly entrenched that Congress is presumed to enact legislation with the knowledge of the law; that is with knowledge of the interpretation that courts have given to an existing statute." **U.S. v. Langley**, 62 F.3d 602, 605(4th Circuit 1995)(citations omitted), and Congress clearly knew that there was no law proscribing Mr. Stern's conduct at the times laid out in the indictments. The Court is also required to take mandatory judicial notice of the acts of Congress under F.R.Evid. Rule 201, F.R.C.P. Rule 44 (c), and other recognized methods, and accept as valid the intent of Congress manifestly expressed in the history of the enactment.

That being said, the denial directly offended the Due Process Clause of the Fifth Amendment and Mr. Stern's Rights, and the denial was unreasonable, allowing for the conviction to be reversed as to Counts One and Three. **U.S. v. Collins**, 401 F.3d 212, 219(4th Circuit 2005); **Wood v. Bartholomew**, 516 U.S. 1, 5, 116 S.Ct. 7, 133 L.Ed.2d 1(1995)(citing **Kyles v. Whitley, at 514 U.S. at 433-34**). The Court was without jurisdiction on these two counts.

106

## GROUND TEN

**THERE WAS A MATERIAL VARIENCE BETWEEN THE CHARGE IN COUNT TWO AND THE PROOF AT TRIAL WHICH CONSTRUCTIVELY AMENDED THE INDICTMENT AND CONSTITUTED FATAL ERROR.**

Mr. Stern contends that from the outset of the trial proceedings, the government set out to try a tax case, not a case of obstruction of the revenue laws.

A.U.S.A. Brown made this clear during his opening statement to the jury. **TT, Page 12, Line 24,** to wit:

> "Where we need  to start is, as I indicated to you
> at the beginning, this is a tax case, and the evidence
> in this case will show the this Defendant, Peter Kay
> Stern, sometimes known as Peter K period, comma,
> Stern, is a longtime illegal tax protestor."

There can be no mistaking the obvious thrust of the statement.

Brown carried forward and created 1227 lines of transcript records relating to tax matters, and he carried through with this theme throughout the proceedings.

A simple count will show he was attempting to prove a failure to file/failure to pay offense rather than obstruction, since no more than 79 additional lines of transcript skirt the issues of obstruction, contained in the remaining 211 lines over and above the 1227.

Within those 211 lines, Mr.Stern contends that Mr. Sizer's testimony, **TT, Page 387, Line 1 through Page 388, Line 9**, makes clear that he was not threatened by Mr. Stern. Mr. Tingle testified that he was concerned by what he read about Mr. Stern in the local newspaper, the Asheville Times, and Newsweek Magazine, **TT, Page 373, line 23 through**

107

**Page 374, Line 3; Page 374, Line 8; Page 383, Lines 8-9.**

When asked about his perception of Mr. Stern's actual conduct from personal experience, Mr. Tingle testified, "His conduct was more businesslike." **TT, Page 390, Line 11**, and "He was cordial for most of the meeting."

Beth Ward testified from her personal observations and contacts, "He was not confrontational." **TT, Page 431, Line 1**, and "He was professional, yes." **TT, Page 431, Line 3**.

It is exactly this type of result that is contemplated by the case law against the constructive amendment of the Indictment that occurred in this case and which is repugnant to the Bill Of Rights. **Russell v. U.S.,** 8 L.Ed.2d 240, 270 U.S.650, 82 S.Ct. 1399(1962); **U.S. v. Miller**, 85 L.Ed.2d 99, 471 U.S. 130, 107 S.Ct.1811(1985); **U.S. v. Quenn**, 132 F.3d 991(4th Circuit 1997); **U.S. v. Kennedy**, 130 L.Ed.2d 883, 32 F.3d 876; **U.S. v. Ford**, 88 F.3d 1350.

The appropriate cure for such a varience, which is fatal to the conviction, is to reverse the conviction on Count Two.

In this situation, "the government [and] or the court broadens the possible bases for conviction beyond those included in the indictment, a constructive amendment occurs which is **per se** reversible error. **U.S. v. Williams**, 106 F.3d 1173, 1176(4th Circuit 1997); **U.S. v. Sampson**,

108

140 F.3d 585, 589(4th Circuit 1998)(citing **U.S. v. Floresca**,

38 F.3d 706, 710-11(4th Circuit 1994)(quoting **Stirone v.**

**U.S.**, 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252(1960).

Put simply, in this case, the tail wagged the dog,

and Mr. Stern was convicted in the eyes of the jury for

tax evasion, and not obstruction, since they could not

help but be  overwhelmed by the massive amount of testimony

and evidence focused on failure to file and or failure

to pay thrown at the erroneously by Brown, which obviously

swayed them to convict when the testimony of Sizer, Tingle,

and Ward was the Mr. Stern offered NO direct threat nor

any implied threat.

Count Two must be reversed.

109

**THERE WAS A FUNDEMENTAL ERROR IN THE COURT ALLOWING THE
USE OF ELECTRONIC SURVEILLANCE RECORDINGS AND TRANSCRIPTS
AT TRIAL IN LIGHT OF THE FAILURE OF THE GOVERNMENT TO COMPLY
WITH THE MANDATORY REQUIREMENTS OF TITLE 18 USCS §§2510,
Et.Seq.**

The Congressional intent and mandate of Title 18 USCS §2518(9) is clear on its face. the government must furnish the defense "not less than ten days before trial, hearing, or proceeding, *** a copy of the court order, and accompanying application, under which the interception was authorized or approved."

The defense is not required to ask for these documents to trigger production and display of them. It is the government's duty to provide them **ad hoc** without motion or prompting.

In the first trial proceedings, no attempt was made to comply with the mandate of the statute.

At the second trial, the government failed to provide all the required documents until 1:00 PM on Tuesday, July 18, 2000, the second day of the proceedings. **TT, Page 302, Line 20 through Page 303, Line 25. Docket, 124½, 127½.**

Defense counsel timely and repeatedly objected to the use of the fruits of the electronic surveillance. **TT, Page 26, Line 11 through Page 28, Line 6.**

The government did not supply the first materials, the applications, without the balance of the documents, until Monday, July 17, 2000, mid-day of the first day at trial.. **TT, Page 28, Lines 16 through 20.**

110

The Court attempted, through its ruling, **TT, Page 31, Lines 7 through 12,** to circumvent the mandate and intent of the statute over objections of defense counsel. **TT, Page 32.** Mr. Stern contends that this was abuse of judicial discretion.

Mr. Stern contends that the record is abundantly clear that the government failed to do their duty to supply all the documents ten days before trial, even though they had ample time to accumulate, collate, and provide same.

Mr. Stern asserts the claim that the Court was in error in denying defense motions on this subject. **TT, Page 26, Lines 22-23 and Page 27, Lines 2-3.**

Mr. Stern contends that the Court's abuse of discretion cannot cure the government's misconduct in this matter.

As a consequence of the events set out above, Mr. Stern was deprived of his remedies under **Title 18 USCS §2518 10(a)** and **Title 18 USCS §3504,** a denial of Due Process and the Right to Confront in a suppression hearing attacking that evidence.

This is an important claim since the government spent a great deal of trial time hashing over details of the evidence gathered by electronic surveillance, **TT, Page 60, Line 16 through Page 82, Line 25,** as a means to influence the jury to convict Mr. Stern. In addition, A.U.S.A. Brown repeatedly used portions of the verbage from the electronic surveillance in the balance of the proceedings. This conduct had the effect of poisoning the minds of the jurors by repeatedly focusing them on material that should never have been seen

111

by them, had the Court followed the law and denied the prosecution the use of that material as it rightfully should. The result is that the outcome of the proceedings was materially prejudiced. **U.S. v. Bernstein**, 509 F.2d 996(4th Circuit 1975).

The errors complained of disregarded the intent and thrust of **Title III** and the **Fourth Amendment** to "forestall abuses by enforcement officials." **Id., at 1000**.

There was no way that defense counsel could stop mid-trial and do a competent and thorough investigation of the facts and law necessary to pursue remedies under **§2518 10(a)** and or **§3504**. The effect was grossly unfair and biased toward the prosecution and prejudicial to the defense.

The defense could have attacked the use of the evidence on the grounds that "to come within the co-conspirator exception, the evidence must indicate that the statement furthered the common onjectives of that conspiracy. Mere conversation is not admissible." **U.S. v. Bibbero**, 749 F.2d 581(9th Circuit 1984; **U.S. v. Branch**, 970 F.2d 1368, 1371(4th Circuit 1992).

It is not enough that the recorded statements "merely informs the listener of the declarant's activities" (i.e. travel to Montana, etc.) **U.S. v. Snider**, 729 F.2d 985, 992(8th Circuit 1983), and would not be within the "in furtherance requirement." **U.S. v. Provenzano**, 620 F.2d 985, 1000-01(3rd Circuit 1980). On this basis the evidence would be subject to being quashed.

112

Additionally, statements of past activities and mere "puffing" are not in furtherance and should not have been admitted. **U.S. v. Fielding**, 645 F.2d 719(9th Circuit 1891) agreeing with **U.S. v. Lieberman**, 637 F.2d 95(2nd Circuit 1980); **U.S. v. Blakley**, 960 F.2d 996, 998-99(11th Circuit 1992); **U.S. v. Means**, 695 F.2d 811(5th Circuit 1983); **F.R.Evid. Rule 801(d)(2)(E)**, and occurred before the trip to Montana and the acts alleged in the indictment, **U.S. v. Green**, 600 F.2d 154(8th Circuit 1979), and should have been quashed.

Mr. Stern contends that the errors in this set of issues were multitudinous, manifestly prejudicial, and are clearly plain error that rises to a level of constitution violations.

On these grounds the convictions must be reversed.

Along with this set of circumstances, Mr. Stern makes appear a claim that the underlying phone taps were, in fact, illegal from the outset.

Base upon the findings of the 9th Circuit Court of Appeals in **U.S. v. Lynch**, Case No. 00-30247, supporting the findings of the Supreme Court of Montana in **Montana v. Lynch**, 969 P.2d 920(Mont. 1998), it would appear that the use of wiretap information, both recordings and transcripts from Montana in North Carolina can be construed as illegal.

Since the law of the locality in which the wiretap exists and where the intercept takes place governs the

113

validity and legality, even though the intercepted phone
conversations traveled over a part of the United States
communication systems, the above cases should govern. **Stowe
v. Devoy**, C.A. 2(N.Y.), 1978, 588 F.2d 336, cert.den., 99
S.Ct. 2862, 422 U.S. 931, 61 L.Ed.299.

Since a challenge and objections were raised timely
and repeatedly, this matter should be subject to an evidentiary
hearing and suppression, or, in the alternative, ruled a
fatal error and the convictions reversed.

114

## GROUND TWELVE

**THERE IS NO PROPERLY IMPLEMENTED REGUALTION IN HARMONY WITH THE STATUTE, TITLE 26 USCS §7212, DEPRIVING THE COURT OF CRIMINAL JURISDICTION OVER COUNT TWO.**

The instant argument revolves around Count Two and Title 26 U.S.C. §7212, a portion of the Internal Revenue Code.

"For Federal tax purposes, the Federal Regulations govern. **Lyeth v. Hoey**, 1938, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119." quoted in **Dodd v. U.S.**, 223 F.Supp. 785 (1963), which goes on to state that the implementing regulation, 26 C.F.R. Sec. 20.2056(b)-4(c) has to be consistant with the Statute.

"*** Construction may not be substituted for legislation.', **U.S. v. Missouri P.R. Co.**, 278 U.S. 269, 277 , 49 S.Ct. 133, 136, 73 L.Ed. 322. Another rule often overlooked in construing a revenue statute is that in a doubtful situation the taxpayer is entitle to the benefit of the doubt. As was said by the court in **U.S. v. Merriam** supra, 263 U.S. at page 188, 44 S.Ct. at page 71, 68 L.Ed. 240, 29 A.L.R. 1547: 'If the words are doubtful, the doubt must be resolved against the government and in favor of the taxpayer.'" quoted in **Busse v. C.I.R.**, 479 F.2d 1147 (1973).

To support the assertion that it is mandatory that an implementing regulation be promulgated byt the Secretary (Commissioner in past times), we look at **California Bankers Assn. v. Schultz**, 39 L.Ed.2d 812, 820, "Because it has a bearing on some of the issues raised by the parties, we think it is important to note that the Act's civil and criminal penalties attach **only** [emphasis added] upon violation of regulations promulgated by the Secretary;

115

if the Secretary were to do nothing, the Act itself would impose no penalties on anyone." and **U.S. v. Murphy**, 809 F.2d 1427, 1430 (9th Circuit 1987), following **California Bankers** rationale, "The reporting act is not self-excuting; it can impose no reporting duties until implementing regulations have been promulgated.", and **U.S. v. Reinis**, 794 F.2d 506, 508 (9th Circuit 1986), "An individual cannot be prosecuted for violating this Act unless he violates an implementing regulation.", and "The result is that neither the statute nor the regulations are complete without the other, and only together do they have any force.  In effect, therefore, the construction of one necessarily involves the construction of the other. "**U.S. v. Mersky**, 361 U.S. 431, 4 L.Ed.2d 423, 80 S.Ct. 459 (1960), agreed with **Leyeth v. Hoey**, supra, **U.S. v. $200,000 in U.S. Currency**, 590 F.Supp. 866; **U.S. v. Palzer**, 745 F.2d 1350 (1984); **U.S. v. Cook**, 745 F.2d 1311 (1984); **U.S. v. Gertner**, 65 F.3D 963 (1ST CIRCUIT (1995); **DIAMOND RING RANCH V. MORTON**, 531 F.2D 1397, 1401 (1976); **U.S. V. OMEGA CHEMICAL CORP**., 156 F.3d 994 (9th Circuit 1998); **U.S. v. Corona**, 849 F.2d 562, 565 (11th Circuit 1988); **U.S. v. Esposito**, 754 F.2d 521, 523-24 (1985); **U.S. v. Goldfarb**, 643 F.2d 422, 429-430 (1981).

From this we clearly demonstrate that there must be an implementing regulation in harmony with and supporting the statute, and that this requirement spans a wide number of Titles of the U.S. Code, and not only statutes, but also forms, and other 'rules'.

THE REGULATION MUST BE PROPERLY IMPLEMENTED VIA THE REQUIREMENTS OF OTHER STATUTES AND REGULATIONS.

Title 5 U.S.C. 553 (d) is clear in stating "The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, ***." This mandatory statement is related back to Title 5 U.S.C. (a)(1)(D). See **U.S. v. $200,000 in U.S. Currency**, ante, page 866, Reporter's Note 2. Administrative Law and Procedure, Key 382, "For agency statement or requirement to be considered a valid "rule", three conditions must be satisfied" "rule must be within the agency's granted power, it must be issued pursuant to proper administrative procedures, and it must be reasonable as a matter of due process.", and **Rowell v. Andrus**, 631 F.2d 699 (10th Circuit 1980) (holding that 5 U.S.C. §§552 & 553 specifically require, in explicit therms, "the publication of proposed rules as opposed to their mere filing in the Office of Federal Register" "5 U.S.C.A. 551; U.S.C.A. Const. Amend. 5," **Id.**

It would appear that, in deed, according to the above cited re quirements to have force and effect, the implementing regulation must be properly published.

TITLE 26 U.S.C. §7212 DOES NOT HAVE AN IMPLEMENTING REGULATION.

A careful persual of the Table of Parallel Authorities or the Code of Federal Regulations finds 26 U.S.C. §7212 listed at page 773, left hand column, 13th entry from the top. The CFR citation immediately to the right of §7212 is "27 Parts 170, 270, 275, 290, 295, 296."

There is no doubt that Title 27 is the section of the United States Code assigned to the Bureau of Alcohol, Tobacco, and Firearms.

117

The court is asked to take mandatory judicial notice of Treasury Order 120-01, June 6, 1972 under which the Bureau of Alcohol, Tobacco and Firearms was established as a seperate entity from the Internal Revenue Service.

Subsequent to that announcement, Rex Reed, the new Director of the BATF, issued other Orders and Directives, the thrust of which was to establish new regulations and statutes for the BATF, unde 27 CFR and Title 27, and the implementing regulations for Title 26 U.S.C. §7212 were then 'deleted'.

Obviously, at that point, it is abundantly clear that there is no implementing regulation to be found in 26 CFR supporing §7212. There is only listings under 27 CFR.

TITLE 27 CFR CITATION IS INSUFFICIENT TO SUPPORT §7212.

For the answer to this question, we turn to Title 26 U.S.C.A. §7805. "Rules and regulations", and subsequent case law relating to the validity of same.

"Rulings promulgated by the Commissioner [Secretary] are a nullity to the extent that they conflict with this [Title 26] title.""**U.S. v. Martin,** C.A. Minn. 1964, 337 F.2d 171; "*** is an administrative rule that was improperly promulgated, not published, and therefore void. 14", **U.S. v. Palzer,** 745 F.2d 1350 (1984) at page 1357; and the court will "*** first consider whether the Regulation harmonizes with the statutory language. **National Muffler Dealers Assn. Inc. v. U.S.,** 440 U.S. 472, 521, 525, quoted in **U.S. v. Vogel Fertilizer Co.,** 455 U.S. 16, 70 L.Ed.2d 792, 794 (Note 5.), 800 (B), 801 [5], 102 S.Ct. 821 (1982), bringing about the inescapable conclusion stated in **Caterpillar**

**Tractor Co. v. U.S.** 589 F.2d 1040, 1047 [12] (1978), "In view
of al lthe circumstances, we hold that the defendant's interpretation
of the statute is incorrect and that the regulation as to this
point, being contrary to the plain language of the statute,
cannot stand.", and "Treasury regulation is invalid if Treasury
has abused its discretion.", **Id.**, and "The Court of Appeals
is not bound by Treasury Regulations where they are inconsistent
with revenue statute which they seek to interpret and implement,
but they must be sustained unless unreasonable or plainly inconsistant
with the statute, ***.: **C.I.R. v. Anderson,** 371 F.2d 59, cert.
denied 87 S.Ct. 1687, 385 U.S. 908, 18 L.Ed.2d 623, and "Commissioner's
[Secretary's] regulations must, by their terms and in their
application, be in harmony with statute, and a regulatin which
is in conflict with or restrictive of statute is, to the extent
of conflict or restriction, invalid." **Scofield v. Lewis,** 251
F.2d 128; **Dixon v. U.S.**, 85 S.Ct. 1301, 381 U.S. 68, 14 L.Ed.2d
223; **Birchenough v. U.S.**, 410 F.2d 1247; **Hanley v. U.S.**, 63
F.Supp. 73; **Thor Power Tool Co. v. C.I.R.**, 99 S.Ct. 773, 439
U.S. 522, 58 L.Ed.2d 785 (1979), and a host of other supporting
these premises.

Mr. Stern is aware of Title USCS §3231 and its general
implications. Mr. Stern contends that the circumstances set
out above make clear that in certain specific instances, such
as this case presents, the courts have stood for the proposition
that supports Mr. Stern's claim in th is ground to the extent
that absent an implementing regulation the court cannot entertain
a criminal prosecution any more than it could in the cases
cited above.

Case 2:06-cv-00028-MR   Document 1-2   Filed 10/26/06   Page 34 of 44

Restated for effect, the Paperwork Reduction Act, 44 USC§§3501-20, requires that federal agencies, of which the Internal Revenue Service is ostensibly one, submit all "information collection requests" to the Director of the Office of Management and Budget (OMB) for review, 44 USC§3507. "Typical information collection requests include tax forms, medicare forms, financial loan applications, job applications, questionaires, compliance reports and tax or business records." **Dole v. United Steelworkers**, 494 U.S. 26 110 S.Ct. 929, 933, 108 L.Ed.2d 23(1990). Once the OMB director approves the information collection requests, he must assign it a control number. 44 USC§3504.

> "no person shall be subject to any penalty for failing to maintain or provide information to any agency if the information collection request involved was made after December 31, 1981, and does not display a current control number assigned by the Director, or fails to state that such request is not subject to this chapter." 44 USC§3512, See **U.S. v. Smith**, 866 F.2d 1092, 1098-99(9th Circuit 1989)." cited in **U.S. v. Collins**, 920 F.2d 619, 630 and n.13 (10th Circuit 1990).

While the IRS Form 1040 does contain a control number, this argument hinges on the fact that the number reflected on the face of the form is essentially incorrect for the type and source of the information and as such creates a conflict of law and a legal infirmity that lies against the individual filling out, signing, and submitting the 1040.

This argument hinges on the fact that the number reflected on the Form 1040, OMB#1545-0074 is at odds with the citations referring to "Individual Income Tax" as set forth at 26 CFR§1.1-1. The tables outlining the cross references of CFRs to the applicable OMB Numbers, 26 CFR301.601, assigns OMB Number 1545-0067 to 26 CFR§1.1-1. **EXHIBIT** 23

Nowhere can be found any reference "incorporating" any other OMB Number (1 CFR part 51) stating otherwise.

On the same track, no like reference can be found in the Federal Register (44USC§1507) so as to give notice that any document other than one numbered 1545-0067 is

120

authorized to collect information for "Individual Income Tax",
pursuant to 26 CFR §1.1-1.

Consequently, with this knowledge and set of facts in
hand, there arises the defense that one cannot be compelled
to sign, under penalty of perjury, or otherwise, and document
wrongly numbered under the requirements of the PRA of 1980
(Pub. L. 96-511), and thereby placing themselves in jeopardy
of violating criminal statutes set forth in Title 18 USC, §§1000,
1003, and 1621.

On thes grounds, any attempts by the government to refer
to the lack of signing and filing a Form 1040 are barred under
the doctrine of equitable estoppel.

CONCLUSION

It is the assertion and claim, at this point, that the
court has before it a clearly demonstrated state of affairs
whereby there is no proper implementing regulation to suppor
§7212, therefore, the court has/had no subject matter jurisdiction
with which to prosecute for a violation of §7212, and the conviction,
under the relevant Count of the Indictment, must be vacated,
with prejudice, and in its entirety, and the record, with regards
to the Count expunged.

This conclusion is inescapable and compelling in weight
when one looks through the government's spurious and thinly
veiled attempts to convert legal conduct into criminal conduct
(discussed elsewhere in this docuemnt) and couples that to
these arguments.

There are no allegations, nor any proof offered by the

governemnt that Stern filed any false documents with the IRS, or inaccurate returns, nor did it prove Stern moved "with an intent to give some advantage inconsistant with the official duty and rights of others...'" **U.S. v. Mitchell** 985 F.2d at 1278 (4th Circuit 1993)(citations and quotations omitted), cited in **U.S. v. Armstrong,** 974 F.Supp 528 (E.D. Va. 1997).

Mr. Stern's conduct could not reasonably be seen as "obstructive".

In fact, it was the IRS's conduct that was clearly "obstructive" of Mr. Stern's attempts to obtain relevant information pertaining to any liabilities and alleged taxes owing.

"In this day, when Congress is attempting to curb the reach of the IRS into the homes of taxpayers, we cannot construe a penal law such as §7212(a) to permit such an invasion into the activities of law abiding citizens." **U.S. v. Kassouf**, 144 F.3d 952 (6th Circuit 1998). The courts of the 4th Circuit should fall into line with this proposition and vacate Stern's conviction on §7212.

Otherwise the average American cannot have any faith in the broad array of judicial, administrative, and other procedures established by Congress and the governmental agencies being anything but a fraud and a sham, and a slippery slope into criminal charges when used.

Further proof can be found in the Federal Register, Volume 55, No.220, Wednesday, 11/14/1990 at page 47604 and page 46758 to the extent that there are no implementing regulations left in Title 26 as a result of the transfer to the Bureau of Alcohol, Tobacco, and Firearms, leaving

122

the public in general, and Mr. Stern in particular, without
regulations by which to be warned that his conduct would
be seen as criminal, creating confusion and lack of notice,
a constitutional infirmity, due to the ambiguities and
uncertainties arising from that lacking.

## GROUND THIRTEEN

### TITLE 26 U.S.C.§7212, AS WAS APPLIED TO STERN IN THIS CASE, IS UNCONSTITUTIONALLY VAGUE CREATING AN ABSURED RESULT.

Mr. Stern asserts the claim that given the facts in the case, §7212 failed to give Mr. Stern adequate notice that the conduct the government used in their Case-In-Chief was proscribed by Congress. §7212 was not plain in its descriptions, and an absured and unConstitutinal result occcured.

The conduct the government complined of consisted of the Affidavit(s) of Probably Cause, the suit filed with the Fourth Circuit Court of Appeals, the meeting in December of 1996, some letters, the filing of Freedom of Information Act requests, and a "No Trespass" sign.

Mr. Stern shows that, as discussed in other areas of this Petition, the conduct was completely within the Congressionally passed and approved means of seeking redress of grievances from the government.

Mr. Stern argues that taken on an item by item basis, each action taken by Mr. Stern was fully described by a Congressional enactment authorizing same.

The only reasonable conclusion that can be made is that as applied to Mr. Stern, in this specific instance, §7212 falls across the bright line and into the deep well of being vague, failing to give adequate notice of the proscribed conduct, ambiguous, and void.

See **U.S. v. Turkett**, 452 U.S. 576, 69 L.Ed.2d 246, 101 S.Ct. 2524 (1981); **Village of Hoffman Estates v. Flipside Hoffman Estates**, 455 U.S. 489, 497, 71 L.Ed.2d 362, 102 S.Ct. 1186

124

(1982); **Chris v. Tenet**, 221 F.3d 648 (4th Circuit 2000); **Botosan v. Paul McNally Realty**, 216 F.ed 828, 835 (9th Circuit); **U.S. v. Wildes**, 120 F.3d 468, 470 (4th Circuit 1997)

Wherefor, in this case, the conviction on §7212 must be ruled unConstitutional based upon the statute being wrongly applied, vague, ambiguous, failing to give adequate notice, Mr. Stern's conduct failing to fall within the ambit of the statute, the statute being at odds with those Stern claims applies to his conduct, and or contrary to Congressional intent. **U.S. v. Mento**, 231 F.3d 912, 917 (4th Circuit 2000).

The Constitutional provisions violated include, but are not limited to Fifth Amendment Due Process Clause, Sixth Amendment Notice Clause, First Amendment Free Speech Clause, First Amendment Redress of Grievances Clause.

Further, Mr. Stern invokes the "Rule of Lenity" as applies to his conviction under §7212 in this particular case. See **Perrin v. U.S.**, 444 U.S. 37, 62 L.Ed.2d 199 (Annotated at 827), 100 S.Ct. 311.

It is clear that when tested against the allegations made by the government in this case, the statute, §7212, "is ambiguous in the critical respect." **U.S. v. Bass**, 404 U.S. 336, 339, 30 L.Ed.2d 488, 92 S.Ct. 515 (1971) at 518. Nothing in the natural language of the statute gives rise to any notice or warning that utilizing Congressional created administrative and judicial procedures and remedies constitutes a crime under the Federal Criminal Code. See also **Rewis v. U.S.** 401 U.S. 808, 812, 28 L.Ed.2d 493, 91 S.Ct. 1056 (1971), stating the

125

Supreme Court's positon to the extent "ambuguity concerning the ambit of criminal statutes should be resolved in favor of lenity. **Bell v. U.S.**, 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955)."

Mr. Stern shows that this case raises issues revealing "the most extraordinary showing of contrary intentions' in the legislative history [will] justify a departure from tht language." **U.S. v. Albertini**, 472 U.S. 675, 680, 86 L.Ed.2d 536, 105 S.Ct. 2897 (1985), (citations [522 US 58] omitted)(quoting **Garcia v. U.S.** 469 U.S. 70, 75, 83 L.Ed.2d 472, 105 S.Ct. 479 (1984); see also **Ardestani v. INS**, 502 U.S. 129, 135, 116 L.Ed,2d 496, 112 S.Ct. 515 (1991) (courts may deviate from the plain language of a statute only in "rare and exceptional circumstances'".)" cited in **Salinas v. U.S.** 522 U.S. 52, 139 L.Ed.2d 352, 362, 118 S.Ct. 469 (1997).

As was so succinctly stated in **Ashton v. Kentucky**, 384 U.S. 195, 16 L.Ed.2d 469, 86 S.Ct. 1407 (1966), "Here we have a situation analogous to a conviction under a statute sweeping in a great variety of conduct under a general and indefinite characterization, and leaving to the executive and the judicial branches too wide a discretion in its application." citing **Cantwell v. Connecticut**, 310 U.S. 296, 84 L.Ed. 1213, 60 S.Ct. 900, 128 ALR 1352 (**Ashton** at 199), "Id., at 308, 84 L.Ed. at 1220"; **U.S. v. Reeves**, 752 F.2d 995 (5th Circuit 1985).

As a consequence, the instant Court should rule the conviction dismissed, with prejudice, by applying the Rule of Lenity.

The prosecution should not be allowed to frolick around

126

that statutes and through overreaching, apply well intentioned statutes and create the obvious Constitutional infirmities associated with the overreaching that has occurred in this case.

This subject was most succinctly dealt with in **U.S. v. Powell**, 423 U.S. 87, 46 L.Ed.2d 228, 233-35, 96 S.Ct. 316 (1975). §7212""forbids no specific or definite act" and "leaves open... the widest conceivable inquiry, the scope of which no one can forsee and the result of which no one can foreshadow or adequately guard against."" Id. 234 citing **U.S. v. Cohen Grocery Co.**, 255 U.S. 81, 89, 65 L.Ed 516, 41 S.Ct. 298, 14 ALR 1045 (1921), and the inescapable conclusions is in Mr. Stern's favor.

The thrust of this argument is couched in terms as stated by the Supreme Court in **Connally v. Gen. Const. Co.**, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due proces of law." cited in **U.S. v. Washam**, 312 F.ed. 926 (8th Circuit 2002)

The Fifth Amendment guarantees every citizen the right to due process. Stemming from this guarantee is the concept that vague statues are void. **Id at 929**.

"Void for vagueness simply means tht criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is prosecribed. **U.S. v. Nat'l Dairy Prods. Corp.**, 372 U.S. 29, 32-33, 83 S.Ct. 594, 9 L.Ed.2d

127

561 (1963). **Id. at 929**, **U.S. v. McLamb**, 985 F.2d 1284, 91
(4th Circuit 1995).

"[L]aws [must] give the person of ordinary intelligence
a reasonable opportunity to know what is prohibited, so that
he may act accordingly. Vague laws may trap the innocent by
not providing fair warning." **Grayned v. City of Rockford**,
408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), **Id.**

Mr. Stern catagorically states that there is no way anyone
can read, nor could one derive, that it was Congressional intent,
to proscribe the use of Administrative Procedures laid out
in the IRC, the filing of a suit under Title 5 USCS §706 n.6,
the posting of a common "No Trespass" sign, the utilization
of Title 5 USC§552 and (a), the Freedom of Information Act
and or Privacy Act requests done by Mr. Stern, or seeking relief
through 18 US. §3045 or 26 USC §7214, 26 CFR 601.601,or §601.702(c)(12)
criminal conduct. This is ludicrous at best, yet the government
used that to convict Mr. Stern. This is a clear violation
of Free Speech and Right of Petition for Redress of Grievances.

The implication would be that only a select few could
use the various procedures and seek court relief as above described,
and only then after assurances that they would not be prosecuted
for doing so. This concept defies imagination and cannot be
thought to be within the scheme of Congressional intent in
passing the various Acts concerned.

To apply §7212 as broadly as was done in this case shreds
the concepts of the First Amendment clauses with regards to
Redress of Grievances, Right to Petition, and Free Speech,

Case 2:06-cv-00028-MR   Document 1-2   Filed 10/26/06   Page 43 of 44

the Fifth Amendment Due Process Clause, Sixth Amendment Right to access to the Courts (the use of §7212 against Mr. Stern for filing a Complaint with the 4th Circuit implies a slammed and locked door to the courthouse), and gives the U.S. Attorney and the IRS freedom to range far afield to create prosecutions for virtually any conduct taken by anyone, virtually without limit, whenever a government employee, in a fit of pique, and having a bad day, decides to exercise his power against the unsuspecting individual involved in tax matters. To allow this kind of unrestricted power to run far afield in this manner is violative of the very core principles upon which this country was founded.

The prosecution of Mr. Stern amounts to an unprecedented and improper extention of the reach of §7212.

The other side of the coin is to allow in the definition, under §7212, that suits filed in the Courts of Appeal, Administrative Procedures, and use of statutorily defined remedies is criminal conduct, or the grounds for criminal prosecution, is to hold Congressional enactments such as authorized the things that Mr. Stern did, in contempt and corrupt in nature. This would be ridiculous under any circumstances. Consequently, the prosecution of Mr. Stern was ridiculous as well, and must be set aside on these grounds.

This is espec ially important since the Congressionally enacted statutes such as 18 U.S.C. §3045, 5 U.S.C. §706, and 26 U.S.C. :7214 implicate First Amendment freedoms to seek redress of grievances. The same can be said for the filing of the Suit

129