in the 4th Circuit, the Administrative meeting held in December of 1996, and the other procedures Mr. Stern followed.

> "Within this doctrine is the idea that persons of ordinary intelligence should have a reasonable opportunity to know what is prohibited and that the standards should be clear enough to curb the danger of arbitrary or discriminatory enforecement. The requirement of clarity is enhance when criminal sanctions are at issue or when the statute "'abut[s] upon sensitive areas of basic First Amendment freedoms.'"." **Grayned** at 109, 92 S.Ct. at 2299 (quoting **Baggett v. Bullitt**, 377 U.S. 360, 372, 84 S.Ct. 1316, 1323, 12 L.Ed.2d 377 (1964) in **Informatin Providers Coalition v. F.C.C.**, 928 F.2d 866 (9th Circuit 1991).

From this we can derive the unescapable conclusion that Mr. Stern's argument on this matter must as a matter of course prevail.

In support of this argument, M.r Stern contends that his prosecution falls squarely under the intent of preventing arbitrary enforcement delineated in **Kolender v. Lawson**, 461 U.S. 352, 357-58, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) "the more important aspect of the vagueness doctrine" as cited in **U.S. v. Klecker**, 348 F.3d 69, 71 (4th Circuit 2003). There is no reasonable basis to think that Mr. Stern could have been given adequate notice that invoking Administrative Remedies, filing a lawsuit, using the Freedom of Information Act, and availing himself of the clearly defined procedures in 18 USC §3045 and 26 USC §7214 fell under the ambit of criminal conduct proscribed by 26 USC §7212.

See also **U.S. v. Bryan**, 58 F.3d 933, 941-942 (4th Circuit 1995), "It is axiomatic that "[due] process requires that a criminal statute provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal, for 'no man shall be held criminally responsible for conduct that he

130

could not reasonable understand to be proscribed.'" (Citations omitted). There is no way that Mr. Stern could reasonably forsee that using the above referenced statutory options could be construed criminal.

The Fourth Circuit full well recognizes and allows lawsuits under 5 U.S.C. §706, "we ask only whether the challenged agency action was "arbitrary, capricious, and abuse of discretion, or other wise not in accordance with law."". **Central Elec. Power Co-op v. Southeastern Power**, 338 F.3d 333, 337-II.A. [1-3] (4th Circuit 2003). Obviously this could not be criminal conduct by Mr. Stern. It is the constitutionally guaranteed and protected right to petition, albeit through the courts, for redress of grievances under the First Amendment.

Mr. Stern incorporates a clear First Amendment claim herein.

Virtually all of the conduct the prosecutor placed before the jury as 'proof' of criminal conduct was and is protected by the First Amendment. It is totally improper to stretch the horizons of those protections to the breaking point so as to punish Mr. Stern for being politically active and or pursuing clearly defined statutory, regulatory, and lawful means to seek redress of grievances when such conduct is made available by Congress, the Irs, and the courts.

The conviction under Count Two must be dismissed, with prejudice, on these grounds.

See also **Matter of N.C. Trading**, 586 F.2d 221, 231, n. 28 (1978), and **Bouie v. City of Columbia**, 378 U.S. 347, 352, 84 S.Ct. 1697, 1702, 12 L.Ed.2d 894 (1964), cited in **U.S. v. Toliver**, 972 F.Supp. 1030, 1036 (W.D. Va. 1997), stating

131

"A statute can be void for vagueness not only on its face, but as aapplied, as a result of "unforeseeable and retroactive judicial expression of narrow and precise statutory language. Whether a court is analyzing a statute as void for vagueness on its face or as applied, the essence of the doctrine is that a potential defendant must have some notice or 'fair warning' that the conduct contemplated is forbidden by the criminal law." **U.S. v. Protex Industries, Inc.**, 874 F.ed 740, 743 (10th Circuit 1989)."

Again, there is no way §7212 could warn Mr. Stern that the use of the avenues he undertook could have criminal consequences.

The prosecution in this Count was outrageous miscarriage of justice under any standard of review.

"To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, see **NOrth Carolina v. Pearce**, supra, at 738, 23 L.Ed.2d 656, 89 S.Ct. 2072 (opinion of Black, J.) and for an agent of the [United States of America] to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is "patently unconstitutional." **Chaffin v. Stynchcombe**, supra, at 32-33, n.20, 36 L.Ed.2d 714, 93 S.Ct. 1977." **Bordenkircher v. Haynes**, 434 U.S. 357, 363, 54 L.Ed.2d 604, 610, 98 S.Ct. 663 (1978)

This prosecution, conviction, and sentence must be overturned.

The proposition set forth on thes grounds is further reinforced by the rule of lenity being applied to these issues. **Liparota v. U.S.**, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) and **Rewis v. U.S.**, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 111 (1998).

132

This case offers a perfect example of such ambiguity and begs the Court to reverse the conviction on Count Two.

This claim is far from a novel one. Many other courts have ruled in favor of Mr. Stern's argument.

The court in **Maynard v. Cartwright**, 486 U.S. 356, 361, 100 L.Ed.2d 372, 108 S.Ct. 1853(1988) held, as Mr. Stern argues, that in this instance, no one could know "their conduct is at risk". This implicates the Due Process Clause of the Fifth Amendment. "The constitutional proscription against vague laws is "a basic principle of due process." **Information Providers Coalition v. F.C.C.**, 928 F.2d 866(9th Circuit 1991) (citing **Grayned**, supra), also holding to the extent that;

> "Within this doctrine is the idea that persons of ordinary intelligence should have a reasonable opportunity to know what is prohibited and that the standards should be clear enough to curb the danger of arbitrary or discrimimatory enforcement. [As Mr. Stern contends occurred in this case] The requirement of clarity is enhanced when criminal sanctions are at issue or when the statute "'abut[s] upon sensitive areas of First Amendment freedoms.'" **Id**, at 109, 92 S.Ct. at 2292 (quoting **Baggett v. Bullitt**, 377 U.S. 360, 372, 12 L.Ed.2d 377, 84 S.Ct. 1316(1964)."**Id**.

See also **U. S. v. Hamrick**, 43 F.3d 877, 893(4th Circuit 1995) (citing **Negonsott v. Samuels**, 507 U.S. 99, 122 L.Ed.2d 457, 113 S.Ct. 1119(1993).

Since taken at face value, Mr. Stern was for the most part seeking information with regards to his duties, if any, with respect to the IRS, and not, as the government alleges disagreeing with same, his conduct is protected by the First Amendment. **Brandenburg v. Ohio**, 395 U.S. 444, 23 L.Ed.2d 430, 89 S.Ct. 1827(1969); **Rice v. Paladin Ent.**, 128 F.3d 233, 243-45 (4th Circuit 1997)(even if he disagreed).

"a fair warning should be given to the world in language that a common world will understand, of what the law intends to do if a certain line is passed." **McBoyle v. U.S.**, 283 U.S. 25, 27, 75 L.Ed. 816, 51 S.Ct. 340(1931)." **U.S. v. Aguilar**, 515 U.S. 593, 600, 132 L.Ed.2d 520, 529, 115 S.Ct. 2357(1995).

If this Court would allow Mr. Stern's conviction to stand under §7212, it should issue a clear and unequivocal ruling to the extent that anyone contemplating availing himself/herself of the procedures set out in Title 5 USCS §§ 552, 552(a), 706, Title 18 USCS§3045, Title 26 USCS§7214, or filing suit in a court of appeals under the A.P.A. will be subject to prosecution under criminal statues of the United States, for that is the only way a clear and concise warning can be made.

In the alternative, the conviction under §7212 must be reversed.

**A FUNDEMENTAL STRUCTURAL ERROR AROSE WHEN MR. STERN WAS DENIED COMPULSORY PROCESS OR ALLOWED TO CALL RUSSELL DEAN LANDERS AND LEROY SCHWEITZER BY WRIT OF HABEAS CORPUS AD TESTIFICANDUM.**

During the proceedings the direct and repeated involvement of Russell Dean Landers and LeRoy Schweitzer was evident.

Mr. Stern moved the trial Court for a Writ Of Habeas Corpus Ad Testificandum for both men , at that time and currently held as federal inmates by the Federal Bureau Of Prisons, to appear as defense witnesses. **Docket No.s 119 through 122.**

The Court summarily and instantly denied the Writs. **Docket No. 123.**

From the Government's use of Mr. Schweitzer in both grand jury proceedings and both trials, there can be no argument against Mr. Stern's contention that Schweitzer was and is a material witness.

From Landers' involvement with the Government's Exhibits 11-1 and 11-2, he too is a material witness.

With regards to Landers', Mr. Stern points out the Affidavit submitted with his Renewed Rule 33 motion, **Docket no. 188**, reveals that Mr. Landers' testimony would have been the lynchpin of a "dead bang" winner in striking Counts Four through Seven from the case, had Mr. Landers' been brought forward as requested.

135

That would have removed the necessity for Mr. Stern to continue to take up time and resources on those fronts.

Mr. Stern was denied the relief and remedy that the Compulsory Process Clause of the Sixth Amendment was put into place by the Founding Fathers to guarantee to criminal defendants, "a sword that may be employed to rebut the prosecution's case. **Taylor v. Illinois**, 484 U.S. 400, 410, 98 L.Ed.2d 798, 811, 108 S.Ct. 646(1988), a clear structural and fundamental error that mandates overturning the convictions on Count Two, Paragraph 4 (i.e. Count Two, in its entirety, since Paragraph 4 cannot at this time be segregated out) and Counts Four through Seven, in their entirety.

## THERE IS A MATERIAL MIS-STATEMENT AND CONFLICT IN THE INDICTMENT AND JURY INSTRUCTIONS WHICH APPLY TO COUNTS SIX AND SEVEN CREATING PLAIN ERROR AND CALLING INTO QUESTION THE RELIABILITY OF THE OUTCOME OF THE PROCEEDINGS.

The Superseding Indictment, at Counts Six and Seven, states;

> "knowingly did deposit or cause to be deposited in an authorized depository for mail matter, to be sent and delivered by the Postal Service and did knowingly cause to be delivered by the Postal Service according to the directions thereon, a written communication, postmarked January 29, 1996 ***."

and the jury instructions at trial, **TT, Page 885, Line 9;**

> "whoever knowingly deposits in any post office or authorized depository for mail matter, or to be sent or delivered by the federal Postal Service or knowingly caused to be delivered by the Postal Service according to the directions thereon, any communication addressed to any other person, and containing any threat to kidnap any person shall be guilty of an offense against the United States."

and repeated at **TT, Page 887, Line 12;**

> "defendant knowingly deposited or caused to be deposited in an authorized depository for mail matter to be sent and delivered to the Postal Service, a communication; or that the defendant knowingly caused to be delivered by the Postal Service a communication; that the communication had directions thereon and was addressed to the person named on the Indictment; that the communication contained a threat to kidnap the person named on the Indictment, ***."

Mr. Stern contends that each of these three passages differ materially from each other and from the exact language of **Title 18 USCS §876.** They differ substantially and create error in that the jury instructions are inconsistent with each other, inconsistent with the Indictment and would

137

reasonably be found to confuse the jury as to the exact language of the statute, and they all three differ materially from the language of the statute as set out in §876. Further, the jury instructions impermissibly constructively amend the Indictment, creating a constitutional infirmity that beckons the Court to reverse the conviction on these two Counts.

Additional problems arise from the fact that the three passages intertwine and convolute the language of the various paragraphs of §876, each which has different elements of the offense and each which sets out different penalties. The result is that the jury could not have known exactly what the required elements of the offense were, which paragraph or paragraphs they were considering, and exactly what penalty would apply. The resulting redactions, misleading and confusing language, and mixing of legal theories deprived the jury of the ability to do their job with the precision and knowledge required of them, nor could Mr. Stern properly devolve a defense strategy with exactitude sufficient to formulate an effective defense against the charges.

The Indictment was twice amended by the jury instructions, and at the outset did not properly reflect the necessary detail of the language of the statute.

Mr. Stern timely challenged the Indictment pre-trial and this issue is preserved.

138

This ground sets forth violations of the Grand Jury Clause and Due Process Clause of the Fifth Amendment, the Jury Clause of the Sixth Amendment, the Double Jeopardy Clause of the Fifth Amendment, and is grounds to reverse the convictions on Counts Six and Seven.

See **U.S. v. Sampson**, 140 F.3d 585, 589(4th Circuit 1998) (citing **U.S. v. Floresca**, 38 F.3d 706, 710-11(4th Circuit 1994), (quoting **Stirone v. U.S.**, 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960).

Case 2:06-cv-00028-MR   Document 1-3   Filed 10/26/06   Page 10 of 46

**MR. STERN WAS DENIED THE CONSTITUTIONAL AND COMMON LAW RIGHT
TO BE PRESENT AT EVERY IMPORTANT STAGE OF THE TRIAL PROCEEDINGS.**

The Constitutional and Common Law Right to be present
at every important stage of the trial proceedings in inculcated
in the fundemental law of the land, and promulgated under
Rule 43 of the F.R.Cr.P., as "a restatement of existing
law"." **U.S. v. Camacho**, 955 F.2d 950, 953(4th Circuit 1992),
at II.A, citations omitted.

Even though Mr. Stern protested to defense counsel
Aurillo and attempted to make known to the Court that he
wished to attend the jury instructions conference, secreted
away in the judge's chambers, he was denied same. **TT, Page
789, Lines 18-22**, and AFFIDAVIT of March 17, 2002 attached
hereto and made a part hereof by reference. This denial
violated Mr. Stern's Rights, making the proceedings tainted
by "tread[s]ing close to the concept of trial in absentia
which our system has long disdained. **U.S. v. Alikpo**, 944
F.2d 206, 209 (5th Circuit 1991)" **Id.**,; **U.S. v. Gagnon**,
470 U.S. 522, 527-28 (1985); **Kentucky v. Stincer**, 482 U.S.
730, 740 (1987); and **U.S. v. Lawrence**, 248 F.3d 300, 303(4th
Circuit 2001) bringing into play that the violation of Rule
43 implies a fundemental defect and a clear offense to
the Due Process Clause of the Fifth Amendment and the Jury
Clause of the Sixth Amendment.

The convictions must be reversed on these grounds.
**EXHIBIT 24**

140

## GROUND SEVENTEEN

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY REFUSING TO GIVE THE DEFENDANT"S PROPOSED JURY INSTRUCTIONS TO THE JURY FOR DELIBERATION.**

The standard for review on this question can be found in **U.S. v. Lewis**, 53 F.3d 29(4th Circuit 1995).

When Defense Counsel Aurillo refused to compile and submit a set of jury instructions, Mr. Stern undertook to do so. He instructed Aurillo to submit them at the **in camera** conference, which Mr. Stern asserts that he did.

The Court denied the defense's instructions out of hand and in their entirety. **Docket # 135**, July 20, 2000.

" A defendant is entitled to have the jury instructed on his theory of the defense if the defense is supported by the law and the evidence." **U.S. v. Grimes**, 413 F.2d 1376, 1378(7th Circuit 1969); **U.S. v. Sloley**, 19 F.3d 149, 153(4th Circuit 1994) ("Generally, a criminal defendant is entitled to an instruction as to **any** defense, provided that the instruction (1) has an evidentiary foundation, and (2) accurately states the law. See **Matthews v. U.S.**, 485 U.S. 58, 63, 108 S.Ct. 883, 886-87, 99 L.Ed.2d 54(1988)." (other citations omitted for the sake of berevity)(emphasis added).

Mr. Stern repeatedly attempted to assert a "Self-defense" theory, **TT, Page 546, Line 22 through Page 547, Line 24**; **Page 628, Lines 16-22**, **Page 629, Lines 4-7**. Portions of the defense instructions dealt with the issue of "Self-Defense".

141

In that the Court refused the proposed defense instructions the jury was left "Without instructions as to the law (as pertains to the key defense strategy and facts which the defenseattempted to place before the jury),[and the] jury becomes mired is a factual morass, unable to draw the appropriate legal conclusions based on those (defense issues) facts." **Lewis**, at 34[3].

A district court's refusal to provide an instruction requested by a defendant constitutes"reversible error only if the instruction "(1) was correct, (2) was not substantially covered by the court's charge to the jury, and (3) dealt with some point un the trial so important that failure to give the instruction seriously impaired the defendant's ability to conduct his defense." **U.S. v. Camejo**, 929 F.2d 610, 614(11th Circuit 1991); **U.S. v. Queen**, 132 F.3d 991, 1000(4th Circuit 1997)(quoting **Lewis**)(cited in **U.S. v. Frazier-El**, 204 F.3d 553, 562(4th Circuit 2000)), **U.S. v. Ogle** 328 F.3d 182(5th Circuit 2003);**U.S. v. Hamrick**, 43 F.3d 877, 885(4th Circuit 1995).

Mr. Stern contends that the instructions he prepared were, as a matter of fact and law correct, not covered in any way by the court's charge to the jury, and wre materially important to the strategy of thedefense.

Mr. Stern also contends that "The defendant is entitled to present evidence concerning his beliefs, motives, and intentions regarding various transactions ***." **U.S. v. Hutul,** 416 F.2d 607, 624(7th Circuit 1969), cert. denied

142

sub. nom. **Sacks v.U.S.**, 396 U.S. 1007, 90 S.Ct. 562, 24 L.Ed. 499, reh. denied, 397 U.S. 1081, 90 S.Ct.1519, 25 L.Ed. 2d 820(1970).

Mr. Stern repeatedly attempted to present evidence to support several theories, but was guillotined by the Court at every turn.

The consequence is that Mr. Stern has been denied the opportunity to present his defense theories, facts, and relevant case law based on instructions to the jury and that state of affairs constitutes a deprivation rising to a Constitutional level. He further contends that this is error that is fatal to the conviction, warranting reversal.

The denial is an abuse of judicial discretion that enabled the prosecution to prevail without a meaningful testing of the case, and constitutes structural error.

See **U.S. v. Murdock**, 290 U.S. 389, 78 L.Ed.381, 54 S.Ct. 223(1933) at 394 to 396, cited in **Cheek v. U.S.**, 498 U.S. 192, 200-206(citations omitted), 112 L.ED.2d 617, 628-633, 111 S.Ct. 604(1991) cited in **U.S. v. Rogers**, 18 F.3d 265, 267, n.4(4th Circuit 1994).

Mr. Stern contends that the defense's case was materially prejudiced at that point, and any aura of fairness cast out. **U.S. v. Boonbhakdee**, 40 F.3d 538(2nd Circuit 1994); **U.S. v. Carter**, 910 F.2d 1524(7th Circuit 1990); **U.S. v. Riffe**, 28 F.3d 565(6th Circuit 1994); **James v. Kentucky**, 466 U.S. 341, 104 S.Ct.1830(1984); **U.S. v. Camacho**, 955

143

F.2d 950, 953 (4th Circuit 1992)(citing F.R.Cr.P.Rule 43(a),
and **U.S.v. Martin-Trigona**, 684 F.2d 485, 492-3(7th Circuit
1982).

The instructions were timely requested. **U.S. v. Matzkin**,
14 F.3d 1014(4th Circuit 1994).

Reversible error occurred, affecting Mr. Stern's substantial
rights in having the jury instructed as to his defense.
**U.S. v. Lewis**, 53 F.3d 29, 34-35(4th Circuit 1995)(internal
citations omitted); **U.S. v. PAtterson**, 150 F.3d 382, 388
(4th Circuit 1998).

144

Case 2:06-cv-00028-MR   Document 1-3   Filed 10/26/06   Page 15 of 46

## GROUND EIGHTEEN

### THE COURT ERRED AT TRIAL WHEN IT READ JURY INSTRUCTION #43 TWICE TO THE JURY, AND THE ERROR IS FUNDEMENTAL.

The Trail Transcript and sound recording will show that Judge Thornburg read Instruction #43 twice to the jury.

This instruction is a particularly onorous and oppressive one.

The Court's emphasis on that instruction could only be viewed by the jury as having greater weight than the others and a directive by the Court to find Mr. Stern guilty on the basis of that instruction. This amounted to a coercive and directed verdict of guilty announced by the Judge. **U.S. v. Weissman**, 899 F.2d 1111(11th Circuit 1990); **Dalton v. U.S.**, 862 F.2d 1307, 1309(8th Circuit 1988), and constitutes fundamental and structural error striking to the heart of the concepts of fairness abd due process. The convictions must be overturned on this ground.

Case 2:06-cv-00028-MR   Document 1-3   Filed 10/26/06   Page 16 of 46

## GROUND NINETEEN

## MR. STERN WAS DENIED DUE PROCESS WHEN THE COURT SEVERLY LIMITED THE AVAILABLE TIME AT SENTENCING AND RESENTENCING.

The Court, by its ORDER of January 18, 2002, **Docket No. 170**, limited the defense to one hour in which to present its case.

On resentencing, scheduled for March 30, 2006, the Court issued its ORDER of February 1, 2006, **Docket No. 181**, and curtailed the available time allotted to a mere 15 minutes.

Mr. Stern contends that this severe limitation constitutes clear abuse of judicial discretion, is an offense to the Due Process Clause of the Fifth Amendment, and establishes a **prima facie** case of prejudice and bias.

> ""The fundemental requirement of due process of law is the opportunity to be heard." **Grannis v. Ordean**, 234 U.S. 385, 394, 58 L.Ed. 1363, 1369, 34 S.Ct. 779(1914). The hearings must be "at a meaningful time and in a meaninful manner." **Armstrong v. Manzo**, 380 U.S. 545, 552, 14 L.Ed.2d 62, 66, 85 S.Ct. 1187(1965)." **Goldberg v. Kelly**, 397 U.S. 254, 267, 25 L.Ed.2d 287, 299, 90 S.CT. 1011(1970).

The Constitutional import of this claim rests squarely on "an **effective** opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." **Id**, an opportunity that was denied Mr. Stern in both instances. (Emphasis added).

The operative word is "effective". No reasonable observer could view an hour as enough time to "effectively" present

146

and argue the multitude of issues involved in a case of this magnitude. In fact, the record (transcript) of the original sentencing hearing reflects the fact that Mr. Stern's counsel was denied the opportunity to call witnesses who were sitting in the courtroom and had to truncate his arguments due to time limitations.

On resentencing, the issues were no less important nor were they less numerous. The 15 minute time frame set down by the Court essentially forclosed the defense from arguing anything but a small precentage of the important matters touching on Mr. Stern's private property interests in liberty. In no wise could constraining Mr. Stern to 15 minutes be viewed as anything but draconian and destroying any chance to mount an effective argument. It is unreasonable under any test, and on that basis, Mr. Stern is entitled to resentencing before another judge, a position Mr. Stern has repeatedly asserted throughout this case.

Case 2:06-cv-00028-MR   Document 1-3   Filed 10/26/06   Page 18 of 46

**THE "STATEMENT OF REASONS" "ATTACHMENT" TO THE AMENDED JUDGMENT IN A CRIMINAL CASE FILED ON APRIL 4, 2006 CONTAINS MATERIAL ERRORS.  DOCKET# 194.**

Mr. Stern contends that the "ATTACHMENT" to the AMENDED JUDGMENT IN A CRIMINAL CASE that resulted from the MArch 30, 2006 re-sentencing hearing has several material errors and disputes the incorrect information contained therein.

The errors are;

1. The Court states "The Court noted the defendant has never accepted responsibility for his actions ***." **ATTCH., at 1.**

Mr. Stern shows that at both sentencing hearings he placed upon the record clear and undeniable statements accepting responsibility which the Court overlooks and ignores.

2. The Court states "*** which he used to create fictitious comptroller warrants ***."

Mr. Stern disputes this claim and points to the testimony at trial to the effect that the Comptroller Warrants were created by LeRoy M. Schweitzer. Further, there is no nexus between those instruments and the Macon County organization, nor that Mr. Stern used "this "court" in any way to effect any transactions involving the Comptroller Warrants.

3. The Court states "*** that his "court" could produce genuine and enforceable warrants."

Mr. Stern contends that there is no evidence to support this claim.

148

4. The Court states "He also gave legal advice as to how individuals could file liens against government employees and write checks against that lien amount or use same to purchase cars or other property."

Mr. Stern disputes that statement on the grounds that there is no evidence at trial to substantiate that claim. The Court obviously confuses Mr. Stern with Mr. Schweitzer's activities.

5. The Court states "and used his criminal law "court" to stall efforts of the IRS to assess and collect taxes owed by Ronald Carl Ayers, Jr., Mickey Keith Gunwall, John Anthony Morris [sic], Kenneth Charron, and offered similar assistance to others."

Mr. Stern disputes this statement. There was no bona fide evidence at trial to support this claim with regards to Ayers, Gunwall, Morris[sic] [actually it is known to the Court that John Anthony Norris was convicted on marijuana trafficking charges], or Charron, or any others. Even if these activities did occur, which Mr. Stern denies, it does not constitute obstruction of justice nor does it constitute an aggravating role in this case.

6. The Court states "he also established his own "Our One Supreme Court" and named himself "chief justice"."

Mr. Stern makes appear that this is materially and factually wrong. The testimony of the government's prosecution witness, Michael Stern, Mr. Stern's brother made clear that (1) the group was started by over 100 people, not Mr. Stern, and (2) the group elected Mr. Stern. He did

149

not "name[d] himself "chief justice". **TT, Page 245, Lines 6-15**.

7. The Court states "His filings of comptroller warrants and liens in local courthouses ***."

Mr. Stern objects to this statement on the grounds that there was no evidence at trial to support this finding.

8. The Court states "A later legal search of his premises revealed weapons and ammunition including Kevlar bullets." The search was a pretext and illegal search, a claim which Mr. Stern raised in this court and on appeal to the 4th Circuit, and maintains to this day. The Sheriff arrested Mr. Stern without a warrant, in the Macon County Courthouse, had Deputy Jerry Baldwin take Mr. Stern in a patrol car to Mr. Stern's home which was surrounded by a fully operational SWAT Team, and did so only to serve a Writ of Assistance on behalf of BankAmerica Housing Services, involving a civil matter with regards to a debt owed on the house. The SWAT Team occupied the house for 4 days and searched it top to bottom, filming the contents, recording serial numbers of firearms, and cataloging only certain contents on orders from Sheriff Homer Holbrooks.

The usual procedure for executing a Writ of Assistance does not involve a SWAT Team and the only purpose is to have the occupants vacate the premises, not conduct a fishing expedition involving a detailed search of not only the hosue, but the garage and the space under the home as well.

Case 2:06-cv-00028-MR   Document 1-3   Filed 10/26/06   Page 21 of 46

Nothing illegal was found and certainly there were no "Kevlar bullets". There are no such things as Kevlar bullets. The allegation to the effect there were teflon coated rounds is a bald faced lie that cannot be substantiated by any competent evidence. They did not appear on Jerry Baldwin's log. The only explanation is they are a fictional creation by Dective Andy Shields. See HOUSE OF REPRESENTATIVES REPORT on PERJURY found elsewhere in these pleadings.

Mr. Stern reminds the Court of the letter from the family of Alexander C. McEwan which makes appear that a lot of the weapons, ammunition, the Kevlar vest, and other items the Court seems to find objectionable were, in fact, the property of Mr. McEwan, a man to whom Mr. Stern provided rent free housing and support during his bout with malignant prostate cancer. When Mr. McEwan lost that battle, those items which were stored by Mr. Stern for Mr. McEwan, were turned over to Mr. McEwan's brothers. They were never Mr. Stern's property, per se.

9. The Court states: "the defendant refused to get out of his car, showing a "Our One Supreme Court" badge for right of passage.

Mr. Stern disputes this statement. He never displayed such a badge. The incident was taped by the Rabun County Sheriff's Department, the tape played in court, and nowhere can there be found such activity.

Case 2:06-cv-00028-MR   Document 1-3   Filed 10/26/06   Page 22 of 46

10. The Court takes pains to discuss the package received by the U.S. Marshal's Service in Charlotte.

Mr. Stern objects on the grounds that the Court has before it an Affidavit from Russell Dean Landers confessing to the fact that it was himself and his wife, Dada Dudley, who actually committed the offenses set out in Counts Four through Seven of the Superseding Indictment. This matter has been raised elsewhere in these pleadings.

11. Mr. Stern points out that in the "ATTACHMENT", the Court states :"He obtained comptroller warrants from Schweitzer."

This conflicts with the statement attacked in #2  set out above, and reflects the true state of events.

12. The Court states: "The comptroller warrants issued by the defendant, his supporters, and organization had no commercial value."

Mr. Stern objects and shows that this conflicts with #11 set out above. The fact is Schweitzer issued the instruments. The organization in Macon County had no involvement in that activity, nor did Mr. Stern "issue" the instruments.

13. The Court states: "Through this "court", defendant sought to pay off tax liabilities ***."

Mr. Stern objects. There is no evidence at trial that the Macon County organization was in any way involved with Mr. Schweitzer's instruments being tendered to taxing entities.

152

14. The Court states: "He was clearly an organizer and leader of criminal activity with involved five or more participants."

Mr. Stern disputes this claim on the grounds that (1) the activities of the Macon County group were protected First Amendment activities and have never been adjudged criminal in a court of competent jurisdiction, and (2) the only participants involved with Mr. Stern in evidence at trial are his brother, Michael Stern and Al Fuller, each separately under Mr. Stern. Neither was in contact with the other, nor with Mr. Schweitzer. Arguably Mr. Stern was under Mr. Schweitzer's much larger scheme, but only two people can be directly tied to Mr. Stern, warranting a lower scoring in terms of participants.

15. The Court states: "He obtained comptroller warrants from Schweitzer for Alonzo Fuller, Ernest Franklin Coble, his brother, Michael Stern, and others."

Mr. Stern objects to the attachment with Ernest Franklin Coble on the grounds that there is no evidence to that extent in the record of trial. In fact, the Memo sent to IRS CID Agent Kelly Jackson says there appears no direct connection. There is no evidence on record to substantiate the claim of "and others".

16. The Court states: "He refused to respond to IRS letters or phone calls."

Mr. Stern disputes this and states that he did respond. The IRS had problems with the make-up of the responses, but he did respond.

153

17. The Court states: "He threatened several IRS employees with criminal investigation and possible arrest ***."

Mr. Stern contends that this behavior, discussed in detail in other portions of these pleadings, is not obstructive nor criminal behavior as it is clearly permitted and ratified by Congress who passed 18 USCS§3045, 26 USCS§7214, 5 USCS§706, and other statutory schemes allowing citizens to seek redress of grievances through proper procedures, which Mr. Stern carefully followed.

Mr. Stern contends that the above list constitutes error of a material nature and is abuse of judicial discretion, prejudicing Mr. Stern and subjecting him to a substantially disproportionate and higher sentence than properly due.

The objected to portions are subject to correction on the grounds that they are clear error based upon the record and taint the proceedings.

154

**MR. STERN WAS SUBJECTED TO MULTIPLE SENTENCES FOR A SINGLE OFFENSE IN VIOLATION OF THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT DUE TO MULTIPLICITY OF FIVE COUNTS ON THE INDICTMENT.**

Mr. Stern challenged the Superseding Indictment well before trial under F.R.Cr.P. Rule 12(b), **DKT # 63 & 64, 75 & 75**.

The Superseding Indictment, at Count Two, ¶4, Counts Four through Seven all arise from a single event, the document identified as Government Exhibit 11-1, arriving at the U.S. Marshals' Office in Charlotte.

The language of those 5 passages is identical in the description of that event.

Each of the 5 passages requires the government to prove identical facts as to all 5.

Since this challenge was preserved pre-trial, Mr. Stern re-asserts it at this time, claiming that as a result of the multiplicity, he was materially prejudiced in that (1) the jury saw multiple offenses arising out of one transaction which presumably saw the single event as more egregious conduct by the multiple restatement of the 5 passages, inflaming their prejudices and creating an environment where they would be more likely to convict Mr. Stern than if there was but one count, and (2) no one could know if, in Count Two, the jury convicted Mr. Stern on conduct relating to the document or obstruction of the IRS, and (3) whether absent ¶4, the jury would have acquitted Mr. Stern of

155

the charges in Count Two, and (3) Mr. stern was subjected to assessment of 4 $100.00 levies more than appropriate, (4) the Court summarily dismissed the challenges and did not cure the defects with instructions to the jury, and (5), defense counsel was ineffective in that he did not move the Court to dismiss the surplusage at the close of presentment to the jury, and (6) the multiple counts subjected Mr. Stern to a higher sentence under the U.S.S.G. calculation scheme.

Mr. Stern points out that this defect infects 5 of 7 counts, a majority of the indictment.

The outcome of the trial as pertains to Count Two is called into question on these grounds, and the conviction on Count Two reversed on this basis, as it offends the Double Jeopardy Clause of the Fifth Amendment.

Counts Four through Seven should be consolidated into one count, and a new trial ordered on these matters, taking into consideration the revelations set out in Russell Dean Landers' Affidavits.

The Court abused its discretion but summarily dismissing the challenges without a hearing and failing to take steps to cure the constitutional infirmity the 5 passages creates, since Mr. Stern did not waive this defense.

156

## GROUND TWENTY TWO

### THE COURT HAD NO JURISDICTION TO SENTENCE MR. STERN ON THE GROUNDS THAT THE JURY VERDICT SHEET REVEALS NO FIRM DATE OF CONVICTION.

Absent a specific date of conviction on the jury's VERDICT SHEET, signed by the Foreman, the presumption arises that the record is without a firm date of conviction.

Without a firm date of conviction, the Court has no jurisdiction to sentence Mr. Stern, and the current sentence must fall void, ab initio. **EXHIBIT 20** .

## THE 124 MONTH SENTENCE APPLIED TO MR. STERN IS UNREASONABLE

The Supreme Court, in 04-75, stated that the appropriate sentence that should be applied to Mr. Stern is 57 months. The Fourth Circuit Court of Appeals, in its Remand, agreed.

The District Court sentenced Mr. Stern to 124 months.

Mr. Stern contends that the Court applied improper factors and misapplied the law. **U.S. v. Moreland**, 437 F.3d 424, 434 (4th Circuit 2006)(citing **Green**, 436 F.3d at 456, 2006 WL 267217, at *5, and **U.S. v. Clark**, 434 F.3d 684, 687(4th Circuit January 12, 2006); **U.S. v. Davenport**, No. 05-4304(4th Circuit April 21, 2006), at 3., being over twice the advisory guidelines range and the level established by the higher courts on remand.

Mr. Stern incorporates in this ground his POSITION STATEMENT, **Exhibit 8**, and SENTENCING MEMORANDUM, **Exhibit 9**, in support of these premises, and requests full consideration of them as a basis for a reduction in sentence as set forth therein.

The factors used were not in the indictment and found by a jury under the beyond the reasonable doubt standard and thus run afoul of the Sixth Amendment and the Supreme Court's decision under **U.S. v. Booker**, 04-104, January 12, 2005, and an offense to the Due Process Clause of the Fifth Amendment.

158

## GROUND TWENTY FOUR

**MR. STERN WAS DENIED NOTICE THAT THE COURT CONTEMPLATED DEPARTING UPWARD FROM THE GUIDELINES SENTENCE OF 57 MONTHS, VIOLATING RULE 32(h)'s NOTICE REQUIREMENT, PREJUDICING MR.STERN THROUGH A SENTENCE MORE THAN DOUBLE THE GUIDELINES' LEVEL, REQUIRING THE SENTENCE IMPOSED ON MARCH 30, 2006 BE VACATED AS UNREASONABLE.**

Mr. Stern came to the March 30, 2006 sentencing proceedings with the expectation that the Court would follow the mandate of the Fourth Circuit, following the remand from the Supreme Court, to the extent that the proper sentence to be applied to Mr. Stern is 57 months.

At no time has Mr. Stern received notice that the Court intended to depart upwards to a level of more than twice the proper and reasonable Guidelines range of 57 months to 124 months.

The denial of notice implicates the Due Process Clause of the Fifth Amendment is offended and the error affects substantive rights. **U.S. v. Nappi**, 243 F.3d 758, 763 & n.4(3rd Circuit 2001); **Townsend v. Burke**, 334 U.S. 736, 741 (1948) (cited in **U.S. v. Davenport**, Case No. 05-4304 (4th Circuit, April 21, 2006), Page 7, at 2., See also **U.S. v. Dozier**, No. 05-6259(10th Circuit April 5, 2006), and **U.S. v. Walker**, No. 05-1812 (7th Circuit MAy 17, 2006).

The sentence currently imposed must be vacated. See also **U.S. v. Evans-Martinez**, Co. 10280(9th Circuit June 1, 2006)

159

**THE COURT WAS IN ERROR IN SENTENCING MR. STERN USING A 12 POINT ENHANCEMENT UNDER U.S.S.G.§2F1.1(b)(1)(M) (PSIR ¶49).**

The PSIR incorrectly aggregates the instruments set out in the indictment in Paragraph 49.

The Indictment sets out various instruments in separate Counts.

In Count One, the only instruments that could be construed as coming under the aegis of 18 USCS§286 are the ones to the "United States Bureau of Internal Revenue" (with Mr. Coble's disputed) totaling $656,476.14.

> Note: ¶4 duplicates Count Three, the balance of the entities are not instrumentalities of the United States and consequently fall outside the reach of the statute.

Count Three alleges an amount of $77,581.98.

The other instruments inapplicability are discussed elsewhere in this Petition.

The JURY VERDICT FORM, **EXHIBIT** 20___, reveals that the jury found strictly only as the Superseding Indictment set forth, and did not make special finding aggregating any amounts.

Absent such a finding, in the face of **Apprendi v. New Jersey, Blakely,** and **Booker,** the only sentence that can be legally applied is as argued above, and not an aggregate amount.

The challenge to the application of the Guidelines

160

as was done March 30, 2006, falls under the decision set out in **U.S. v. Singh**, 54 F.3d 1182, 1190(4th Circuit 1995)(cited in **U.S. v. Blake**, 81 F.3d 498 (4th Circuit 1996).

In order for Mr. Stern to be held accountable for any amount, the government had to prove, and the jury specifically find, as a matter of fact, that the amount "can be attributed" to Mr. Stern. **U.S. v. Daniel I. Colton**, 231 F.3d 890 (4th Circuit 2000), at IV, and that Mr. Stern "obtained directly or indirectly as a result of such offense.""***all property, real or personal or tangible or intangible***."**Id**, at 910, facts which the government did not prove. **PSIR, ¶42**.

Mr. Stern contends that there was no proof, whatsoever, that Warrant #2501 was ever tendered to the Macon County Treasurer, nor does that office fall under the aegis of the United States.

There was no proof that Warrant 1806 (Coble) was directly linked  to Mr. Stern

BankAmerica Housing Service is not a federally insured institution. **EXHIBIT 14** .

Mellon Mortgage is not a federally insured institution. **EXHIBIT 14** .

Warrants number 1803 and 1804 were not submitted to the United States.

Mr. Stern contends that the Warrant to First Union National Bank cannot be considered due to infirmities discussed elsewehere  in this Petition.

161

There are still no specific findings of fact with regards to the amounts challenged and consequently the 12 point enhancement must fall, **U.S. v. Pena**, 268 F.3d 215, 220, 21(4th Circuit 2001); **U.S. v. Millar**, 79 F.3d 338 (2nd Circuit 1996), and **Colton**, supra, as unconstitutionally void under the Due Process Clause of the Fifth Amendment and the Jury Clause of the Sixth Amendment, and illegally assessed against Mr. Stern.

Based only upon the $77, 581.98, the applicable Base Level Offense score (U.S.S.G.§2B1.1(a) is 6 points.

The Specific Offense Characteristic score is 8.

The total offense level is 14 yielding a sentence of 15-21 months.

Mr. Stern disputes the Probation Officer's grouping of Counts One, Two and Three. PSIR, ¶46, and objects to that as an inappropriate manipulation of the Guidelines.

Again, based **only** on the jury's verdict, each Count amount stands independent of the others and the Probation Officer is not permitted to sum them all up to achieve a larger sentence than is sustainable under the jury's findings.

162

**STERN WAS SENTENCED ON COUNT TWO UNDER AN ILLEGAL SENTENCE DUE TO MISAPPLICATION OF THE U.S.S. GUIDELINES.**

The Probation Officer, in Paragraph 56 of the PSIR, applied U.S.S.G. §2Ji.2(a) for a base offense level of 12, and §2J1.2(b)(1) for an 8 point level increase. He then applied §2J1.2(b)(2) in Paragraph 58 of the PSIR for an additional 3 point level increase, and in Paragraph 62 of the PSIR, §2J1.2, Application Note 2 for an additional 2 point increase.

Stern contends that the Guidelines were misapplied.

The Fourth Circuit is clear on this issue. In the decision rendered in **U.S. v. Lewis**, 37 Fed. Appx 608, No. 00-4644, decided June 6, 2002, the court was clear in its mandate.

In the instant case there was no finding of the use of force or a weapon, nor was such alleged.

> The Court, in **Lewis** states "We agree with the district court's conclusion that a violation of the omnibus section of 26 U.S.C.A.§7212(a) that does not involve the use of force or a weapon is sentenced in accordance withU.S. Sentencing Guidelines Manual §2T1.1***."

Utilizing this basis of law in Stern's case, the Base Offense Level would be 6, not 12. It does not appear that there is any provision for additional points under §2T1.1.

Wherefor Stern shows that the sentence applied in this case must be reviewed under **U.S. v. Blake**, 81 F.3d 498, 503 (4th Circuit 1996) for factual and legal errors, and corrected to reflect a level 6 range.

163

## GROUND TWENTY SEVEN

## THE VICTIM RELATED ADJUSTMENT, PSIR ¶¶ 67 and 73 WRONGLY APPLIED.

Probation Officer Capps grouped Counts Four through Seven for purposes of computation. See PSIR ¶¶67, 73, 65, and 71.

While the statutory language of Title 18 USCS§876, at (d), delineates communication to "a United States judge", so does the languare of 18 USCS §115.

Both statutory Guidelines penalties are applied under the same Guideline, 2A6.1. It is clear that the Sentencing Commission contemplates the same reach for the same two statutory violations. The PSIR already assessed 12 points under §2A6.1 for PSIR ¶¶65 and 71. The additional 3 points assessed in ¶¶67 and 73 constitute impermissible double counting, are wrongly applied, and Mr. Stern disputes the 3 point additions.

164

## THE LEADER/ORGANIZER ENHANCEMENT IMPOSED UNDER U.S.S.G. §3B1.1 WAS IMPROPERLY ASSESSED.

There is a seven factor test with regards to the Court imposing an enhancement under §3B1.1. **U.S. v. Pineiro**, 337 F.3d 464, 474 (5th Circuit 2004) (citing §3B1.1, cmmt. n.4.).

In applying this test to Mr. Stern's case, Mr. Stern contends as follows;

1. The exercise of decision making authority.

It is clear from the testimony of Michael Stern and Alonzoe Fuller that they, themselves, made the decision to participate and conduct themselves as they did, independent of Mr. Stern's decision to involve himself with LeRoy Schweitzer.

2. The nature of the defendant's participation in the commission of the offense.

Mr. Stern participated as a conduit for information with regards to Schweitzer's program and tendered a Warrant to FUNB and BankAmerica Housing Services. He supplied Michael Stern and Alonzoe Fuller with the Warrants that they used. Beyond that, there is no hard evidence to connect him with the balance of the Warrants nor do they fall within the reach of the statutes.

3. The recruitment of accomplices.

Mr. Stern recruited Michael Stern and Alonzoe Fuller.

165

Beyond that, there is no evidence on the record of the trial to connect Mr. Stern downstream to anyone else, and upstream **only** to LeRoy Schweitzer. This constitutes but two people below Mr. Stern, and places Mr. Stern as below LeRoy Schweitzer, as a middleman.

4. Any claimed right to a larger share of the fruits of the crime.

There is no evidence on record to show Mr. Stern claimed and proceeds from the Warrants given to Michael Stern nor Alonzoe Fuller, and only half (not a larger share) on the two Warrants Mr. Stern had and used.

5. The degree of participation in planning and organizing.

It is clear from the record and that of the "Freeman" trials in Billings, Montana, and elsewhere, that LeRoy Schweitzer was the mastermind and driving force behind the situation. He taught and guided literally hundreds of others who attended his seminars and to whom he gave thousands of instruments. Mr. Stern was but a minor participant in that nationwide scheme arguably also in some respects a victim of the 'Pied Piper of Montana', LeRoy Schweitzer.

Put into proper context, Mr. Stern was a small fish in a small pond, and his activity with Michael Stern and Alonzoe Fuller a miniscule thing in comparison.

6. The nature and scope of the illegal activity.

166

Again, when held up for comparison with Schweitzer's activities, and that of the combined number of others involved, all, for that matter, unknown to Mr. Stern, Mr. Stern's activity was quite small.

7. The degree of control or authority exercised over others.

Again, from the trial testimony, Mr. Stern exercised no control or authority over either Michael Stern nor Alonzoe Fuller.

Based upon the factual setting of this issue, this enhancement cannot be applied at the level it was and is subject to being vacated, on the grounds that ¶¶ 53 and 60 of the PSIR contradict the assessment.

¶53 states "The defendant directed all three individuals ***." Simple mathematics makes apparent that Mr. Stern and "three" (though Mr. Stern disputes the "three") equals but 4, an insufficient number of people to trigger the 4 point enhancement. With regards to ¶60 of the PSIR, the record is devoid of any nexus between Mr. Stern and Ronald Cark Ayers, Jr., Micky Keith Gunwall and Kenneth Charon. Further, the implied nexus with John Anthony Norris under Count Two (26 USCS§7212) is materially incorrect as there is no evidence on record that Mr. Stern ever directly knew or talked to him. The same holds true with regards to Mr. Coble. 2 points under (c) is all that is available to the Court.

167

## GROUND TWENTY NINE

### THE 6 POINT ENHANCEMENT AT PSIR ¶¶ 66 and 72 UNDER U.S.S.G.§ 2A6.1(b)(1) IS WRONGLY APPLIED.

Mr. Stern disputes the application of these 6 points on the grounds that there is no connection in evidence to show that Mr. Stern took any steps whatsoever after the date of the mailing of the letter (Government Exhibit 11-1) to the U.S. Marshals Service.

The Affidavits of Probable Cause referred to by the Probation Officer and mischaracterized as "previously threatened IRS agents with their arrest to be carried out by his court appointed constables" is unsupported fabrication and contrivance, ridiculous, and simply not true. The letter to the U.S. Marshals Service was sent in January of 1996. The first Affidavit of Probable Cause was not sent until December of 1996, 11 months later.

Nowhere in the Affidavits is to be found any reference to any "constables". Further, as adduced at trial, the Macon County group had no provision for nor ever appointed any officer with the title of "constable", **EXHIBIT** 16 , nor is the Macon County group mentioned in the Affidavits.

This enhancement cannot be sustained as the jury made no such findings, either.

168

## GROUND THIRTY

### A  STRUCTURAL DEFECT IN THE PROCEEDINGS OCCURRED WHEN  JUDGE GRAHAM MULLEN SIGNED AN ORDER IN THIS CASE.

**Docket Entry 4, 9/14/1999** is an ORDER transferring this case.

Judge Mullen is named in Counts Four and Six of the Supreseding Indictment.

On these grounds, Judge Mullen knew, or should have known of the material conflict of interest brought about by his involvement and **sua sponte** recused himself. He did not recuse himself.

This is a clear case of intrinsic structural error which must bring about a reversal of the convictions.

169

# GROUND THIRTY ONE

## MR. STERN WAS PREJUDICED BY THE SURPLUSSAGE IN THE LANGUAGE OF COUNT ONE ESTABLISHING PLAIN ERROR.

Mr. Stern timely challenged the Indictments in this case, preserving this issue.

Mr. Stern contends that major portions of Count One are surplussage, irrelevant, immaterial, and have no direct bearing on the elements of the offense, but were put into the indictment by A.U.S.A. Brown to 'stack' the charge and inflame the passions of the jury by making the offense appear to be broader than it really was.

The portions challenged are;

1. ¶3-relating to Mellon Mortgage-not an entity of the United States

2. ¶4 in its entirety. Does nor relate to the United States.

3. ¶5 in its entirety-Does not relate to the United States.

4. ¶7 in its entirety-Does not relate to the United States.

5. ¶10 in its entirety.-Does not relate to the United States.

Half of the paragraphs in Count One do not relate in any way to the essential elements of the offense. Their existance clouds the real issue and deprives the jury of the opportunity to decide on only the real offense conduct.

170

Further, it misleads the jury as to what the real
offense conduct really was, making this Count unconstitutionally
vague and fatally flawed on these grounds.

Mr. Stern was denied the opportunity to meaningfully
and effectively challenge these matter by the summary dismissals
of his motions by the Court. This implicates the Due Process
Clause of the Fifth Amendment and the Grand Jury Clause
of the Fifth Amendment as Mr. Stern alleges violations
of those Clauses raise plain error issues, as set forth
herein and in his original motions and challenges, incorporated
herein by reference.

The conviction on Count One must be reversed on grounds
of fundemental const itutional error.

171

## GROUND THIRTY TWO

**THE COURT COMMITTED REVERSIBLE ERROR WHE IT ALLOWED IRS INSPECTOR FRANK HOULE TO REMAIN AT THE PROSECUTION TABLE AND IN THE COURTROOM AFTER RULE 615 WAS INVOKED.**

IRS Inspector Frank Houle sat at the prosecution's table and testified extensively as a government witness against Mr. Stern.

The Rule requiring sequestration of witness was invoked early on in the proceedings, yet the Court allowed House to remain at the prosecution table throught the trial. This gave the jury an impression of higher credibility of Mr. Houle's testimony than other witnesses against Mr. Stern and was prejudicial.

Mr. Houle's testimony did indeed overlap that of IRS Agents Tingle, Sizer, and Ward.

Rule 615 uses the word "shall" a word of command making mandatory that he should have been ordered out of the room. The Court failed to do so, committing reversible error.

See **U.S. v. Farnham**, 791 F.2d 331, 335-336(4th Circuit 1986), cited in **U.S. v. Kosko**, 870 F.2d 162, 164(4th Circuit 1989).

172

### GROUND THIRTY THREE

**THE FINE OF $1,000.00 IMPOSED BY THE COURT WAS IMPROPER IN THE FACE OF TITLE 18 USCS §3572(a) AND MUST BE REFUNDED TO MR. STERN.**

Under the established law of the Fourt Circuit in **U.S. v. Aramony**, 166 F.3d 655, 665 (4th Circuit 1999), the fine portion of the Judgment against Mr. Stern must be reversed, and the amount already paid refunded to Mr. Stern since the PSIR is devoid of any financial information statutorily required under **Title 18 USCS §3572(a).**

173

**MR. STERN WAS MATERIALLY PREJUDICED BY INCOMPLETE TRAN-**
**SCRIPTS AND THEREFOR ENTITLED TO VACATUR AND A NEW TRIAL.**

The **Court Reporters' Act, 28 USCS §753(b)**, requires all

proceedings in a criminal trial to be recorded, verbatim.

**Antoine v. Byers & Anderson, Inc.**, 508 U.S. 429, 436, 113

S.Ct. 2167, 124 L.Ed.2d 391(1993).

§753(b) provides in pertinent part;

"Each session of the court and every other proceeding
designated by rule or order of the court or by one
of the judges shall be recorded verbatim by shorthand,
mechanical means, electronic sound recording, or by
any other method subject to regulations promulgated
by the Judicial Conference and subject to the discretion
and approval of the judge."

"Section 753(b) of the Court Reporter's Act "is mandatory

and the court has the duty to require compliance."

**Parrott v. U.S.**, 314 F.3d 46, 47 (10th Circuit 1963)."

**U.S. v. Taverna**, 348 F.3d 873, 880(10th Circuit 2003).

"[T]he Court Reporter Act requires a complete transcript

of trial proceedings, and there is no doubt that "[a]

criminal defendant has a right to a meaningful appeal

based on a complete transcript." **U.S. v.Huggins**, 191

F.3d 532, 536 (4th Circuit 1999)." **U.S. v. Brown**,

202 F.3d 691, 696(4th Circuit 2000).

Mr. Stern's counsel at trial was Gerald Paul Aurillo.

On Appeal his counsel was John Zwerling.

Notably missing from the transcripts of the proceedings

174

are the following;

(A) A record of the pre-trial motions arguments

(B) Jury Voir Dire

(C) The **In Camera** jury instructions conference

(D) Verbatim transcript of the portions of the electronic surveillance recordings played in the courtroom for the jury

Mr. Stern contends that the Court cannot adequately reconstruct those proceedings so as to afford Mr. Stern "a right to a meaningful appeal based upon a complete transcript." **Hardy v. U.S.** , 375 U.S. 277, 279, 84 S.Ct. 424, 11 L.ed.2d 331(1994)." **Huggins, at 536,** sufficient to be of use on appeal, nor in this §2255 petition to support his claims on ineffective assistance of counsel, denial of jury instructions, and abuse of judicial discretion.

A **prima facie** case supporting this ground is that fact that these issues were not brought up on direct appeal due to the lack of a sufficient record on the issues.

This alone should cement a claim of prejudice abd plain error.

This claim clearly implicates a  claim of deprivations under the Due Process Clause of the Fifth Amendment  as to the critial points missing from the record. **Jackson v. Virginia**, 442 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) cited in **Henderson v. Lockhart**, 864 F.2d 1447(8th Circuit 1989), and **Griffin v. Illinois**, 351 U.S. at 19, 76 S.Ct. at 591, 100 L.Ed.891(1956)

Case 2:06-cv-00028-MR   Document 1-3   Filed 10/26/06   Page 46 of 46