**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION**

**CIVIL NO.  2:06CV28
(2:99CR81)**

| | | |
|---|---|---|
| **PETER KAY STERN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **Vs.** | ) | **O R D E R** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the following motions which were filed simultaneously with the Petitioner's motion pursuant to 28 U.S.C. § 2255:

1.      a motion to disqualify all of the judges within the United States District Court for the Western District of North Carolina;

2.      a motion for release on bond pending resolution of his § 2255 motion;

3.      a motion to disqualify the United States Attorney for the Western District of North Carolina;

4.    a motion for copies of the grand jury transcripts in the Petitioner's

underlying criminal case;

5.    a petition for a writ of habeas corpus *ad testificandum* to produce

Russell Dean Landers at a hearing; and

6.    a motion for a "gag" order and sequestration.

These motions will be disposed of prior to a ruling on the dispositive

aspects of Petitioner's § 2255 motion.


**A.    The motion to disqualify the judges of this District.**

The Petitioner states that his primary ground for relief in the § 2255

motion is the ineffectiveness of his retained counsel, Gerald Aurillo, and

the impact that Mr. Aurillo's conduct had on the undersigned.  As a result,

the Petitioner states that he will call the undersigned as a witness and, as a

result, the Court must recuse itself.  In support of this contention, the

Petitioner states that he will subpoena the undersigned in order to show

> testimony and records with regards to *ex parte* meetings,
> communications, and or correspondence and e-mail with
> regards to this case with Judge Mullen, Judge Voorhees,
> members of the Office of U.S. Attorney, U.S. Marshals Service,
> IRS, BATF, Secret Service, U.S. Postal Service and other
> government agencies during the investigatory phases of the
> case, during the trial phases, and subsequently to date.

**Affidavit and Declaration in Support of Motion to Disqualify the Judges of the Western District of North Carolina, filed October 26, 2006, at 2.** It is first noted that the Court has conducted a review of the Petitioner's motion pursuant to 28 U.S.C. § 2255 and finds that no evidentiary hearing will be required in order to dispose of the motion. **Rules Governing Section 2255 Proceedings for the United States District Courts, Rules 4, 8.** Thus, the undersigned will not be a witness in this matter and the motion to recuse based on that ground is denied as frivolous. As for the contention that the other judges in the Western District of North Carolina must be recused as material witnesses, that motion is also denied. The Petitioner's motion pursuant to § 2255 will be handled by the undersigned and no hearing will be held in connection with the motion. Thus, the motion to recuse those judges is moot.

The Petitioner, who has provided an affidavit, also cites the denial of his motions, an "acrimonious tenor," "general hostility of what appears to be the personal opinion of Judge Thornburg," the Court's concern that the Petitioner's conduct in some manner impacted the Court's "pay and job security," and a "deep-seated 'pervasive bias'" against an organization

known as "Our One Supreme Court," all of which he claims show judicial

bias.  **Affidavit and Declaration, *supra*.**

Defendant seeks recusal pursuant to 28 U.S.C. § 144 which provides

in pertinent part:

> Whenever a party to any proceeding in a district court makes
> and files a timely and *sufficient affidavit* that the judge before
> whom the matter is pending has a personal bias or prejudice
> either against him or in favor of any adverse party, such judge
> shall proceed no further therein, but another judge shall be
> assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief
> that bias or prejudice exists[.] . . .  [The affidavit] shall be
> accompanied by a certificate *of counsel of record* stating that it
> is made in good faith.

**28 U.S.C. § 144 (emphasis added).**

"A judge against whom an affidavit under § 144 is filed must pass

upon the legal sufficiency of the facts alleged."  ***Sine v. Local No. 992 Int'l***

***Bhd. of Teamsters*, 882 F.2d 913, 914 (4th Cir. 1989).**  Thus, the

undersigned must first determine whether the affidavit is legally sufficient

before having the case assigned to a different judge.  ***Id.***  In order to be

legally sufficient, the affidavit must recount facts which are "'sufficiently

definite and particular to convince a reasonable person that bias exists;

simple conclusions, opinions, or rumors are insufficient.'"  ***O'Regan v.***

*Arbitration Forums, Inc.*, 246 F.3d 975, 989 (7th Cir. 2001) (quoting

*United States v. Boyd*, 208 F.3d 638, 647 (7th Cir. 2000)) (other

citations omitted).

Defendant has moved for recusal in his *pro se* status and has failed

to provide a certificate that the motion is made in good faith.  **28 U.S.C. §**

**144.**  Some courts have held that by virtue of the wording of the statute, §

144 is unavailable to *pro se* litigants.  **Robinson v. Gregory, 929 F. Supp.**

**334, 338 (S.D. Ind. 1996) (Because the statute requires that counsel**

**provide a certificate of good faith, it is unavailable to *pro se* litigants**

**who are still able to obtain relief pursuant to § 455.).**  In this Circuit,

> [t]he certificate of counsel is an indispensable part of the
> affidavit; and the statutory language requiring that the affidavit
> be accompanied by "'a certificate of counsel of record stating
> that it is made in good faith' is subject to strict construction.". . .
> The requirement of a good faith certificate rests on the
> assumption that "counsel will not execute a certificate in
> reckless disregard of the truth.  It protects against an obviously
> untruthful affidavit, or an unjustified attempt by a party to
> disqualify a judge."  Thus, a disqualification affidavit
> unaccompanied by a certificate of good faith, signed by counsel
> of record admitted to practice before the court, is not legally
> sufficient and it will not support a § 144 motion to recuse.

*Lindsey v. City of Beaufort*, 911 F. Supp. 962, 965-66 (D.S.C. 1995)

(quoting *Morrison v. United States*, 432 F.2d 1227, 1229 (5th Cir. 1970)).

**(other citations omitted).** The statute is carefully worded to prevent the scenario presented here: a *pro se* litigant seeking to force the recusal of the presiding judge by providing an affidavit in his *pro se* capacity. Thus, because the affidavit submitted by the Petitioner does not contain a certification of good faith and was not signed by an attorney, the affidavit is legally insufficient under § 144.

However, assuming *arguendo* that the certificate is not required for *pro se* litigants, the affidavit still is not legally sufficient. The accusations raised in the Petitioner's motion are merely "conclusions, opinions or rumors" which are insufficient to warrant transfer of the matter to a different judge. **O'Regan, supra.** The allegations made by the Petitioner do not show actual bias but are merely unfounded conclusions and speculations. **Tezak v. United States, 256 F.3d 702, 717 (7th Cir. 2001).** In fact, assuming *arguendo* that any comment made by the Court during sentencing, as alleged by the Petitioner, could be construed as "hostile," "[c]omments made by the judge 'during the course of trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases ordinarily do not support a bias or partiality challenge." **Id., at 718 (quoting Liteky v. United States, 510 U.S. 540, 555 (1994)).** "A judge's

expressions of 'impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, [sometimes display]' are not sufficient to demonstrate bias or prejudice." *Id.* **(quoting *Liteky*, at 555-56).** The undersigned, therefore, finds the affidavit legally insufficient and as a result, the case will not be reassigned.

Section 144 applies to claims of actual judicial bias. ***United States v. Nickl*, 427 F.3d 1286, 1298 (10th Cir. 2005).** Nonetheless, the Petitioner fares no better under the standards applied to § 455 which provides in pertinent part:

> (a) Any . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

> (b) He shall also disqualify himself in the following circumstances:
> > (1) Where he has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding[.]

**28 U.S.C. § 455.**

> A judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Disqualification is required if a reasonable factual basis exists for doubting the judge's impartiality. The inquiry is whether a reasonable person would have a reasonable basis for questioning the

> judge's impartiality, not whether the judge is in fact impartial. . .
> .  If an affidavit or motion is filed under § 455 seeking
> disqualification, the judge is not bound to accept those
> allegations as true.  The proper test to be applied is whether
> another with knowledge of all the circumstances might
> reasonably question the judge's impartiality.

*In re Beard*, 811 F.2d 818, 827 (4ᵗʰ Cir. 1987) (quoting § 455) (other

citations omitted).  Moreover, the alleged judicial bias must come from an

extra-judicial source; it may not stem from matters learned by the judge in

the course of the trial itself.  *Id.*  Nor is a judge required to accept as true

the defendant's allegations.  *Id.*  And, it is proper for this Court to make the

determination since the statute requires that "a judge shall disqualify

*himself*."  **United States v. Nicholson, 955 F. Supp. 582, 583 (E.D. Va.**

**1997).**

In March 2006, the undersigned complied with the mandate of the

United States Fourth Circuit Court of Appeals and re-sentenced the

Petitioner.  In so doing, the undersigned briefly recounted some of the

history of this case as well as the evidence presented at trial and described

the Petitioner's conduct throughout the prosecution.  The Court noted that

the Petitioner had been found guilty by jury verdict of threatening federal

court judges and, upon a search of his home, law enforcement found

Teflon coated ballistic penetrating rounds.  **Sentencing Transcript, filed**

**July 6, 2006, at 28.**  Trial evidence showed numerous "run-ins" with the

Internal Revenue Service due to the Petitioner's refusal to file income tax

returns.  ***Id.*, at 28-29.**

> But the problem was the [IRS] agents attempting to get him to
> file his tax returns and his conclusion, which he brought to my
> attention on several occasions, that he was not a taxpayer and
> was not bound to pay taxes, and that was thread throughout
> the evidence.  He was a member involved with Patriot groups. .
> . .  We had in evidence a tape which showed the defendant in
> his handling of the meetings of the "Our One Supreme Court,"
> which, of course, he contended had jurisdiction over a variety
> of matters, including the release, immediate release which he
> demanded of a convicted felon in federal custody.  He taught
> compatriots how to develop warrants. . . .  One of the [IRS]
> agents testified he never went to the [Petitioner's] home
> because he was frightened . . . because of a sign which the
> defendant had posted warning all federal persons from his
> property. . . .  One of the female agents that he had talked with
> was concerned for her safety and that of her employees and,
> when she left work, kept her doors locked and was afraid to go
> to the door for fear of the ["One Supreme Court"] and its group
> which was charged with the responsibility of carrying out the
> orders of the court over which Mr. Stern presided as chief
> justice. . . .  I observed as presiding judge . . . that the
> defendant himself sat there at the table and dictated and
> interrupted and controlled [his] attorney throughout the course
> of the trial, feeding him a variety of frivolous documents and
> maintaining total control of his case, and at one time he
> interrupted, he'd tell him when to object, took complete control
> of the exhibits, precluded his attorney having time to organize
> and present the exhibits in an orderly fashion.  It was my
> opinion from observing that he had probably chosen this
> attorney for the sole reason that he would be able to control

him and thereby harass and delay and frustrate the trial process.

. . .

Through this [Our One Supreme] "court," the defendant sought to pay off tax liabilities and represented to the general public that the United States District Court did not have jurisdiction of his or other cases and that his court could produce genuine and enforceable warrants. He also gave legal advice as to how individuals could file liens against government employees and write checks against those lien amounts[.]. . . The evidence by videotape showed the defendant presiding over "Our One Supreme Court" and persuading the members to involve themselves in a variety of activities on behalf of that, quote, court, unquote.

. . .

From the beginning of his criminal conduct, the defendant peppered the IRS with correspondence, failed to respond to the notices of his overdue tax returns, stamped his IRS Form 2050, quote, Refusal for Cause without Dishonor, UCC 3-501, Date 6-16-95. In this same frivolous letter setting out numerous questions to the IRS the defendant denied being a taxpayer; he stated the IRS had no standing to address him in any way; he denied them the right to contact him in any way, reserving his rights under "UCC 1-207;" sent a notice to the IRS and charged them for his valuable and precious time in the amount of $1 million a day and gave them 72 hours in which to refute the binding terms of his agreement. He refused to respond to IRS letters or phone calls. He refused to pay tax deficiencies. He refused to pay taxes for years, '91,'92, '93, '94. He declared he was not a Fourteenth Amendment citizen or resident of the United States[.] . . . He threatened several IRS employees with criminal investigation and possible arrest if they continued to pursue their collection initiatives. He used his criminal law court to stall efforts of the IRS to assess and collect taxes owed by [others].

. . .

The evidence, referenced in part *supra*, is only a small part of the entire evidence which demonstrated defendant's total disregard and

disrespect for the laws of this nation. During the course of the trial, the defendant flooded the Court with frivolous filings challenging the jurisdiction of the federal and state court and agencies of the federal and state governments. He established his "Our One Supreme Court" and named himself chief justice. A sentence within the guideline range of 51 to 87 months would do little to promote respect for the law. In fact, the defendant did all within his power to promote disrespect for the law, not only for the tax laws, but for the laws in general which related to him and his followers.

. . .

His conduct throughout the history of the events involved in this case as shown by the evidence show an individual who not only criticized the law, which he had a right to do, but went further by taking deliberate steps to violate the laws which he disliked and encouraged others to do so by his behavior and advice. The defendant is a highly educated man with a brilliant mind, arrogant of purpose, and demonstrated such by constant mockery of a variety of laws, not the least of which was a demand by his "court" through himself as "chief justice" that federal district court judges free a detainee or accept the consequences. Such rash, irrational and irresponsible conduct throughout the course of the case before the courts of this land demand a just punishment[.] . . . Given the outlandish acts of the defendant as shown throughout his involvement in this case and the peculiar involvement of this case with the laws of this nation relating to its legal foundation, the courts of this nation and their obligation to enforce laws, including those relating to taxation, legal tender, documents and rulings, a respect for the law and providing just punishment, as well as effecting adequate deterrence and protecting the public from this defendant, requires a sentence in excess of that which would initially result from a strict application of the Guidelines.

***Id.*, at 29-30, 34, 35-36, 39-40, 41-42.** These comments were made by the

undersigned in the context of re-sentencing the Petitioner; however, they

accurately recall the Petitioner's conduct throughout the course of the litigation.

The Petitioner claims that such comments show that the undersigned has an actual bias against him.

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion[.]  Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality motion. . . .  *Not* establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display.  A judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune.

***Liteky, supra.***  Further, unfavorable "judicial rulings alone almost never constitute valid basis for a bias or partiality motion."  ***Id.*, at 555.**

The comments quoted *infra* reflect the considered judgment of the Court made during the re-sentencing hearing to explain the grounds for imposing sentence.  ***United States v. Cruz-Mercado*, 360 F.3d 30, 36 (1ˢᵗ Cir. 2004) (The court's comments "reflected a fact-based assessment of the type of conduct in which the defendants engaged and not a fundamentally unfair bias[.]").**  Those comments reflect the demeanor of

the undersigned throughout the Petitioner's trial and first sentencing hearing. ***S.E.C. v. Antar*, 44 F. App'x 548, 551 (3d Cir. 2002) ("Alleged bias derived from prior judicial proceedings will 'rarely be grounds for recusal.'"); *United States v. Martin*, 278 F.3d 988 (9th Cir. 2002) (judge's knowledge and opinion produced in the course of the proceedings are properly and necessarily acquired and do not show bias).** "A judge must recuse himself 'if sufficient factual grounds exist to cause a reasonable, objective person, knowing all the relevant facts, to question the judge's impartiality.'" ***Nickl*, 427 F.3d at 1298 (quoting *United States v. Pearson*, 203 F.3d 1243, 1277 (10th Cir. 2000)).** In this case, a reasonable and objective person would not find the statements made in the context of justifying the Petitioner's sentence show bias. Likewise, the Court's conduct throughout this case, a case made extremely difficult and unnecessarily prolonged by the Petitioner's own behavior, does not indicate bias. ***United States v. Ekblad*, 90 F. App'x 171 (7th Cir. 2004) (In a case dealing with a tax protester who continuously filed frivolous pleadings, the court's comment that the defendant's conduct had been the "most obstreperous" ever encountered did not show bias.); *Rowsey v. Lee*, 327 F.3d 335 (4th Cir. 2003) (Comments by**

the court that he "was never going to try another capital case"; that the judge "did not like any individual voir dire" and that if it were granted the judge "would go back to Durham and wait three weeks and [counsel should] call him when they were through"; that "any delay or what he considered delay would affect [trial counsel's] compensation; that if the jury returned a death sentence, "the defendant should be taken from the courthouse to the Circle K where the murder occurred, shot six times and stomped in the head"; and the suggestion that the victim "was gay and the defendant was probably a latent homosexual" were made outside the presence of the jury and did not show bias.).

In fact, during the re-sentencing hearing, the Petitioner himself admitted that his behavior during the case had been improper. Some of the Petitioner's comments to the Court include:

> I wish to open by saying once again that I apologize deeply to this Court for my conduct at the outset of these proceedings when I filed so many frivolous documents. . . . I apologize for the extra work I caused the Court at that time.
> . . .
> I came to realize that I had foolishly made some very bad choices about my life, and those choices led to other bad decisions in my life, and I was wrapped up in the cause that I was chasing to the exclusion of things I should have been

focused on.  I know now that I was out of control and I never slowed down to see how my conduct affected others, nor, for that matter, even myself.  A large part of my problems came about when I allowed myself, as many others did, to be lured by the pied piper of Montana, LeRoy Schweitzer, and to listen to his teachings.  His pitch was powerful and very polished, and I fell for it hook, line, and sinker, as I understand several others also did.

. . .

Had I slowed down to think things through back then, I think I would not have allowed myself to stray so far afield from the values I was raised with nor would I have done what I did.  Yes, I did wrong.

. . .

I am 63 years old and wish to spend the remaining years allowed to me on this earth in pursuit of that goal in peace and love.  You will not see me again.  Upon my word, from where the sun doth stand, I will fight no more forever.[1]

**Sentencing Transcript,** *supra***, at 3-5, 7.**

Section 455 "requires recusal if the judge's impartiality might reasonably be questioned by a well-informed, thoughtful observer rather than to a hypersensitive or unduly suspicious person."  ***O'Regan*, 246 F.3d at 988 (quotation omitted).**  The Petitioner has attached affidavits from individuals who claim to have been in the courtroom at various times during the proceedings.  These individuals have averred that the undersigned, in their opinion, was biased.

---

[1]The sincerity of this statement appears to have eroded with time.

The first affidavit is that of Robert Stanley Plimpton.  ***See* Exhibit C,**

***attached to* Petitioner's Motion to Disqualify.**  On October 8, 2002, the

undersigned dismissed a lawsuit filed by Plimpton in this Court.  ***See,***

***Plimpton v. Haywood County*, Civil No. 1:02cv138.**  In that decision, the

undersigned wrote:

> [Plimpton] is no stranger to this Court.  In the Memorandum and
> Order of Dismissal, filed February 22, 2001, in the consolidated
> cases of *Plimpton v. Cooper, et al.*, Civil Case No. 1:01cv29;
> *Plimpton v. Henline*, Civil Case No. 1:01cv30, and *Plimpton v.
> Henline, et al.*, Civil Case No. 1:01cv31, the undersigned made
> the following findings:
>> [T]he allegations of these complaints amount to
>> nothing more than the frivolous claims routinely
>> asserted by "tax protesters" and those who
>> subscribe to such beliefs.

**Memorandum and Order of Dismissal and Order to Show Cause, filed**

**October 8, 2002, at 3-4.**  In 1996, Plimpton sued several of the same

above-named defendants in *Plimpton v. Hyatt, et al.*, Civil Case No.

1:96cv265.  ***Id.***  That case was also dismissed.  In 1999, Plimpton initiated

yet another action in this court, *Plimpton v. Pompano Helicopters, Inc.* 1999

WL 33315676 (W.D.N.C. 1999), which was dismissed for lack of

jurisdiction.  ***Id.*, at 4.**  After the dismissal of the *Plimpton v. Haywood*

*County* action, *supra*, Plimpton was sanctioned by the undersigned, ordered

to pay into court a monetary sanction of $1,100.80, and to pay attorneys' fees in the amount of $2,673.40.  **Order, filed December 30, 2002, in Civil Case No. 1:02cv138.**  Plimpton does not qualify as "a well-informed, thoughtful observer rather than . . . a hypersensitive or unduly suspicious person."  ***O'Regan, supra.***

Another affidavit is supplied by Frederick Charles Snell who describes himself as having been present during sentencing.  **Exhibit C, *supra*.**  However, the affidavit does not state which sentencing hearing Mr. Snell attended.  Nor does Mr. Snell explain what relationship, if any, he has to the Petitioner.  And, he does not provide his reason for being present in the courtroom.  Mr. Snell does provide his opinion that the undersigned was biased.  The same is true of the affidavits provided by Grover Lown and Leigh Heflin.  The Court does not find that the recruitment of affidavits from individuals who appear to be sympathetic to the causes formerly espoused by the Petitioner, and which he appears to have re-embraced, satisfies the requirement that reasonable, objective persons would find the Court to be biased.

Finally, the Petitioner has attached pages printed from a website known as www.atgpress.com.  **Exhibit B, *attached to* Motion to**

**Disqualify.**  The articles were apparently written by an individual known as

"D. Tom" on that website, also called "Against the Grain Press."  The

articles are critical of the undersigned and make statements such as, "I

thought it was the most outrageous display of judicial tyranny, arrogance,

and personal pique I have ever seen a judge show in a criminal case."  ***Id.***

In another article, "D. Tom" writes that "It looks like Judge Thornburg really

went overboard on this one, but, as I keep saying, who's going to do

anything about it?  Who's going to step in and stop these kinds of judicial

abuses and tyranny?  Who is going to Fire'em all?"  ***Id.***  These obviously

are not the comments of a reasonable, objective observer and do not

warrant further comment.

The Petitioner also notes that the Court formerly served in the

capacity of North Carolina Attorney General.  However, "it is axiomatic that

'[t]he facts pleaded will not suffice to show the personal bias required by the

statute if they go to the background and associations of the judge rather

than to his appraisal of a party personally.'"  ***Lindsey v. City of Beaufort***,

**911 F. Supp. 962, 971 (D.S.C. 1995) (quoting *Pennsylvania v. Local**

***Union 542, Int'l Union of Operating Eng'rs*, 388 F. Supp. 155, 159 (E.D.**

**Pa. 1974)).**  And, as is the case with § 144, speculation, conclusions,

opinions and rumors are insufficient to show personal bias, impartiality or improper conduct. **Green v. Branson, 108 F.3d 1296, 1305 (10ᵗʰ Cir. 1997) ("rumor, speculations, opinions and the like do not suffice"); *United States v. Walker*, 920 F.2d 513, 516-17 (8ᵗʰ Cir. 1990) ("Affidavits based on conclusions, opinion, and rumors are an insufficient basis for recusal."); *United States v. $292,888.04 in U.S. Currency*, 54 F.3d 564, 566 (9ᵗʰ Cir. 1995).**

**B.     Motion to be released on bond pending resolution of the § 2255 motion.**

Claiming that he has set forth grounds which will result in the vacatur of his conviction and sentence, the Petitioner seeks release from prison while his § 2255 motion is under advisement.  That motion, which is frivolous, is denied.

**C.     Motion to disqualify the United States Attorney.**

The Petitioner next claims that the Assistant United States Attorney (AUSA) who prosecuted his case, David Brown, must be disqualified because Brown is not a member of the North Carolina Bar.  This motion is

actually moot because in the event that a response to the § 2255 motion were required, AUSA Brown would not be assigned to make that response. Section 2255 motions are civil proceedings and, as such, would be assigned to a different attorney.

As to the claim, however, AUSA Brown is a member of the bar of the State of Ohio.  *Martindale-Hubbell Law Directory,* **Vol. 9 (2006).**  The Department of Justice allows attorneys who are licensed members of the bar in at least one state to function as Assistant United States Attorneys. **28 U.S.C. § 517; Tyree v. Dance, 899 F.2d 1225 (table), 1990 WL 40298 (9th Cir. 1990);** *Ida v. United States*, **207 F.Supp.2d 171, 190-91 (S.D.N.Y. 2002).**  Moreover, the status of AUSA Brown does not implicate any Sixth Amendment right of the Petitioner; prosecutorial representation does not implicate the Sixth Amendment which concerns the criminal defendant's right to self-representation or to representation by counsel.  *Tyree v. United States*, **892 F.2d 958, 959 (10th Cir. 1989) (citing** *Faretta v. California*, **422 U.S. 806, 818-19 (1975)).**

The Petitioner also claims that he will call other prosecutors as witnesses in this matter.  Since no hearing will be held, that motion is moot. The Petitioner's motion is denied.

**D.    The motion for grand jury transcripts.**

The Petitioner's next motion is for copies of the grand jury transcripts to be provided at government expense.

Grand jury materials may not be disclosed absent a "strong showing of particularized need." ***United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983); *United States v. Silva*, 745 F.2d 840, 845 (4th Cir. 1984).** The "mere possibility" of discovering or even impeaching evidence is not sufficient to show a particularized need. ***United States v. Chase*, 372 F.2d 453, 466 (4th Cir. 1967).** Moreover, "across the board fishing expeditions" do not constitute a "particularized need." ***United States v. Kim*, 577 F.2d 473, 478 (9th Cir. 1978).** The motion is, therefore, denied.

**E.    The remaining motions.**

The remaining motions, for a writ of *habeas corpus ad testificandum* and a "gag order," are viable only in the event that a hearing were to be held. Since at this point, it does not appear that a hearing is necessary, the motions are denied.

**IT IS, THEREFORE, ORDERED** that the Petitioner's motions to

disqualify the judges of the Western District of North Carolina, for grand jury

transcripts, to disqualify the United States Attorney's Office for the Western

District of North Carolina, for release on bond pending decision on his §

2255 petition, for a writ of *habeas corpus ad testificandum*, and for a "gag

order" and sequestration are hereby **DENIED**.

Signed: November 22, 2006

Lacy H. Thornburg
United States District Judge